**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br>v.<br>DR. DALE G. CALDWELL, in his official capacity as Lieutenant Governor and Secretary of State for the State of New Jersey,<br>*Defendant*. | Case No. 3:26-cv-2025 (ZNQ-JTQ)<br><br>MOTION DAY:<br>April 6, 2026 |

# MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE AS DEFENDANTS OF LEAGUE OF WOMEN VOTERS OF NEW JERSEY, LATINO ACTION NETWORK, AND MAUNGSAI SOMBOON

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 3

- I. DOJ's Efforts to Obtain Private Voter Information ........ 3
- II. The United States's Plans to Unlawfully Use and Share Voter Information ... 5
- III. Proposed Intervenors ........ 12

ARGUMENT ........ 15

- I. Movants Are Entitled to Intervene as a Matter of Right. ........ 15
  - A. The Motion to Intervene Is Timely. ........ 15
  - B. Proposed Intervenors Have a Sufficient Interest in the Litigation. ........ 17
  - C. Disposition of this Case Would Impair the Proposed Intervenors' Interests. ........ 20
  - D. The Secretary of State's Interests Differ from Those of Proposed Intervenors. ........ 21
- II. In The Alternative, The Court Should Grant Permissive Intervention. ........ 23

CONCLUSION ........ 25

# TABLE OF AUTHORITIES

## CASES

*Am. Farm Bureau Fed'n v. U.S. EPA*, 278 F.R.D. 98 (M.D. Pa. 2011) .......21, 22, 24

*Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022) ............................23

*Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108 (3d Cir. 1992)............................24

*Burnett v. County of Bergen*, 198 N.J. 408 (2009)................................................18

*Doe v. Poritz*, 142 N.J. 1 (1995).........................................................................18

*Donaldson v. United States*, 400 U.S. 517 (1971) ................................................17

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024).......................................................................22, 23

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ..............................15, 21

Minute Order, *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026) ..........................................................................................................3

Minute Order, *United States v. Galvin*, 1:25-CV-13816 (D. Mass Jan. 6, 2026), Dkt. No. 30 ........................................................................................................3

Minute Order, *United States v. Nago*, No. 25-cv-522-LEK-RT (D. Haw. Jan. 5, 2026), Dkt. No. 20 ..............................................................................................3

Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. No. 25 ........................................................................................................3

Minute Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 19, 2025), Dkt. No. 70 ........................................................................................................3

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995) ...............................................................................................16, 21

Notice of Corrections to the Record, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026), Dkt. No. 197 ......................................................................................................9

Order, *Tincher v. Noem*, No. 0:25-cv-04669-KMM-DTS (D. Minn. Jan. 16, 2026), Dkt. No. 85 ....................11

Order, *United States v. Albence*, No. 25-cv-1453 (D. Del. Feb. 4, 2026), Dkt. No. 27 ....................3

Order, *United States v. Scanlan*, No. 25-cv-371-AJ (D.N.H. Jan. 5, 2026), Dkt. No. 23 ....................3

Order, *United States v. Schmidt*, No. 2:25-cv-1481-CB (W.D. Pa. Jan. 16, 2026), Dkt. No. 105 ....................3

Order, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 6, 2026), Dkt. No. 90 ....................3

*PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598 (Pa. Commw. Ct. 2025) ... 7-8

*Pennsylvania v. President U.S.*, 888 F.3d 52 (3d Cir. 2018)....................17, 18, 21

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326 (D.N.J. 2004) ....................16

*Republican Nat'l Comm. v. Aguilar*, No. 2:24-cv-00518-CDS-MDC, 2024 WL 3409860 (D. Nev. July 12, 2024)....................25

*SEC v. Manor*, Civ. No. 20-597, 2020 WL 3446306 (D.N.J. June 24, 2020)..........16

*Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017)....................17

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)....................18

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ....................21

*United States v. Territory of the Virgin Islands*, 748 F.3d 514 (3d Cir. 2014) .........21

*United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026)....................20

*Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016)....................16

**RULES**

Fed. R. Civ. P. 24(b)....................24

Fed. R. Civ. P. 24(c) ....................1

**STATUTES**

5 U.S.C. § 552a(e)(7) .......... 19

5 U.S.C. § 552a(g)(1)(D) .......... 23

52 U.S.C. § 21085 .......... 12

N.J.S.A. § 19:31-3.2 .......... 14, 19

N.J.S.A. § 19:31-3.2(b) .......... 19

N.J.S.A. § 19:31-18 .......... 18

N.J.S.A. § 19:31-18.1 .......... 18

N.J.S.A. § 47:1B-1 .......... 18

N.J.S.A. § 47:1B-1(a)(3) .......... 18

N.J.S.A. § 47:1B-3 .......... 14

N.J.S.A. § 47:4-1 .......... 14

N.J.S.A. § 47:4-2 .......... 14, 19

N.J.S.A. § 47:4-3 .......... 14

N.J.S.A. § 47:4-4 .......... 14

N.J.S.A. § 47:4-5 .......... 14

N.J.S.A. § 47:4-6 .......... 14

**OTHER AUTHORITIES**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES (Oct. 22, 2025), https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html .......... 7

*Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*, Elec. Priv. Info. Ctr. (Feb. 2026), https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-fisma-compliance/ .......... 10

Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, ProPublica (July 13, 2024), https://perma.cc/5W2N-SS2Q ....................7

Asst. Att'y Gen. Harmeet Dhillon (@AAGDhillon), X (Dec. 5, 2025, at 13:02 ET), https://x.com/AAGDhillon/status/1997003629442519114............................8

Brett Sholtis, *Pa. Election Integrity Group Met with 2 Architects of 2020 Effort to Overturn Election*, LancasterOnline (July 21, 2024), https://perma.cc/K92T-L288 ....................................................................8

Carter Walker, *This Pa. Activist Is the Source of False and Flawed Election Claims Gaining Traction Across the Country*, VoteBeat (Feb. 12, 2024), https://perma.cc/HQ9C-TMT7 ..................................................................8

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ..........................................................................................6

Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, ProPublica (Aug. 26, 2025), https://perma.cc/CE7A-6RY6....................................................................7

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ..................................................................7

Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, Pa. Cap.-Star (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post .............7

Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security .............................................6

Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR (Dec. 10, 2025),

https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-data-us-citizens ....................8

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR (June 29, 2025), https://perma.cc/J8VZ-X4N4 ....................7

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Feb. 27, 2026), https://perma.cc/M8Y6-C9KC ....................4

Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, POLITICO (Jan. 20, 2026), https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245 ....................9

Lisa J. Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are Inadequate*, Brennan Ctr. for Just. (Feb. 25, 2026), https://www.brennancenter.org/our-work/analysis-opinion/justice-departments-security-measures-collecting-voter-rolls-are ....................10

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025), https://perma.cc/E87D-XDRX ....................7

Miles Parks & Jude Joffe-Block, *Trump's DOJ Focuses in on Voter Fraud, with a Murky Assist from DOGE*, NPR (May 22, 2025), https://www.npr.org/2025/05/17/nx-s1-5383277/trump-doj-doge-noncitizenvoting ....................8

Press Release, U.S. Dep't of Just., Justice Department Sues Five Additional States for Failure to Produce Voter Rolls (Feb. 26, 2026), https://perma.cc/7RV7-Z82V ....................5

*Read Bondi's Letter to Minnesota's Governor*, N.Y. TIMES (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html ....................11

Reid Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. TIMES (Feb. 2, 2026),

https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html ....................................................................................... 11

Sarah N. Lynch, *US Justice Dept Considers Handing Over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09 .......... 6

The League of Women Voters of New Jersey, Latino Action Network, and Maungsai Somboon (collectively, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b). Proposed Intervenors append to their motion a proposed motion to dismiss by way of a response to the United States's Complaint, while reserving the right to supplement their response to the Complaint within the time allowed for response by Rule 12 after intervention is granted. *See* Fed. R. Civ. P. 24(c).[1]

## INTRODUCTION

The United States seeks to force New Jersey to turn over voters' sensitive personal information and data. It has been widely reported that the United States intends to use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement. These efforts are being driven by self-styled "election integrity" advocates who have previously used ill-conceived database-matching and database-analysis methods to mass-challenge voters and deny the results of elections, and who now serve in or advise the present federal administration.

Proposed Intervenors are the League of Women Voters of New Jersey ("LWVNJ"), a nonprofit, nonpartisan, grassroots membership organization

[1] Plaintiff and Defendant take no position on this motion.

dedicated to empowering voters and defending democracy; Latino Action Network ("LAN"), a nonprofit grassroots membership organization in New Jersey committed to engaging in collective action at the local, state, and national level to advance the equitable inclusion of diverse Latino communities in all aspects of American society; and Maungsai Somboon, an individual voter and naturalized citizen whose private data is at risk in this litigation.

