**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>DR. DALE G. CALDWELL, in his official capacity as LIEUTENANT GOVERNOR and SECRETARY of STATE of NEW JERSEY,<br><br>*Defendant*. | Case No. 3:26-CV-2025 (ZNQ-JTQ)<br><br>MOTION DAY:<br>April 6, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS ON BEHALF OF THE NAACP; NAACP NEW JERSEY STATE CONFERENCE; SALVATION AND SOCIAL JUSTICE; AAPI NEW JERSEY; RETURNING CITIZENS SUPPORT GROUP; ASSOCIATION OF BLACK WOMEN LAWYERS OF NEW JERSEY; GARDEN STATE BAR ASSOCIATION; NEW JERSEY MUSLIM LAWYERS ASSOCIATION; PEOPLE'S ORGANIZATION FOR PROGRESS; AND EDWIN ORTIZ**


**NEW JERSEY INSTITUTE FOR SOCIAL JUSTICE**
Micauri Vargas
Ryan P. Haygood
Henal Patel
Nuzhat Chowdhury*
Heather Richner**
60 Park Place, Suite 511 Newark, New Jersey 07102
Telephone: (973) 624-9400

*Counsel for Proposed Intervenor-Defendants*

**PASHMAN STEIN WALDER HAYDEN, P.C.**
CJ Griffin
Gary S. Stein
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200

**Admission to the District of New Jersey forthcoming*
***Pro hac vice application forthcoming*

# TABLE OF CONTENTS

BACKGROUND ..... 1

I. This Lawsuit Seeks Sensitive Voter Data for an Unlawful Use. ..... 1

II. The Proposed Intervenor-Defendants. ..... 5

ARGUMENT ..... 10

I. The Proposed Intervenor-Defendants Are Entitled to Intervene as of Right Pursuant to Rule 24(a). ..... 10

A. The Proposed Intervenor-Defendants' Motion to Intervene is Timely. ..... 10

B. The Proposed Intervenor-Defendants' Interests Will be Substantially Impaired if Plaintiff Prevails. ..... 11

C. Defendant Cannot Adequately Represent the Proposed Intervenor-Defendants' Interests in Their Absence. ..... 16

II. In the Alternative, This Court Should Grant Permissive Intervention Pursuant to Rule 24(b). ..... 18

CONCLUSION ..... 19

**TABLE OF AUTHORITIES**

Page(s)

**Cases:**

*ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*,
309 F.R.D. 191 (D.N.J. 2015) ........ 10

*Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*,
278 F.R.D. 98 (M.D. Pa. 2011) ........ 16

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
701 F.3d 938 (3d Cir. 2012) ........ 10, 11

*Burnett v. County of Bergen*,
198 N.J. 408 (2009) ........ 13

*Donaldson v. United States*,
400 U.S. 517 (1971) ........ 11

*Hoots v. Pennsylvania*,
672 F.2d 1133 (3d Cir. 1982) ........ 17

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) ........ 10, 16, 18

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995) ........ 16

*N.L.R.B. v. Frazier*,
144 F.R.D. 650 (D.N.J. 1992) ........ 10

*Pennsylvania v. President U.S. of Am.*,
888 F.3d 52 (3d Cir. 2018) ........ passim

*Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs*,
135 F.3d 891 (3d Cir. 1998) ........ 12

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ........ 16

*United States v. State of Oregon*,
2026 WL 318402 (D. Or. 2026) ........ 16, 18

*United States v. Territory of Virgin Islands*,
748 F.3d 514 (3d Cir. 2014)........................................................................................... 18

**Statutes:**

5 U.S.C. § 552a(e)(7)............................................................................................................. 12

42 U.S.C.A. § 405(c)(2)(C)(viii)(I) ........................................................................................... 12

52 U.S.C. § 20509....................................................................................................................... 2

52 U.S.C. § 20703....................................................................................................................... 1

N.J.S.A. 56:11-45(g) ................................................................................................................. 13

N.J.S.A. § 19:31-18............................................................................................................. 8, 13

N.J.S.A. § 47:1A-1.1 ................................................................................................................ 12

N.J.S.A. § 47:1A-5.3(b) ....................................................................................................... 8, 12

N.J.S.A. § 47:4-1.................................................................................................................. 8, 12

P.L. 2005, c. 226 ...................................................................................................................... 13

**Rules:**

Fed. R. Civ. P. 24(b)(1)(B) ...................................................................................................... 18

Fed. R. Civ. P. 24(a)(2)................................................................................................................ 1

Fed. R. Civ. P. 24(a) ........................................................................................................... 10, 19

Fed. R. Civ. P. 24(b) .................................................................................................................. 19

Fed. R. Civ. P. 24(c) .................................................................................................................... 1

**Other Authorities:**

Dallas Augustine & Margot Kushel, *Community Supervision, Housing Insecurity, & Homelessness*,
701 Annals Am. Acad. Pol. & Soc. Sci. 152 (May 2022) ........................................................ 3

Faith Bugenhagen, *Texas Flags Thousands of Voters as 'Noncitizens'—But the Data May Be Wrong*,
CHRON (Oct. 22, 2025) ............................................................................................................. 2

Hannah Fingerhut, *Iowa, Naturalized Citizens Settle Lawsuit Over Voter Eligibility Challenges Ahead of 2024 Election*, AP News (Feb. 11, 2026) ........................................................................... 2

