# EXHIBIT 5



**State of New Jersey**
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX 0112
TRENTON, NJ  08625-0112

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

MATTHEW J. PLATKIN
*Attorney General*

MICHAEL C. WALTERS
*Acting Director*

August 28, 2025

**<u>Via Email (voting.section@usdoj.com)</u>**

Maureen Riordan
Acting Chief, Voting Section
Michael Gates
Deputy Assistant Attorney General
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW – 4CON
Washington, DC  20530

Dear Acting Chief Riordan and Deputy Assistant Attorney General Gates:

On behalf of the Division of Elections ("DOE") in the New Jersey Department of State, I write in response to your letter to Lieutenant Governor Way dated July 15, 2025, which requests information regarding New Jersey's procedures for maintaining its statewide voter registration list pursuant to the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501-20511.

"[T]he NVRA both protects registered voters from improper removal from the rolls and places limited requirements on states to remove ineligible voters from the rolls." *Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 179 (3d Cir. 2017).  To that end, the statute sets forth several requirements regarding States' maintenance of their voter registration lists.  Among other things, the NVRA directs States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or a change in residence.  52 U.S.C. § 20507(a)(4).  It prohibits States from removing a registrant based on change of residence except in specified circumstances.  *Id.* § 20507(d).  The statute also mandates that registration-list-maintenance programs be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965, 42 U.S.C. §§ 1973 *et seq.*  52 U.S.C. § 20507(b).

As your July 15 letter notes, the NVRA also contains a public-records provision, which requires States to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1).  That provision extends only to production of pre-existing records; it does not require States to create new records or otherwise respond to inquiries.  Notwithstanding the lack of any such legal requirement, we are happy to provide an overview of New Jersey's list-maintenance laws, procedures, and activities.



HUGHES JUSTICE COMPLEX · TELEPHONE: (609) 376-3232 FAX: (609) 292-7822
*New Jersey is an Equal Opportunity Employer · Printed on Recycled Paper and Recyclable*



August 28, 2025

In New Jersey, a robust set of State laws and procedures more than satisfy the NVRA's list-maintenance requirements. New Jersey's election officials utilize the Statewide Voter Registration System ("SVRS") to implement and comply with the comprehensive legal framework for the maintenance of accurate and current voter registration rolls. *See* N.J. Stat. Ann. §§ 19:31-31, -32. The State is the owner of the SVRS and ensures its availability, functionality, and support for election officials. *See id.* §§ 19:31-31(a), -32(c), (d). List-maintenance actions, such as voter updates and changes, are performed within the SVRS by county election officials. *See id.* §§ 19:31-2, -32(b).

The SVRS is designed, programmed, and periodically updated to comply with and implement the requirements of all applicable federal and state law, including constitutional, statutory, and regulatory provisions as well as judicial precedent. For example, N.J. Stat. Ann. § 19:31-15 governs the removal of voters from the SVRS, changes of addresses, and the failure of voters to respond to a mailed or public cancellation notice. In accordance with the NVRA, N.J. Stat. Ann. § 19:31-15 requires, *inter alia*, that a county commissioner of registration remove the name of a registrant from the SVRS if the registrant confirms a change in residence to a place outside the State or fails to respond to an address-confirmation notice and then does not vote or appear to vote in any county (and, if necessary, correct the official record of the registrant's address) in any election during the ensuing period ending the day after the second federal general election following the sending of the notice. N.J. Stat. Ann. § 19:31-15; *compare id.* with 52 U.S.C. § 20507(c), (d).

N.J. Stat. Ann. § 19:31-16 governs the removal of voters identified as deceased. It prescribes a program in which local officials in charge of death records notify county election officials, on a periodic basis (generally no less than once per month but at least once every two weeks during the two months immediately preceding a primary or general election), of the deaths of all persons 18 years of age or older residing in the county, and the election officials then remove from the list of eligible voters any such decedents who were registered to vote. *Id.* § 19:31-16(a). As a backstop, at least once per year, the State registrar of vital statistics also notifies the election officials of each county of those residents of the county who died during the previous year; any such decedents who were registered are similarly removed from the list of eligible voters (if they were not already removed). *Id.* § 19:31-16(b); *see also id.* § 19:31-32(e)(2) (requiring Secretary of State to enter into agreement with the Commissioner of the Department of Health and Senior Services to match information in the [SVRS] with State agency information on death records).