LWVNJ and LAN have a strong interest in this case because their grassroots, volunteer-led work engaging voters is threatened by the United States's request for sensitive, non-public voter data. The interests of LWVNJ and LAN members are also implicated. Among these members are voters, like Mr. Somboon, who are under particular threat from the United States's requested relief, including individuals who are naturalized citizens; registered to vote by mail; have moved and previously executed a change of address form or had previously been registered to vote in another state; have a prior indictable-offense conviction; have experienced domestic violence; are reproductive health patients and providers; are public servants protected by Daniel's Law; and whose personal information is especially sensitive for other reasons and who thus have heightened privacy interests in addition to the robust privacy interests shared by all New Jersey voters under state law.

Proposed Intervenors are entitled to intervene as of right under Rule 24 because this motion is timely, their rights and interests are at stake, and those rights

and interests are not adequately represented by Defendant, who unlike Proposed Intervenors, is a state actor, subject to broader public policy and political considerations external to the legal issues presented in this case. Proposed Intervenors' unique concerns, perspectives, and motivation to interrogate the purpose of the United States's sweeping request for non-public voter data will ensure the full development of the record and aid the Court in its resolution of this case.[2]

Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

## BACKGROUND

### I. DOJ's Efforts to Obtain Private Voter Information

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands to produce voter registration databases, with plans to

[2] Indeed, in similar cases addressing expansive demands for states' sensitive voter information, similarly situated organizations and individual voters were granted intervention. *See, e.g.*, Order, *United States v. Albence*, No. 25-cv-1453 (D. Del. Feb. 4, 2026), Dkt. No. 27; Order, *United States v. Schmidt*, No. 2:25-cv-1481-CB (W.D. Pa. Jan. 16, 2026), Dkt. No. 105; Minute Order, *United States v. Amore*, No. 1:25-cv-00639-MSM-PAS (D.R.I. Jan. 6, 2026); Minute Order, *United States v. Galvin*, 1:25-CV-13816 (D. Mass Jan. 6, 2026), Dkt. No. 30; Order, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 6, 2026), Dkt. No. 90; Minute Order, *United States v. Nago*, No. 25-cv-522-LEK-RT (D. Haw. Jan. 5, 2026), Dkt. No. 20; Order, *United States v. Scanlan*, No. 25-cv-371-AJ (D.N.H. Jan. 5, 2026), Dkt. No. 23; Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. No. 25; Minute Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 19, 2025), Dkt. No. 70.

gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Feb. 27, 2026), https://perma.cc/M8Y6-C9KC.

On July 15, 2025, DOJ sent a letter to Defendant seeking information regarding New Jersey's voter registration and list maintenance procedures and requesting an electronic copy of New Jersey's entire statewide voter registration list ("July 15 Letter"). Compl. ¶¶ 20-21. The July 15 Letter apparently cited the Help America Vote Act ("HAVA") as authority for its demand. Compl. ¶ 21. On July 29, 2025, Donna Barber, Director of the New Jersey Division of Elections, confirmed receipt of the July 15 Letter. Compl. ¶ 24.

On August 14, 2025, DOJ sent a letter renewing its demand for New Jersey's statewide voter registration list ("August 14 Letter"). Compl. ¶ 25. This time, DOJ allegedly cited the Civil Rights Act ("CRA") as the "basis" for its demand and noted that its purpose was "to ascertain compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶¶ 26-27. The August 14 Letter specified that New Jersey's response must include "all fields," including voters' full names, dates of birth, addresses, and driver's license numbers or last four digits of social security numbers. Compl. ¶ 27.

On August 21, the New Jersey Attorney General's Office ("NJAG") sent a letter denying the August 14 demand for New Jersey's statewide voter registration

list and seeking clarification about it. Compl. ¶ 29.

On December 1, the NJAG requested, and DOJ provided, a copy of the proposed Memorandum of Understanding on offer to states who agree to hand over their full voter files. Compl. ¶¶ 30-31. On December 8, the NJAG again denied DOJ's demand for New Jersey's statewide voter registration list, citing state privacy protections, including under N.J.S.A. §§ 47:1A5.3 and 47:1A-1.1, and sought further clarification. Compl. ¶ 32.

The parties conferred by phone on December 19. Compl. ¶ 33. On January 9, 2026, the NJAG sent a letter again declining to comply with DOJ's demand. Compl. ¶ 34. On January 26, DOJ emailed to inquire whether New Jersey's position remained unchanged under its new administration, and on January 30, the NJAG confirmed that it did. Compl. ¶¶ 35-36.