Ivan Pereira, T*rump Again Brings Up the Idea of Deporting US Citizens for Crimes*, ABC News (Jul. 1, 2025) .................................................................................................... 4

Jim Saksa, *Trump's Voter Citizenship Database Is 'Flawed' and Could Lead to Disenfranchisement, Election Administrator Warns*, Democracy Docket (Oct. 30, 2025) ........................................................ 3

Kanishka Singh, *Republican Senator Criticizes Trump, Calls Abrego Garcia Case a 'Screw Up'*, Reuters (Apr. 20, 2025) .................................................................................................... 4

Matt Cohen, *Even Red States are Defiantly Rejecting DOJ's Demands for Private Voter Data*, Democracy Docket (Mar. 7, 2026) ..................................................................................... 4

Meryl Kornfield, Elizabeth Dwoskin & Lisa Rein, *Whistleblower Claims Ex-DOGE Member Says He Took Social Security Data to New Job*, Wash. Post (Mar. 10, 2026) .................................................... 4

Perry Stein, Patrick Marley & Isaac Arnsdorf, *DOJ Struggles as White House Presses on Voter Fraud*, Wash Post. (Feb. 20, 2026) ................................................................................................ 4

Stephen Ansolabehere & Eitan D. Hersh, *ADGN: An Algorithm for Record Linkage Using Address, Date of Birth, Gender, and Name*, 4 Stat. & Pub. Pol. 1-10 (2017) ............................................................................................. 3

Thomas Stringham, *Fast Bayesian Record Linkage With Record-Specific Disagreement Parameters*, 40(4) J. Bus. & Econ. Stat., 1509-1522 (2022) .............................................................................. 3

Yunior Rivas, *Trump DOJ Expands Voter Roll Crusade, Sues Five More States — Including Four Red Ones*, Democracy Docket (Feb. 26, 2026), ........................................................................... 4, 5

Pursuant to Federal Rule of Civil Procedure 24(a)(2), the National Association for the Advancement of Colored People ("NAACP"), NAACP New Jersey State Conference ("NJ NAACP"), Salvation and Social Justice ("SandSJ"), AAPI New Jersey ("AAPI NJ"), Returning Citizens Support Group ("RCSG"), Association of Black Women Lawyers of New Jersey ("ABWL-NJ"), Garden State Bar Association ("GSBA"), New Jersey Muslim Lawyers Association ("NJMLA"), People's Organization for Progress ("POP"), and Edwin Ortiz ("Mr. Ortiz") (collectively, "Proposed Intervenor-Defendants") move to intervene as defendants in the above-captioned action.

The Proposed Intervenor-Defendants append to their motion a Proposed Answer, to comply with Rule 24(c). However, the Proposed Intervenor-Defendants intend to file a motion to dismiss in accordance with the time allowed for a response by Rule 12 after intervention is granted or in accordance with any deadline set by a scheduling order issued by this Court.[1]

## BACKGROUND

### I. This Lawsuit Seeks Sensitive Voter Data for an Unlawful Use.

On February 26, 2026, Plaintiff filed this action against Defendant Dr. Dale G. Caldwell, the Lieutenant Governor and Secretary of State of New Jersey, alleging violations of Title III of the Civil Rights Act ("CRA"), 52 U.S.C. § 20703. Plaintiff seeks an order compelling Defendant to provide the U.S. Attorney General with the "current electronic copy of New Jersey's computerized voter registration list, with all fields, including each registrant's name, date of birth, residential address, and either their Driver's License number, the last four digits of their Social Security number, or [a] [Help America Vote Act ("HAVA")] unique identifier." Compl. at 9 (Prayer for Relief ¶ B). Plaintiff claims the U.S. Attorney General and U.S. Department of Justice ("DOJ") require these records to investigate "New Jersey's

---

[1] By attaching the Proposed Answer for purposes of compliance with Rule 24(c), the Proposed Intervenor-Defendants do not waive any right or defense.

compliance with federal election law, particularly the CRA, [National Voter Registration Act ("NVRA"), 52 U.S.C. § 20509], and HAVA." Compl. ¶ 10. That justification is a ruse for much more sinister motives, however.

To avoid repetition, the Proposed Intervenor-Defendants adopt Points I and II of the "Background" section of the brief filed by proposed intervenors League of Women Voters of New Jersey ("LWVNJ") and Latino Action Network ("LAN"). *See* Dkt. No. 3-1 at pp. 3-11. In brief, this lawsuit is one of roughly thirty similar suits seeking access to sensitive voter data from states across the country. The clear ulterior motive is to facilitate the creation of a centralized federal database capable of identifying and challenging certain categories of voters. *Ibid*.

Such a database would likely be used to identify individuals alleged to be noncitizens or otherwise disqualified under disenfranchisement laws, including felony disenfranchisement laws. These efforts disproportionately affect immigrant communities—who are frequently the subject of erroneous non-citizen allegations—and individuals with criminal records, whose voting eligibility is often misunderstood or misclassified under complex disenfranchisement rules. Past attempts to identify purported "non-citizen voters" using database matching have repeatedly produced false positives, wrongly flagging eligible voters due to data errors, name similarities, and outdated records. *See* Faith Bugenhagen, *Texas Flags Thousands of Voters as 'Noncitizens'—But the Data May Be Wrong*, CHRON (Oct. 22, 2025), https://www.chron.com/politics/article/texas-voter-rolls-noncitizens-21114249.php; Hannah Fingerhut, *Iowa, Naturalized Citizens Settle Lawsuit Over Voter Eligibility Challenges Ahead of 2024 Election*, AP News (Feb. 11, 2026), https://apnews.com/article/iowa-voters-immigration-lawsuit-citizenship-2024-3f78043bc4682734a133b78030803323.