Although the NVRA "require[s] an affirmative program of list maintenance to remove [only] voters who become ineligible because of death or change of address," *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019); *see* 52 U.S.C. § 20507(a)(4), New Jersey law provides additional list-maintenance requirements. By way of example, N.J. Stat. Ann. § 19:31-17 governs the removal of individuals convicted of a crime "under the laws of [New Jersey] or another state or of the United States," who are ineligible to vote while serving a sentence of incarceration, N.J. Stat. Ann. § 19:4-1(8). That list-maintenance provision requires that county election officials receive notice on a regular (at least monthly) basis of any criminal conviction of any county resident, and requires those election officials to ensure that any such persons who are registered are precluded from voting during their period of ineligibility. *See id.* § 19:31-17; *see also id.* § 19:31-32(3), (4) (requiring Secretary of State to enter into agreements with the Commissioner of the Department of Corrections and Administrative Office of the Courts, respectively, to match information in the SVRS with State agency information regarding individuals who are incarcerated).

As noted, the SVRS is programmed in accordance with the laws of New Jersey and thus complies with all the list-maintenance requirements described above, among others.

2

4439693.8

August 28, 2025

Having provided an overview of New Jersey's list-maintenance laws, procedures, and activities, we now address the more specific requests in your July 15 letter.

Election Officials Responsible for List Maintenance

The July 15 letter requests the identity of the election officials responsible for implementing New Jersey's general program of voter registration list maintenance. The overall functionality and security of New Jersey's SVRS are maintained by the Secretary of State and the Division of Elections. *See, e.g.*, N.J. Stat. Ann. §§ 19:31-31(a), -32(c). Responsibility for voter registration list maintenance—including adding, removing, updating, and correcting records—is vested in county election officials. *See, e.g.*, N.J. Stat. Ann. § 19:31-32(b) ("Each county commissioner of registration shall be responsible for adding to, deleting from, amending and otherwise conducting on a regular basis maintenance for the files of every legally registered voter in that commissioner's county as contained in the [SVRS] …."); *accord id.* § 19:31-2. A list of county election officials is available through the following link: https://www.nj.gov/state/elections/vote-county-election-officials.shtml.

Request for Voter Registration List

In response to the July 15 letter's request, DOE previously provided the U.S. Department of Justice ("DOJ") with a copy of New Jersey's current voter registration list on July 29, 2025. In a follow-up letter dated August 14, 2025, DOJ requested an "electronic copy of the statewide [voter registration list] … contain[ing] *all fields*, including the registrant's … state driver's license number or the last four digits of the registrant's social security number," which are protected by New Jersey privacy laws (emphasis in original). In a separate letter to Acting Chief Riordan dated August 21, 2025, we have sought clarification of this request.

EAVS Responses

Your July 15 letter makes several requests in connection with the most recent report from the Election Assistance Commission's ("EAC") Election Administration and Voting Survey ("EAVS"). As you know, EAVS is a biennial informational survey regarding election-administration and voter-registration issues, and States' survey responses are informed by the data available to them at a particular moment of time. Each State has its own systems for tracking, collecting, and maintaining election-administration and voter-registration data, and there are variations among States with regard both to the substance of the specific data collected and the manner of its collection. In addition, the functionalities of voter-registration databases, including New Jersey's, are not static, and are generally becoming more optimized over time. Our review of New Jersey's voter-registration data confirms that the State's list-maintenance programs meet and exceed the requirements of the NVRA.

1. *Registration rate*

Your first request notes that the EAC calculated New Jersey's registration rate as 94.8 percent of the citizen voting age population and asks what actions New Jersey is taking to remove registrants who should not be on the voter roll. With respect to New Jersey's voter-list-maintenance activities, please see the narrative set forth above. We further note that "[r]egistration rates below 100 percent, without more, simply do not permit the … inference" "that there might be a list-maintenance problem." *Judicial Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399, 408 (M.D. Pa. 2021) (emphasis omitted).