About one month later, The United States filed this lawsuit, which is one of at least thirty similar suits seeking disclosure of sensitive voter data.[3]

## II. The United States's Plans to Unlawfully Use and Share Voter Information

According to extensive public reporting, DOJ's requests for sensitive voter data from New Jersey and other states are not related to voter list maintenance under

---

[3] *See* Press Release, U.S. Dep't of Just., Justice Department Sues Five Additional States for Failure to Produce Voter Rolls (Feb. 26, 2026), https://perma.cc/7RV7-Z82V.

the National Voter Registration Act ("NVRA") or HAVA, the statutes invoked in the August 14 Letter. Rather, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating these novel efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from DOJ and DHS. *Id.*; *see also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah N. Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09. One article extensively quoted a lawyer who recently left DOJ's Civil Rights Division describing DOJ's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm sayi
> ng I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

These efforts are reportedly being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside the government who have previously sought to disenfranchise voters and overturn elections.[4] These actors and their associates have sought to compel states to engage in aggressive purges of registered voters and have abused voter data to make mass challenges to disenfranchise voters. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 599 n.1 (Pa. Commw. Ct. 2025) (dismissing as meritless complaint brought by

---

[4] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES (Oct. 22, 2025), https://perma.cc/R8ZU-GGZZ (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAP.-STAR (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA (Aug. 26, 2025), https://perma.cc/CE7A-6RY6; Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025), https://perma.cc/E87D-XDRX; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR (June 29, 2025), https://perma.cc/J8VZ-X4N4 (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA (July 13, 2024), https://perma.cc/5W2N-SS2Q.

"PA Fair Elections," a group affiliated with current DHS official Heather Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to HAVA).[5]

According to public reporting, DOJ also recently asked staffers from the new "Department of Governmental Efficiency" ("DOGE") to identify noncitizens in state voter rolls by matching voter data with data from the Social Security Administration.[6] DOJ officials have since claimed that "we've checked 47.5 million voting records" and found "several thousand non-citizens who are enrolled to vote in Federal elections," though public reporting indicates these efforts are producing false positives—i.e., they are incorrectly flagging U.S. citizens as non-citizens who are ineligible to vote.[7] A recent federal court filing by DOJ on behalf of the U.S. Social Security Administration corroborates how United States officials have been

[5] *See, e.g.*, Carter Walker, *This Pa. Activist Is the Source of False and Flawed Election Claims Gaining Traction Across the Country*, VOTEBEAT (Feb. 12, 2024), https://perma.cc/HQ9C-TMT7 (discussing Honey's "false" claims regarding voting in Pennsylvania in 2020 and her extensive collaboration with Mitchell); *see also* Brett Sholtis, *Pa. Election Integrity Group Met with 2 Architects of 2020 Effort to Overturn Election*, LANCASTERONLINE (July 21, 2024), https://perma.cc/K92T-L288 (describing Mitchell meeting with PA Fair Elections).

[6] *See, e.g.*, Miles Parks & Jude Joffe-Block, *Trump's DOJ Focuses in on Voter Fraud, with a Murky Assist from DOGE*, NPR (May 22, 2025), https://www.npr.org/2025/05/17/nx-s1-5383277/trump-doj-doge-noncitizenvoting.

[7] Asst. Att'y Gen. Harmeet Dhillon (@AAGDhillon), X (Dec. 5, 2025, at 13:02 ET), https://x.com/AAGDhillon/status/1997003629442519114; *see* Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR (Dec. 10, 2025), https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-data-us-citizens.

seeking to use voter data in conjunction with DOGE-inspired data-matching and aggregation techniques and have been working with outside "election integrity" advocates seeking to deny election results in those efforts:

> [I]n March 2025, a political advocacy group contacted two members of SSA's DOGE Team with a request to analyze state voter rolls that the advocacy group had acquired. The advocacy group's stated aim was to find evidence of voter fraud and to overturn election results in certain States. In connection with these communications, one of the DOGE team members signed a "Voter Data Agreement," in his capacity as an SSA employee, with the advocacy group. He sent the executed agreement to the advocacy group on March 24, 2025.

Notice of Corrections to the Record at 5, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026), Dkt. No. 197; *see also* Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, POLITICO (Jan. 20, 2026), https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245. The filings, which do not specify the terms of the "Voter Data Agreement" or the activities taken pursuant to it, also indicated that around the same period, DOGE actors shared unknown amounts of Social Security data on an unapproved third-party server, in a "manner [that] is outside SSA's security protocols." Notice of Corrections to the Record, *supra*, at 6.