Efforts to combine state voter registration data with federal databases raise serious risks of error that could wrongly flag eligible voters as noncitizens or otherwise ineligible. Election administrators have

warned that proposed citizenship-verification databases are "flawed" and could lead to voter disenfranchisement. *See* Jim Saksa, *Trump's Voter Citizenship Database Is 'Flawed' and Could Lead to Disenfranchisement, Election Administrator Warns*, Democracy Docket (Oct. 30, 2025), https://www.democracydocket.com/news-alerts/trumps-voter-citizenship-database-is-flawed-and-could-lead-to-disenfranchisement-election-administrator-warns/. Research on large-scale database matching confirms these concerns, demonstrating that linking records across datasets—often using names and other common identifiers—frequently produces false matches because many individuals share similar identifying information. *See* Stephen Ansolabehere & Eitan D. Hersh, *ADGN: An Algorithm for Record Linkage Using Address, Date of Birth, Gender, and Name*, 4 Stat. & Pub. Pol. 1-10 (2017), https://doi.org/10.1080/2330443X.2017.1389620; Thomas Stringham, *Fast Bayesian Record Linkage With Record-Specific Disagreement Parameters*, 40(4) J. Bus. & Econ. Stat., 1509-1522 (2022), https://doi.org/10.1080/07350015.2021.1934478. Adding additional personal identifiers will significantly increase the exposure of voters' sensitive personal information.

These risks are particularly acute for individuals who already face structural barriers, including formerly incarcerated individuals, who frequently experience ongoing discrimination in housing, employment, and civic life. *See* Dallas Augustine & Margot Kushel, *Community Supervision, Housing Insecurity, & Homelessness*, 701 Annals Am. Acad. Pol. & Soc. Sci. 152 (May 2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9762769/; Thomas P. LeBel, *If One Doesn't Get You Another One Will: Formerly Incarcerated Persons' Perceptions of Discrimination*, 92 Prison J. 63 (2012), https://journals.sagepub.com/doi/10.1177/0032885511429243. Errors in large-scale database matching could therefore compound existing barriers to civic participation.

Concerns about the use of citizenship data are further heightened by public statements suggesting that "U.S. citizens who commit crimes could be deported," a proposal widely criticized as unconstitutional.

*See* Ivan Pereira, *Trump Again Brings Up the Idea of Deporting US Citizens for Crimes*, ABC News (Jul. 1, 2025), https://abcnews.com/Politics/trump-brings-idea-deporting-us-citizens-crimes/story?id=123385213; Kanishka Singh, *Republican Senator Criticizes Trump, Calls Abrego Garcia Case a 'Screw Up',* Reuters (Apr. 20, 2025), https://www.reuters.com/world/us/republican-senator-criticizes-trump-calls-abrego-garcia-case-screw-up-2025-04-20/. At the same time, recent reporting indicates that the DOJ has sought voter registration data to share with the Department of Homeland Security to identify individuals who "registered to vote before becoming naturalized citizens"—part of a broader push to investigate alleged voter fraud by noncitizens. *See* Perry Stein, Patrick Marley & Isaac Arnsdorf, *DOJ Struggles as White House Presses on Voter Fraud*, Wash Post. (Feb. 20, 2026), https://www.washingtonpost.com/politics/2026/02/20/trump-voting-fraud-justice-department/. In this broader enforcement environment, the creation of a centralized federal database containing sensitive voter information raises substantial concerns about both accuracy and weaponization. Recent reporting regarding possible breaches of sensitive federal data further underscores those risks. *See* Meryl Kornfield, Elizabeth Dwoskin & Lisa Rein, *Whistleblower Claims Ex-DOGE Member Says He Took Social Security Data to New Job*, Wash. Post (Mar. 10, 2026), https://www.washingtonpost.com/politics/2026/03/10/social-security-data-breach-doge/.

Notably, while twelve states have complied with DOJ's request for these voter records, most states—including those with Republican leadership—have refused to provide such sensitive information. *See* Matt Cohen, *Even Red States are Defiantly Rejecting DOJ's Demands for Private Voter Data*, Democracy Docket (Mar. 7, 2026), https://www.democracydocket.com/analysis/even-red-states-are-defiantly-rejecting-dojs-demands-for-private-voter-data. Courts have likewise been skeptical of similar lawsuits: three federal courts have already dismissed such actions, and the DOJ has appealed each decision. *See* Yunior Rivas, *Trump DOJ Expands Voter Roll Crusade, Sues Five More States — Including Four*

*Red Ones*, Democracy Docket (Feb. 26, 2026), https://www.democracydocket.com/news-alerts/trump-doj-expands-voter-roll-crusade-sues-five-more-states/.