3

August 28, 2025

### 2. *Rejection of ballots*

This request asserts that, based on New Jersey's response to EAVS Question A8, the State rejected 348,340 *ballots* as invalid, and seeks an explanation for "the process for determining whether a *ballot* should be rejected as invalid for each registration source listed in the survey" (emphasis added). EAVS Question A8, however, asks for the number of rejected *voter registration applications*, not the number of rejected *ballots*. If DOJ's question was intended to inquire about the process for rejecting a registration application as invalid (rather than a ballot), we note that the standards governing approval of voter registration applications are set forth in N.J. Stat. Ann. §§ 19:31-6, -6.4, -6.5 and the provisions cross-referenced therein, as well as N.J. Admin. Code § 15:10-1.6.

Further, in response to your inquiry, we investigated how the reported figure of 348,340 rejected registration applications was derived. Upon review, we determined that that number is overinclusive; it includes not only registration applications that were rejected as invalid, but also registrations that had previously been approved but were later deleted. The number of registration applications that were rejected as invalid (*i.e.*, excluding deleted registrations) is 16,662.

To be clear, the data responsive to EAVS Question A8 was accurately maintained and tracked in the SVRS. The difference between the reported number and the updated number provided here reflects the specific database query that was run by the State's vendor.

### 3. *Confirmation notices*

This request notes that, in response to EAVS Question A10a, New Jersey reported that 417,183 confirmation notices were sent to voters, which is purportedly below the national average. Having reviewed your inquiry, we are providing an updated response that is more precisely tailored to your request. The reported number of 417,183 describes registrants whose statuses had been changed to inactive during the specified timeframe. In response to your letter, we queried the SVRS for the total number of confirmation notices that were sent during the specified timeframe, which is 1,452,131.

In accordance with N.J. Stat. Ann. §§ 19:31-11, -15 and 52 U.S.C. § 20507(c)-(d), a registrant receives a confirmation notice when the registration commissioner of the registrant's county receives information from the United States Postal Service that the registrant has moved to a different address, or the county commissioner is not satisfied as to the signature on the registrant's request to change his or her residence.

### 4. *Outcome of confirmation notices*

The July 15 letter requests the data sought in EAVS Questions A10b through A10f regarding the outcome of confirmation notices that were mailed to registrants. The SVRS has a record of the outcome of the confirmation notice that is attached to the record of each individual voter to whom the notice was sent; the system is not configured to run a report aggregating the outcome data in a form responsive to these EAVS Questions.

### 5. *Deleted voter registration records*

This request notes that, in response to EAVS Question A12a, New Jersey reported that 287,971 voter registration records were removed from the voter registration rolls. In addition, this request seeks an explanation of the state's actions to remove ineligible voters. Upon further review, we determined that

4

August 28, 2025

the 287,971 number was underinclusive because the vendor's query had included only some, and not all, of the reasons for removing a registration record that are tracked in the SVRS. When all reasons for removal are included in the database query, the total number of voter registration records removed during the specified time period is 331,389.

For a description of the state's actions to remove ineligible voters, please see the narrative above.

6. *Duplicate voter registration records*

This request seeks information regarding New Jersey's process for determining and handling duplicative voter-registration records. Avoiding and eliminating duplicative voter-registration records is an important part of list maintenance. When an election official adds or alters a voter registration record, the SVRS will provide a notification if the record appears potentially duplicative of a different record. If two voting records in the SVRS are determined to be duplicative following review by the county commissioner of registration, the records are merged, so that all relevant voter data is retained in a single file. By way of further explanation, we note that your question about the "remov[al]" of duplicate registration records may presuppose a specific process that is slightly different than the one implemented in New Jersey. To be clear, the merger-of-duplicate-records process described above does not result in the full removal of the duplicative voter-registration record from the SVRS; instead, the duplicate record is placed in a file of "deleted" records. The result is that only one version of the voter's record (including all relevant data) is listed as active (assuming that it is determined that the voter remains eligible to vote and is properly in an active status).