A recent analysis by experts at the Electronic Privacy Information Center identified a host of other serious security concerns and concluded that DOJ has violated the requirements of the Federal Information Security Modernization Act of

2014 ("FISMA") with respect to its collection and retention of voter registration list data from states. *Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*, Elec. Priv. Info. Ctr. (Feb. 2026), https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-fisma-compliance/; *see* Lisa J. Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are Inadequate*, Brennan Ctr. for Just. (Feb. 25, 2026), https://www.brennancenter.org/our-work/analysis-opinion/justice-departments-security-measures-collecting-voter-rolls-are. The shortfalls include: inadequate encryption of voters' data; insufficient data access controls such as multifactor authentication; and no audit log analysis or defined reporting process, meaning that no one will review or analyze who accesses the data, and there is no required timeframe to report problems back to the states in the event of unauthorized access to information or other data breaches. *Id.* In addition, DOJ has failed to explain how it will ensure that contractors with whom it plans to share data will be vetted and will safeguard voters' private information. *Id.* Finally, DOJ plans to "archive" the data, creating a permanent federal registry of sensitive voter information. *Id.*

Recent events have highlighted the impermissible aims of DOJ's reckless attempts to amass and catalog voter data and the lack of connection between its requests and the statutory provisions on which they theoretically rely. In September 2025, DOJ sued the state of Minnesota to try to obtain sensitive voter data. On

January 24, 2026, U.S. Attorney General Pamela Bondi wrote a letter to Minnesota Governor Tim Walz, purporting to discuss DHS's "Operation Metro Surge" activities in the Twin Cities amidst ongoing violence against the city's residents.[8] The letter sets out three actions that Minnesota should take to "restore the rule of law, support ICE officers, and bring an end to the chaos in Minnesota." One of the actions is to "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960."[9] And last month, President Trump announced his desire to "nationalize" elections in certain states. Reid Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. TIMES (Feb. 2, 2026), https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html.

Notably, the United States's own representations to states tend to confirm suspicions of federal overreach that could disenfranchise voters. Far from indicating a purpose of ensuring compliance with the NVRA and HAVA, the Memorandum of Understanding that the United States has asked a number of states to sign seeks to

---

[8] *Read Bondi's Letter to Minnesota's Governor*, N.Y. TIMES (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html ("Bondi Letter"); *see also* Order, *Tincher v. Noem*, No. 0:25-cv-04669-KMM-DTS (D. Minn. Jan. 16, 2026), Dkt. No. 85 (granting injunction against certain DHS practices towards the civilian population of Minneapolis-St. Paul).

[9] Bondi Letter at 2, 3.

place authority to identify supposed ineligible voters in the hands of the federal government and requires removal of purportedly ineligible voters within 45 days, in a manner contrary to those statutes' text. *Compare* U.S. Dep't of Just., Civ. Div., Confidential Mem. Of Understanding ("MOU") (executed version between Texas and DOJ), at 5, Ex. A, , *with* 52 U.S.C. § 21085 (methods of complying with HAVA "left to the discretion of the State"), and 52 U.S.C. § 20507 (protecting voters from removal under certain circumstances).

## III. Proposed Intervenors

Proposed Intervenor LWVNJ is a nonprofit, nonpartisan, grassroots membership organization headquartered in Trenton, New Jersey. *See* Ex. B, Decl. of Jessica Burns ("Burns Decl.") ¶¶ 5-7. LWVNJ includes independently incorporated 501(c)(3) and 501(c)(4) organizations and is a state affiliate of the League of Women Voters. Burns Decl. ¶ 5. LWVNJ has 1,634 members across 29 local Leagues. Burns Decl. ¶ 6-7. LWVNJ was founded in 1920 with a mission to encourage informed and active participation in government, increase understanding of major public policy issues, and influence public policy through education and advocacy. Burns Decl. ¶ 5-6. Pursuant to this mission, LWVNJ registers voters, provides voters with nonpartisan election information, and conducts educational forums, candidate forums, and debates. Burns Decl. ¶ 8. The success of these efforts, especially with respect to voter registration, depends on voters' trust that, when they

provide personal information to the State, that information will not be abused, their privacy will be respected, and their right to participate will be honored. Burns Decl. ¶ 9.

Proposed Intervenor LAN is a nonprofit grassroots statewide membership organization based in Freehold, New Jersey, committed to engaging in collective action at the local, state, and national level to advance the equitable inclusion of diverse Latino communities in all aspects of American society. *See* Ex. C, Decl. of Javier Robles ("Robles Decl.") ¶ 5. LAN works to advance policies that promote equity, justice, and opportunity for the Latino community in areas of education, immigration, criminal justice reform, voting rights, and more. Robles Decl. ¶ 5. LAN regularly conducts nonpartisan voter outreach and "get out the vote" initiatives; performs civic education work; and advocates for policy change to champion the interests of LAN members. Robles Decl. ¶ 7.