**II. The Proposed Intervenor-Defendants.**

Proposed Intervenor-Defendants are organizations and individuals committed to advancing civil rights, protecting democratic participation, and ensuring equal access to justice. *See* Ex. 2, Decl. of Anthony P. Ashton ("Ashton Decl.") ¶ 5; Ex. 4, Decl. of Racquel Romans-Henry ("Henry Decl") ¶ 7; Ex. 10, Decl. of Lawrence Hamm ("Hamm Decl"). ¶ 5; Ex. 5, Decl. of Amber Reed ("Reed Decl.") ¶¶ 11, 13; Ex. 11, Decl. of Edwin Ortiz ("Ortiz Decl.") ¶¶ 4, 9, 10. Edwin Ortiz, individual Proposed Intervenor-Defendant, along with many members and constituents of the organizational Proposed Intervenor-Defendants, are registered voters whose voter information would be disclosed if Plaintiff prevails. *Id.* Together, the organizational Proposed Intervenor-Defendants represent thousands of members, attorneys, and community stakeholders across New Jersey that regularly engage in advocacy, community outreach, and legal work affecting the communities involved in this litigation.[2] *Id.*

The NAACP is the nation's oldest organization dedicated to the advancement of civil rights. *See* Ashton Decl. ¶ 5. It serves 200,000 formal members and engages in voter protection efforts, including litigation, a voter protection hub and voter guides, and voter protection command centers staffed by dozens of lawyers and law students. The NAACP also takes steps to educate and register voters for elections, including referenda, for every election cycle, with the goal of achieving equality, political rights, and expand civil rights for Black people and all people of color. *See* Ashton Decl. ¶ 9.

The NJ NAACP is one of the earliest affiliates of the NAACP. Its mission is to ensure the political, educational, social, and economic equality of rights for all persons, and to eliminate racial discrimination.

---

[2] Detailed information about the interests of each proposed Intervenor-Defendant is included in their respective declarations which are attached as Exhibits 2 to 11.

*See* NJ NAACP Decl. ¶ 6. In support of that mission, NJ NAACP promotes civic engagement and political participation among its members and their communities, including by providing education about voting options. The NJ NAACP has approximately 10,000 active members across the state. *See* NJ NAACP Decl. ¶ 7.

SandSJ is a New Jersey Black-led nonprofit organization focused on abolishing structural racism and liberating public policy by building the hope and resiliency of Black faith communities and empowering historically marginalized people to move from lament to liberation by advocating, envisioning, and creating their own community-led solutions. *See* Henry Decl. ¶¶ 6-7. AAPI NJ is a grassroots non-profit organization whose mission is to advocate for the well-being, rights, representation, histories, and cultures of more than one million Asian Americans, Native Hawaiians, and Pacific Islanders in New Jersey. *See* Reed *Decl.* ¶ 7. Both SandSJ and AAPI NJ engage in civic education, voter registration, and get-out-the-vote efforts, advocacy for educational equity and inclusion, language access, immigrant rights, ballot reform, government transparency, and other policies advancing the welfare of communities of color. These organizations champion the well-being and rights of New Jersey's communities of color. *See* Reed Decl. ¶¶ 6-7; Henry Decl. ¶¶ 7-8.

RCSG is a Newark-based nonprofit organization that supports returning citizens—people who were previously incarcerated—and their families, serving about 500 individuals annually through programs and advocacy that help them obtain identification, secure housing and employment, navigate government systems, and participate fully in civic life, including registering to vote and voting. *See* Ex. 6, Dec. of Edwin Ortiz on Behalf of RCSG ("RCSG Decl.") ¶¶ 6-7.

ABWL-NJ is the oldest women's bar association in New Jersey and strives to meet the needs of Black women and students in the practice of law. *See* Ex. 7, Decl. of Carolyn V. Chang ("Chang Decl.") ¶ 5. Based in Trenton, it represents 98 attorneys across the state and has served Black women, their

families, and the New Jersey community-at-large through advocacy, public education, forums and workshops, grassroots outreach, and efforts that strengthen support for the guiding democratic principle of equal justice for all. *See* Chang Decl. ¶ 5. GSBA similarly represents attorneys committed to advocating broadly for fairness and equal access to justice for all people, with a particular emphasis on supporting communities of color that have historically experienced discrimination and barriers to full participation in civic and economic life. *See* Ex. 8, Decl. of Joel Clymer ("Clymer Decl.") ¶¶ 5, 7. The organization currently has approximately 560 official members and is connected to approximately 1,322 individuals through membership, leadership roles, and participation in other programming and initiatives. *See* Clymer Decl. ¶ 6.

NJMLA is a volunteer association established in 2006 and comprised of approximately 650 Muslim attorneys, judges, and law students who work or reside in New Jersey. Its purpose is to advance the goals and interests of Muslim attorneys in New Jersey and to promote Muslim participation in public service and civic engagement. *See* Ex. 9, Decl. of Saad Admani ("Admani Decl.") ¶¶ 5-6. NJMLA advocates for civic engagement among the New Jersey Muslim community by engaging with members, other Muslim organizations, religious institutions, and community members through voter registration, voter engagement, know-your-rights workshops, candidate forums, and voter education work, and has a reach of at least 3,000 community members through its engagement. *See* Admani Decl. ¶¶ 6, 12.

POP is a Newark-based non-profit civil rights organization that works to advance the principles that defined Dr. Martin Luther King Jr.'s quest for racial equality, economic justice and peace. *See* Hamm Decl. ¶ 5. It currently serves 172 members and encourages civic engagement and participation, especially among the Black and Latino/a communities it serves in Newark and other urban areas, through strategies such as letter-writing campaigns, calling elected officials, attending government meetings, testifying before legislative committees, and voter registration. *See* Hamm Decl. ¶¶ 6-7.