Removal of Ineligible Voters

The July 15 letter also seeks information concerning identification and removal of registrants ineligible to vote by reason of felony conviction, adjudicated incompetence, and non-citizenship.

For a description of the procedures utilized to identify registrants ineligible to vote by reason of serving a criminal sentence of incarceration (whether for a felony or misdemeanor), please see the narrative above.

With respect to "adjudicated incompetence," New Jersey law provides that any person who has been adjudicated by a court of competent jurisdiction to lack the capacity to understand the act of voting is ineligible to vote. N.J. Const. art. II, ¶ 6; N.J. Stat. Ann. § 19:4-1(1). Upon verifying that a registrant has been so adjudicated, county election officials update the registrant's voter-registration record so that they will not appear as eligible to vote in electronic pollbooks.

With respect to citizenship, New Jersey's registration application complies with the NVRA's requirements, *see* 52 U.S.C. § 20508(b)(2)(A), (B), by requiring applicants to certify that they are U.S. citizens, *see* N.J. Stat. Ann. § 19:31-6.4. If an applicant does not make the required certification—which, as expressly stated on the application form, must be made subject to criminal penalties for false or fraudulent registration statements—the application will not be approved. Further, county election officials are vested with investigatory authority under State law. *See, e.g.*, N.J. Stat. Ann. §§ 19:31-6.6, 19:32-5, -6. State officials also have jurisdiction to investigate and prosecute election crimes, including voter fraud. *See, e.g.*, N.J. Stat. Ann. § 19:34-1 (addressing voter-registration offenses, including fraudulent attempts to register); § 19:34-11 (addressing fraudulent voting); *id.* § 19:34-12 (addressing attempts to cast illegal votes). If election officials determine that a registered individual is not a citizen—through a notice by the

5

August 28, 2025

registrant or through other means—they remove the registrant from the rolls and, where appropriate, refer the matter to law enforcement.

Finally, your letter asks for the number of registered voters identified as ineligible to vote for the three aforementioned reasons during the time period from the close of registration for the November 2022 general election through the present, as well as a list identifying each such individual. Where a registrant has been determined to be ineligible by reason of citizenship, incarceration, or adjudication of incompetence, the SVRS record attached to that individual will note that determination. However, the system is not configured to run a report aggregating that data in a form responsive to your request. We further note that disclosing lists of such individuals would raise significant privacy concerns and serious questions under the federal Privacy Act, as outlined in our August 21 letter.[1]

*     *     *

Both Federal and New Jersey law recognize the right to vote as "fundamental." *See, e.g.*, 52 U.S.C. § 20501(a)(1); N.J. Stat. Ann. § 19:4-1.1(a). Suffrage is "preservative of all rights," *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (quoting *Reynolds v. Sims*, 377 U.S. 533, 562 (1964)), and "of the most fundamental significance under our constitutional structure," *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). State and county election officials take very seriously their responsibility to maintain up-to-date and accurate voter-registration records while ensuring that no eligible voters are disenfranchised by being mistakenly removed from the rolls. New Jersey's comprehensive list-maintenance framework fully complies with the requirements of the NVRA. And the federal government has commended this Office's commitment to ensuring free and fair elections in collaboration with federal, state, and local partners.[2] We look forward to continuing that excellence.

If you have any additional questions about the State's list-maintenance laws and procedures, please do not hesitate to contact me.

Very truly yours,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By: *Melissa D. Schaffer*
Melissa Dutton Schaffer
Assistant Attorney General

cc:    Donna Barber, Director
        Department of State
        Division of Elections

---

[1] *See* Letter from Matthew J. Platkin, Attorney General of New Jersey, to Maureen Riordan, Acting Chief of the Voting Section of the Civil Rights Division of the U.S. Department of Justice, at 2-3 (Aug. 21, 2025).

[2] *See, e.g.*, EAC Clearinghouse Award Winners 2022, https://www.eac.gov/election-officials/eac-clearinghouse-award-winners-2022.

4439693.8