Both LWVNJ's and LAN's members include New Jersey voters whose personal data will be provided to the federal government if the United States prevails in this lawsuit. Among these voters are individuals with uniquely acute privacy concerns due to their status as victims of domestic violence, sexual violence, and stalking, as well as their status as reproductive health patients and providers. Burns Decl. ¶ 11; Robles Decl. ¶ 9; *See* N.J.S.A. §§ 47:4-1 to -6 (establishing the Address Confidentiality Program to protect the physical address of victims of various forms

of violence and of reproductive health patients and providers); N.J.S.A. § 19:31-3.2 (enabling victims of domestic violence to register to vote without disclosing their street address). LWVNJ and LAN members also include voters who are at heightened risk of being targeted by DOJ's efforts to improperly remove voters from voter rolls, whether because they registered to vote by mail, have an indictable-offense conviction, or are naturalized citizens. Burns Decl. ¶ 10; Robles Decl. ¶ 8.

Finally, LWVNJ and LAN members include individuals covered by Daniel's Law, which protects the personal information of active or retired judges, prosecutors, law enforcement officers, and their immediate family members. Burns Decl. ¶ 11; Robles Decl. ¶ 9; *See* N.J.S.A. § 47:1B-3 (requiring that copies of voter registration files maintained in the statewide voter registration system and by the commissioner of registration in each county be redacted to safeguard the personal information of covered individuals, and allowing unredacted files to be shared only with the chairperson of a county or municipal committee of a political party or candidate for use by an authorized challenger, a state vendor or contractor engaged in election administration, or upon an order of a Superior Court judge based on a finding that the unredacted copy is necessary to determine the merits of a petition contesting a nomination or election to public office or the approval or disapproval of a proposal).

Maungsai Somboon is a registered New Jersey voter who has exercised his voting rights ever since he became a naturalized citizen in 2021. *See* Ex. D, Decl. of

Maungsai Somboon ("Somboon Decl.") ¶¶ 3, 6, 7. Raised in Saudi Arabia and Thailand, Mr. Somboon moved to the U.S. in 2000. Somboon Decl. ¶ 8. Mr. Somboon is deeply concerned about the prospect of having his sensitive, personal information shared with DOJ and believes that DOJ's request for this data threatens his personal privacy and liberties, as well as those of other New Jersey voters. Somboon Decl. ¶¶ 9-12.

## ARGUMENT

### I. Movants Are Entitled to Intervene as a Matter of Right.

In the Third Circuit, a party seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must prove four elements: (1) "a timely application for leave to intervene"; (2) "a sufficient interest in the litigation"; (3) "a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action"; and (4) "inadequate representation of the prospective intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (citations omitted). Courts construe these factors consistent with a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Id.* at 970 (quotation marks and citations omitted). Because Proposed Intervenors satisfy each of these requirements, intervention should be granted.

#### A. The Motion to Intervene Is Timely.

The Third Circuit has identified three factors to assess timeliness of a motion

to intervene: (1) "the stage of the proceeding"; (2) "the prejudice that delay may cause the parties"; and (3) "the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). The timeliness of a motion to intervene "requires considering the totality of the circumstances." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016).

This motion is timely. The United States filed this suit on February 26, 2026, Dkt. No. 1, and upon learning of it, Proposed Intervenors promptly prepared this motion. Defendant has not yet filed a response to the Complaint, meaning that the case is at its earliest stage. Indeed, less than a week has passed since the case was initiated.

This Court has routinely found motions to intervene timely under such circumstances. *See, e.g.*, *SEC v. Manor*, Civ. No. 20-597, 2020 WL 3446306, at *2 (D.N.J. June 24, 2020) (finding motion to intervene timely when the party moved approximately three months after the case was filed and it was in its earliest stages); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 328 (D.N.J. 2004) (mid-trial application for intervention deemed timely). "The mere passage of time . . . does not render an application untimely"; rather, the "critical inquiry" is about "what proceedings of substance on the merits have occurred." *Mountain Top Condo. Ass'n*, 72 F.3d at 369-70 (holding that four-year delay in moving to intervene was timely because, while some written discovery and settlement negotiations had

occurred, there were "no depositions taken, dispositive motions filed, or decrees entered"). Here, given the early stage of this litigation, before any major deadlines have passed and before any rulings on the merits, intervention will not unduly delay or prejudice the existing parties.

### B. Proposed Intervenors Have a Sufficient Interest in the Litigation.

Proposed Intervenors have a "sufficient"—i.e., a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Under Rule 24(a)(2), a protectable interest is any "cognizable legal interest" that is more than a mere "interest of a general and indefinite character." *Pennsylvania v. President U.S.*, 888 F.3d 52, 58 (3d Cir. 2018).[10] Here, Proposed Intervenors offer multiple, concrete, independently sufficient interests.