All of the aforementioned organizations engage in community advocacy, public education, forums and workshops, grassroots outreach, and other efforts to advance democratic principles of equal justice for all, with particular emphasis on access to voting rights and participation in the democratic process. *See* Chang Decl. ¶ 5; Clymer Decl. ¶ 10; Admani Decl. ¶ 12; Hamm Decl. ¶¶ 6-8.

This case directly implicates the interests of Proposed Intervenor-Defendants because the relief sought by Plaintiff would require the disclosure of sensitive, non-public voter information maintained by the State. That information—including identifying information submitted during voter registration—is protected under state law and is ordinarily treated as confidential. *See* N.J.S.A. § 19:31-18; N.J.S.A. § 47:1A-5.3(b).

Proposed Intervenor-Defendants work directly with the voters whose information is at stake and therefore have a strong interest in this litigation. Through voter engagement, education, and legal advocacy, they regularly assist individuals in registering to vote, maintaining their registrations, and participating in elections. *See* Ashton Decl. ¶ 9; Reed Decl. ¶ 12; Hamm Decl. ¶ 6; Henry Decl. ¶ 8; RCSG Decl. ¶ 8; Admani Decl. ¶ 12. Requiring the disclosure of confidential voter information would undermine those efforts by deterring participation and eroding trust in the voter registration process.

The interests of Proposed Intervenor-Defendants' constituents—including members, board members, and staff—are also directly implicated. Many individuals served by these organizations have significant privacy interests in their personal voter information. *See* Ashton Decl. ¶¶ 7, 8, 14, 15, 17, 19; Hamm Decl. ¶ 14; Henry Decl. ¶¶ 13-14, Admani Decl. ¶¶ 10-11, 13. These include individuals whose safety depends on the confidentiality of their identifying information, such as survivors of domestic violence, sexual violence, and stalking, as well as reproductive health patients and providers who may face harassment or retaliation if their personal information is disclosed. N.J.S.A. § 47:4-1 to -6; *see* Ashton Decl. ¶¶ 7, 8, 15; Hamm Decl. ¶ 14; Henry Decl. ¶ 13; Chang Decl. ¶ 8; Admani Decl. ¶¶ 8, 10-11; Clymer

Decl. ¶ 9. In addition, many constituents face an elevated risk of scrutiny in voter registration or list-maintenance efforts, including naturalized citizens and individuals with prior criminal convictions. These individuals include returning citizens and individuals such as Mr. Ortiz, whose prior involvement in the criminal legal system heightens concerns about government scrutiny and monitoring. *See* RCSG Decl. ¶¶ 10-12; Ortiz Decl. ¶¶ 12-15. Members of racial justice organizations likewise include individuals from communities that have historically been subject to disproportionate government surveillance and law enforcement scrutiny. *Id.* at 9. The requested disclosure therefore threatens not only the organizational missions of Proposed Intervenor-Defendants but also the privacy and security interests of the individuals they represent.

Like many individuals served by the organizational intervenors, Proposed Intervenor-Defendant Mr. Ortiz—a formerly incarcerated U.S. citizen—fears he could be targeted because of his criminal history considering statements by the current administration suggesting that individuals described as "criminals" should be deported from the United States, potentially to countries other than their country of origin. *See* Ortiz Decl. ¶ 13. He is further concerned that, because he has a common last name, large-scale comparisons of voter registration data with federal databases could produce errors that falsely associate him with immigration enforcement databases, subjecting him to heightened scrutiny or other adverse enforcement consequences. *Id.* at 15.

The Proposed Intervenor-Defendants seek to intervene as defendants in this litigation. Other entities and have already sought to intervene, including LWVNJ, LAN, and Make the Road New Jersey ("MRNJ"). Their motions are pending and they do not oppose this motion. Defendant takes no position on this motion. Plaintiff has not responded.

The Proposed Intervenor-Defendants are entitled to intervene as of right under Rule 24(a) as the present litigation poses a significant threat to their interests, and those interests are not adequately

represented by the existing Defendant in this case. In the alternative, the Proposed Intervenor-Defendants request that this Court permit them to intervene pursuant to its discretion under Rule 24(b).

**ARGUMENT**

## I. The Proposed Intervenor-Defendants Are Entitled to Intervene as of Right Pursuant to Rule 24(a).

Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, a movant is entitled to intervene as of right if: (1) the application is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest will be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. *Pennsylvania v. President U.S. of Am.*, 888 F.3d 52, 57 (3d Cir. 2018) (citing *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)). Under this standard, the "facts assume overwhelming importance in each decision." *Id.* at 58. Rule 24(a) is to be liberally construed in favor of intervention. *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 309 F.R.D. 191, 192 (D.N.J. 2015) (citing *N.L.R.B. v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992)). Because Proposed Intervenor-Defendants satisfy each of these requirements, intervention should be granted.

### A. The Proposed Intervenor-Defendants' Motion to Intervene is Timely.

The Third Circuit uses three factors to determine whether a motion to intervene is timely: (1) how far the proceedings have gone when the movant seeks to intervene, (2) the prejudice that resultant delay might cause to other parties, and (3) the reason for the delay. *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012). "There is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Id.*

Here, the Proposed Intervenor-Defendants did not delay in seeking to intervene. First, the proceedings are in the very beginning stages, with the complaint having only been filed on February 26,

2026—a mere fifteen days prior to this motion to intervene. LWVNJ and LAN filed their motion to intervene on March 4, 2026, which is pending. *See* Dkt. No. 3. MRNJ filed its motion March 6, 2026, which is also pending. *See* Dkt. No. 6. This motion, which represents the interests of ten Proposed Intervenor-Defendants, was filed within one week. Plaintiff has not filed any motions for relief yet in this case or taken any steps to further the action. Defendant has not filed any response to the lawsuit.