*First*, Proposed Intervenors have a right to privacy in the sensitive data sought, i.e., the entire unredacted voter file, with "all fields," including "full name, date of birth, address, and driver's license or last four digits of social security number." Compl. ¶ 27. The Supreme Court has made clear that "disclosure of private information" is an injury "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The

[10] Proposed Intervenors need not separately establish Article III standing because they seek to intervene as Defendants, and because Defendant seeks the same ultimate outcome as Proposed Intervenors; namely, dismissal or denial of the claims brought by the United States. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439-40 (2017); *Pennsylvania v. President U.S.*, 888 F.3d at 57 n.2.

New Jersey Supreme Court has held that New Jerseyans have a reasonable expectation of privacy in their Social Security numbers. *Burnett v. County of Bergen*, 198 N.J. 408, 414 (2009). It has also held that the disclosure of home addresses, when provided in combination with other personal information, implicates privacy interests. *Doe v. Poritz*, 142 N.J. 1, 83 (1995). And New Jersey law specifies exactly what information from its voter registration list can be disclosed to the public: "*only* . . . name, address, date of birth, political party affiliation, and voting history." N.J.S.A. § 19:31-18 (emphasis added); N.J.S.A. § 19:31-18.1 (cross-referencing N.J.S.A. § 19:31-18). Proposed Intervenors thus have well established legal interests in avoiding disclosure of unredacted voter files. *Pennsylvania v. President U.S.*, 888 F.3d at 58.

Further, New Jersey law explicitly shields from disclosure the private information of certain categories of residents. Daniel's Law prohibits the disclosure of the home addresses of registered, covered individuals and requires that any public records, including voting records, be redacted accordingly. *See* N.J.S.A. § 19:31-18.1; N.J.S.A. § 47:1B-1. Covered individuals include active or retired judges, prosecutors, law enforcement officers, child protective investigators, and the immediate family members of these individuals living in the same household. N.J.S.A. § 47:1B-1(a)(3). In addition, New Jersey operates a statewide Address Confidentiality Program that furnishes substitute addresses "to enable public

agencies to respond to requests for public records without disclosing the location of a victim of domestic violence, stalking, or sexual assault, or reproductive health service patients and providers." N.J.S.A. § 47:4-2. Likewise, a person who has experienced domestic violence or stalking and has a permanent restraining order, or the immediate family member of a person who has experienced stalking and has a permanent restraining order, may register to vote without disclosing their street address by attaching to their voter registration form a copy of the restraining order and a contact point where they may receive mail, among other information. N.J.S.A. § 19:31-3.2. It is a fourth-degree crime to make public "any information which has been provided by a victim of domestic violence . . . concerning the mailing address, post office box or other contact point of the victim or family member or the election district in which the victim or family member resides." N.J.S.A. § 19:31-3.2(b).

The data sought by the government is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly assembling. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation of any database "describing how any individual exercises rights guaranteed by the First Amendment," which includes exercising the right to vote). These privacy interests are significant to Mr. Somboon, as well as LWVNJ's and LAN's members. *See* Burns Decl. ¶¶ 10-11; Robles Decl. ¶¶ 8-9; Somboon Decl. ¶¶ 10-11.

*Second*, based on the United States's requests to New Jersey and other states,

the data sought is likely to be used to challenge the registration of certain New Jersey voters, including voters who are naturalized citizens (whose current citizenship status might not be reflected in databases that have out-of-date information) and voters with prior felony convictions, *see supra* at 5-15, or impose fear of a challenge or purge and thereby chill voting. This risk applies to Mr. Somboon, a naturalized citizen. Somboon Decl. ¶ 6. Members of LAN and LWVNJ also fall within these categories. *See* Burns Decl. ¶ 10; Robles Decl. ¶ 8.

*Third*, LWVNJ and LAN have protectable interests at stake because their core missions will be harmed if the relief that the federal government seeks is granted. *See* Burns Decl. ¶ 9; Robles Decl. ¶ 7. As a district court held in a similar lawsuit filed by DOJ seeking California's unredacted voter file, "[t]he centralization of [voter] information by the federal government would have a chilling effect on voter registration which would inevitably lead to decreasing voter turnout as voters fear that their information is being used for some inappropriate or unlawful purpose." *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807, at *20 (C.D. Cal. Jan. 15, 2026).