Second, no prejudice would result to the other parties if the Proposed Intervenor-Defendants are granted intervention. The original State Defendant is not harmed by the Proposed Intervenor-Defendants' intervention because he has not yet answered Plaintiff's complaint as of the filing of this motion. The other proposed intervenors will not be prejudiced because their motions to intervene as defendants were only recently filed and are still pending and returnable on the same motion day (April 6, 2026) as this motion. No dispositive motions have been filed by any party. Simply put, allowing Proposed Intervenor-Defendants to participate will not require altering any existing deadlines and Proposed Intervenor-Defendants agree to abide by any future deadlines that are set by the Court.

Finally, upon learning of the lawsuit and realizing that the existing parties could not adequately represent their interests nor the interests of their members, the Proposed Intervenor-Defendants retained counsel and their counsel worked as expeditiously as possible to file this motion on behalf of ten different clients. *See Benjamin*, 701 F.3d at 950 (finding that any "delay should be measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings"). The Proposed Intervenor-Defendants did not delay in filing this motion to intervene. Therefore, given the early stages of this litigation, the motion to intervene is timely.

### B. The Proposed Intervenor-Defendants' Interests Will be Substantially Impaired if Plaintiff Prevails.

To demonstrate a "sufficient interest in the litigation," a putative intervenor must show that its interest is "significantly protectable." *Pennsylvania v. President U.S.*, 888 F.3d at 57-58 (citing *Donaldson*

*v. United States*, 400 U.S. 517, 531 (1971)). The intervenor must show that its interest is "specific to [the intervenor], is capable of demonstration, and will be directly affected in a substantially concrete fashion by the relief sought." *Id.* at 58.

Here, Proposed Intervenor-Defendants' interests are to protect the privacy rights of their constituents—many of whom are registered voters—whose highly sensitive personal information Plaintiff seeks from New Jersey's unredacted voter file, including their "full name[s], date[s] of birth, address[es], and driver's license number[s ]or [the] last four digits of [their] [S]ocial [S]ecurity number[s]." Compl. ¶ 27. Disclosure of this information raises serious privacy concerns and runs afoul of multiple federal and state protections limiting disclosure of personal identifiers, including statutes protecting Social Security numbers and implicating First Amendment activity. *See, e.g.*, 5 U.S.C. § 552a(e)(7) (prohibiting agencies from maintaining records describing how individuals exercise First Amendment rights absent statutory authorization); 42 U.S.C.A. § 405(c)(2)(C)(viii)(I) (providing that Social Security numbers obtained pursuant to law "shall be confidential" and may not be disclosed); *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs*, 135 F.3d 891, 905 (3d Cir. 1998) (holding names, addresses, and Social Security numbers confidential under FOIA where disclosure would constitute an unwarranted invasion of privacy); N.J.S.A. § 47:1A-1.1 (exempting Social Security numbers contained in documents required for government services); N.J.S.A. § 47:4-1 to -6 (establishing Address Confidentiality Program to protect the addresses of victims of domestic violence, stalking, and certain reproductive health providers and patients).

New Jersey law likewise reflects a clear legislative judgment that access to voter information must be carefully limited. Although voter registration records are generally accessible, the State requires redaction of "voter signatures, Social Security numbers, driver license numbers, and non-driver identification numbers" from those records. N.J.S.A. § 47:1A-5.3(b). And "voter lists," may include only

"a voter's name, date of birth, party affiliation, and voting history." N.J.S.A. § 19:31-18. Voters therefore reasonably expect that sensitive identifying information provided during registration will remain confidential.

Courts have recognized the significant privacy interests implicated by the disclosure of personal identifiers such as Social Security numbers paired with names and addresses. In *Burnett v. County of Bergen*, 198 N.J. 408 (2009), the New Jersey Supreme Court emphasized the serious privacy concerns raised by the disclosure of "millions" of records containing names, addresses, and Social Security numbers for placement in a "centralized computer database." *Id.* at 437. The Court noted that numerous provisions of state law reflect the Legislature's intent to protect Social Security numbers, including the Identity Theft Protection Act, P.L. 2005, c. 226, which seeks to limit access to an individual's Social Security number "whenever possible." *Id.* at 436 (quoting N.J.S.A. 56:11-45(g)). The Court therefore held that members of the public have a reasonable expectation that such information will not be disclosed absent very compelling interests and well-established safeguards against misuse and subsequent nonconsensual disclosures. *Id.* at 437.

Here, the Proposed Intervenor-Defendants are concerned not only about the initial disclosure of voter records to the DOJ, but also how that information may be used outside the limited purposes of HAVA and the NVRA. Ashton Decl. ¶¶ 14-15; Chang Decl. ¶ 11; Admani Decl. ¶ 10; Hamm Decl. ¶¶ 11-12; Racquel Decl. ¶¶ 12-13. In particular, they are concerned that voter data could be incorporated into broader federal databases or cross-referenced with other government datasets to facilitate challenges to the registration of voters falsely identified as noncitizens or otherwise deemed ineligible based on prior convictions. RCSG Decl. ¶ 11; Ortiz Decl. ¶ 15.