### C. Disposition of this Case Would Impair the Proposed Intervenors' Interests.

Proposed Intervenors' interests would be impaired if Plaintiff succeeds in obtaining its requested relief. To intervene as of right, proposed intervenors need only "demonstrate that their interest *might* become affected or impaired, as a

practical matter, by the disposition of the action in their absence." *Mountain Top Condo Ass'n*, 72 F.3d at 368. Here, there is a significant risk of harm to Proposed Intervenors' interests.

### D. The Secretary of State's Interests Differ from Those of Proposed Intervenors.

Finally, Proposed Intervenors meet their "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Pennsylvania v. President U.S.*, 888 F.3d at 60 (requiring movants to show only "that representation of his interest *may be* inadequate" (citation modified)). "The possibility that the interests of the applicant and the parties may diverge 'need not be great,'" *Am. Farm Bureau Fed'n v. U.S. EPA*, 278 F.R.D. 98, 110 (M.D. Pa. 2011), and a proposed intervenor need only show that "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention," *United States v. Territory of the Virgin Islands*, 748 F.3d 514, 519-20 (3d Cir. 2014).

As a government officer, Lieutenant Governor and Secretary of State Caldwell has a generalized interest in carrying out New Jersey's legal obligations and in minimizing burdens on governmental employees and resources. *See generally Kleissler*, 157 F.3d at 972 ("[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed

intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light."). Lieutenant Governor and Secretary of State Caldwell also must consider broader public policy concerns, in particular the need to maintain working relationships with federal officials. Proposed Intervenors are not constrained in these ways and bring a distinct perspective to this litigation: that of voters whose own rights are at risk. *See Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) ("The State Board has an interest in fulfilling its election obligations as required by the NVRA and Illinois law. Proposed Intervenors seek protection for their discrete set of members' voting rights and have an interest in preventing resource reallocation in doing so." (citations omitted)). These diverging interests—between the government's need to balance various political and administrative considerations and the Proposed Intervenors' more personal stake in the privacy of voter data—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n*, 278 F.R.D. at 110-11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders).

Indeed, there may be arguments and issues that Defendant may not raise that are critical to Proposed Intervenors. For example, individual voters have a more

direct injury than states under the Privacy Act for misuse of their personal data, especially given that the Privacy Act grants individuals an express right to bring suit. *See* 5 U.S.C. § 552a(g)(1)(D) (Whenever an agency "fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency"). In addition, courts have found a risk that considerations external to the issues presented by a case like this can motivate officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors. *See Jud. Watch, Inc.*, 2024 WL 3454706, at *5 (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

## II. In The Alternative, The Court Should Grant Permissive Intervention.

Even if the Court declines to grant intervention as of right, the Court should use its broad discretion to grant permissive intervention. A court may grant permissive intervention when the motion to intervene is "timely," the proposed

intervenors have "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The decision to grant permissive intervention is "highly discretionary." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992). Permissive intervention is appropriate where, as here, the proposed intervenors may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See, e.g.*, *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111 ("In deciding whether to permit intervention under Rule 24(b), courts consider whether the proposed intervenors will add anything to the litigation." (citation modified)).

As discussed above, this motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and their interests are not adequately represented by any of the existing parties. And Proposed Intervenors' defense goes directly to the matters at issue, such as (1) whether federal law permits Plaintiff to force New Jersey to give it the sensitive personal information sought; (2) whether federal and state legal privacy protections prohibit disclosure of that information; and (3) whether the United States's motivations for the data sought are permissible. Proposed Intervenors' distinct perspectives on the issues will complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the questions before it.

Because of their useful and unique contributions, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Republican Nat'l Comm. v. Aguilar*, No. 2:24-cv-00518-CDS-MDC, 2024 WL 3409860, at *1-3 (D. Nev. July 12, 2024) (permitting intervention by voter advocacy group as defendant in litigation seeking purge of voter rolls). The Court should do the same here.

**CONCLUSION**

For all these reasons, the Motion should be granted.

Dated: March 4, 2026

Respectfully submitted,

*/s/ Liza Weisberg*

Liza Weisberg
Ezra D. Rosenberg
Jeanne LoCicero
American Civil Liberties Union
of New Jersey Foundation
570 Broad Street, 11th Floor
P.O. Box 32159
Newark, NJ 07102
(973) 854-1705
lweisberg@aclu-nj.org
erosenberg@aclu-nj.org
jlocicero@aclu-nj.org

Ari J. Savitzky*
Theresa J. Lee*
William Hughes*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org
tlee@aclu.org
whughes@aclu.org
slakin@aclu.org

*Counsel for Proposed Intervenors*

* Application for admission *pro hac vice* forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record on March 4, 2026.

*/s/ Liza Weisberg*
Liza Weisberg