Those concerns are amplified because the requested relief would expose voter records to comparison with other large administrative datasets containing overlapping personal identifiers. The

disclosure uniquely affects communities served by the organizational Proposed Intervenor-Defendants whose information may already appear across multiple government record systems—including individuals with prior criminal convictions, such as Mr. Ortiz. Ortiz Decl. ¶ 14. When large datasets are compared using identifiers such as names and dates of birth, erroneous matches are a well-documented consequence. *See* Ansolabehere & Hersh, *ADGN*, *supra,* 4 Stat. & Pub. Pol'y 1; Stringham, *Fast Bayesian Record Linkage*, *supra,* 40 J. Bus. & Econ. Stat. 1509. Subjecting voter records to such comparisons therefore creates a substantial risk that eligible voters will be incorrectly flagged or subjected to heightened scrutiny. Public statements by this administration suggesting that individuals labeled "criminals," including potentially U.S. citizens, could face deportation further underscore the consequences of such errors. Pereira, *supra*, *Trump Again Brings Up the Idea of Deporting US Citizens for Crimes*, ABC News. Furthermore, as felony disenfranchisement laws vary by state, and as they have changed over time even in New Jersey, there is an additional risk to individuals with prior criminal convictions that their vote may be erroneously challenged without consideration of the current, applicable state law. *See* Vanessa Romo, *New Jersey Governor Signs Bills Restoring Voting Rights To More Than 80,000 People*, NPR (Dec. 18, 2019), https://www.npr.org/2019/12/18/789538148/new-jersey-governor-signs-bills-restoring-voting-rights-to-more-than-80-000-peop; New Jersey Institute for Social Justice, *We Are 1844 No More: Let Us Vote*, (Mar. 2019), https://njisj.org/reports/1844-no-more/.

These risks are particularly concrete for Mr. Ortiz, a formerly incarcerated U.S. citizen who has had his right to vote restored in New Jersey. His common last name and his prior contact with the criminal legal system make him especially susceptible to erroneous record matches when voter data are compared against other government databases. Ortiz Decl. ¶ 15. As a result, he faces a heightened risk of being wrongly associated with unrelated records subjected to scrutiny despite his eligibility to vote. Likewise, he also faces a heightened risk of his vote being erroneously challenged because of his prior conviction.

The Proposed Intervenor-Defendants are also concerned about identity theft and other serious privacy breaches if voter records are disclosed to Plaintiff. Indeed, just this week the *Washington Post* reported that the Social Security Administration's inspector general is investigating a complaint "that alleges a former U.S. DOGE Service employee claimed he had access to two highly sensitive agency databases and planned to share the information with his private employer." Kornfield, Dwoskin & Rein, *Whistleblower Claims Ex-DOGE Member Says He Took Social Security Data to New Job*, *supra,* Wash. Post. According to the complaint, the DOGE employee had "God-level" access to records "of more than 500 million living and dead Americans, including Social Security numbers, places and dates of birth, citizenship, race and ethnicity, and parents' names," which he transferred to a thumb drive to upload into his new company's systems. *Ibid.* The DOGE employee said he "expected to receive a presidential pardon if his actions were deemed to be illegal." *Ibid*.[3]

These interests—protecting the privacy, security, and voting rights of their members and constituents—are "specifically protectable" by the Proposed Intervenor-Defendants themselves, and they properly seek to defend those interests through intervention. Courts evaluating similar efforts by Plaintiff to obtain voter data have routinely permitted organizations such as the NAACP and similarly situated advocacy groups to intervene to protect affected voters. *See e.g.*, *United States v. Weber*, __ F.Supp.3d __ (C.D. Cal. 2026) (granting motion to dismiss by several intervenor organizations, including NAACP and its statewide chapter, in identical case seeking California's voter rolls); *United States v. Benson*, __

[3] *Wired* has reported that the DOGE employee works at Leidos, a company with substantial government contracts. Victoria Elliott & Makena Kelly, *John Solly is the DOGE Operative Accused of Planning to Take Social Security Data to His New Job*, Wired (Mar. 12, 2026), https://www.wired.com/story/john-solly-doge-operative-accused-social-security-data-leidos/. In 2024, hackers published sensitive internal documents stolen from Leidos. *See Hackers Leak Documents from Pentagon IT Services Provider Leidos, Bloomberg News Reports*, Reuters (July 23, 2024), https://www.reuters.com/technology/cybersecurity/hackers-leak-documents-pentagon-it-services-provider-leidos-bloomberg-news-2024-07-23/.

F.Supp.3d __ (W.D. Mich. 2026) (granting motion to dismiss by intervenors Michigan Alliance of Retired Americans and two individuals in identical case seeking Michigan's voter rolls); *United States v. State of Oregon*, 2026 WL 318402 (D. Or. 2026) (granting motion to dismiss by economic justice organization and individual intervenors in identical case seeking access to Oregon's voter rolls).

"The polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Kleissler,* 157 F.3d at 972. Here, Plaintiff's requested relief would directly expose the personal information of Proposed Intervenor-Defendants, their constituents, and the individual voters associated with their organizations, placing those individuals' privacy and safety at risk. It would also impair the Proposed Intervenor-Defendants' ability to protect their constituents from these risks and carry out their organizational missions of engaging voters and assisting them in registering and participating in elections. Their interests are therefore direct, concrete, and sufficient to support intervention.

### C. Defendant Cannot Adequately Represent the Proposed Intervenor-Defendants' Interests in Their Absence.

The Proposed Intervenor-Defendants' interests diverge from those of the existing Defendant, and their interests are inadequately represented as a result. "The possibility that the interests of the applicant and the parties may diverge 'need not be great,'" *Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011) (internal cite omitted), and a party's interest is not adequately represented if the interests "diverge sufficiently from the interests of the existing party, such that 'the existing party cannot devote proper attention to the applicant's interests.'" *Pennsylvania v. President U.S.,* 888 F.3d at 60 (internal cite omitted). Both the Supreme Court and the Third Circuit have held that "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc*., 72 F.3d 361, 368 (3d Cir. 1995) (quoting *Trbovich v. United Mine Workers*,

404 U.S. 528, 538 n. 10 (1972)); *see also Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982).

Here, while the Proposed Intervenor-Defendants obviously share some of the same interests as the Defendant Secretary of State, their interests are far from identical to his. The Secretary of State must defend "numerous complex and conflicting interests." *Pennsylvania v. President U.S.*, 888 F.3d at 60. As a government official, Defendant must balance a variety of competing interests, such as his obligation to comply with the law while minimizing the strain on state resources. Earlier this week, Governor Mikie Sherrill announced her proposed budget and cited serious deficits that New Jersey is facing, which she attributed in large part to the Trump Administration's "massive cuts" to "critical programs." *See* Daniel Han, *Mikie Sherrill Puts Fiscal Restraint at Center of Her First Budget for New Jersey*, POLITICO (Mar. 10, 2026), https://www.politico.com/news/2026/03/10/mikie-sherrill-budget-new-jersey-00821240. Although the Secretary of State thus far has resisted Plaintiff's demands that he disclose sensitive personal information of voters, at any point the State could decide that it no longer wishes to expend resources fighting this lawsuit or that it would be beneficial to provide the data in hopes that the Trump Administration may restore funding in return.

In contrast, the Proposed Intervenor-Defendants have no such considerations and will advocate zealously to protect their distinct interests and the privacy rights of their members. Each organizational Proposed Intervenor-Defendant is not only led by registered voters whose own personal information is at risk in this lawsuit, but they have also demonstrated longstanding, deep commitments to protecting the rights of their various constituents who have historically been the targets of voter suppression, surveillance, and voter disenfranchisement.

As the Third Circuit has recognized: "[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light."

*Kleissler*, 157 F.3d at 972. The Proposed Intervenor-Defendants' interests, therefore, diverge substantially from that of the Defendant such that the Defendant cannot adequately represent them in this matter.

Proposed-Intervenor Defendants' interests are also distinct from the interests of the other proposed-intervenors, LWVNJ, LAN, and MRNJ. In addition to having separate individual intervenors in the case—Mr. Ortiz is a US-born citizen who is formerly incarcerated and has a common last name compared to the other individual intervenors who have not identified any prior criminal record—the organizational intervenors also differently implicated by the issues of this case. The Proposed-Intervenor Defendants' here serve different communities in New Jersey (Black and Latina/o Americans, Asian Americans, legal associations) and the various constituencies have different serious privacy concerns related to this litigation.

**II. In the Alternative, This Court Should Grant Permissive Intervention Pursuant to Rule 24(b).**

Rule 24(b) allows permissive intervention for any party who has a defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(B). Courts must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* It is well settled that whether to grant permissive intervention is a "highly discretionary decision" left in the hands of the district court. *United States v. Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014).

Permissive intervention is appropriate here and has been granted in substantially similar circumstances. *See e.g.*, *Weber*, __ F.Supp.3d __; *Benson*, __ F.Supp.3d __ ; *United States v. State of Oregon*, 2026 WL 318402. This motion to intervene is timely, and intervention would not unduly delay the present litigation. As discussed above, the Proposed Intervenor-Defendants file this motion a mere fifteen days after the complaint was filed, before Defendant has filed a response, and before any merits motions have been filed, and its motion is returnable on the same day as the other proposed intervenors. Accordingly, granting intervention will not delay the ongoing litigation or prejudice the original parties

because the case remains in its earliest stages.

Finally, the Proposed Intervenor-Defendants' intended defense shares a common question of law or fact with the main action, namely that Plaintiff's request falls outside the scope of the CRA and instead is a pretext for gaining access to private voter data for purposes of creating a national voter database and targeting voters for disenfranchisement. Therefore, permissive intervention is appropriate, even if the Court somehow determines Proposed Intervenor-Defendants are not entitled to intervention as of right.

## CONCLUSION

This litigation directly impacts the Proposed Intervenor-Defendants and their constituents (*i.e.*, board members, staff, and members), whose privacy will be violated by the disclosure of their sensitive information for unlawful purposes and who will be at risk of challenges to their right to vote. Because their interests cannot be adequately represented by the existing Defendant in this litigation, the Proposed Intervenor-Defendants respectfully request that the Court grant intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b).

Dated: Mar. 13, 2026

Respectfully submitted,

*/s/ CJ Griffin*

CJ Griffin
Gary S. Stein
**PASHMAN STEIN WALDER HAYDEN P.C.**
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200

Micauri Vargas
Ryan P. Haygood
Henal Patel
Nuzhat Chowdhury*
Heather Richner**
**NEW JERSEY INSTITUTE FOR SOCIAL JUSTICE**
60 Park Place, Suite 511
Newark, New Jersey 07102
Telephone: (973) 624-9400

*Counsel for Proposed Intervenor-Defendants*

* Admission to the District of New Jersey forthcoming
** *Pro hac vice* application forthcoming