# EXHIBIT 7



**State of New Jersey**
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX 112
TRENTON, NJ  08625-0112

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

MATTHEW J. PLATKIN
*Attorney General*

MICHAEL C. WALTERS
*Director*

December 8, 2025

**<u>Via Email (David.Vandenberg@usdoj.com)</u>**

David D. Vandenberg
Trial Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW 4CON
Washington, DC  20530

      Re:    Proposed Memorandum of Understanding Regarding DOJ's Request for Voter
               Registration List

Dear Mr. Vandenberg:

On behalf of the Division of Elections ("DOE") in the New Jersey Department of State, I write in response to your December 1, 2025 email to Steven Gleeson, which provided a proposed Memorandum of Understanding ("MOU") in connection with the request of the U.S. Department of Justice ("DOJ") for an electronic copy of New Jersey's statewide voter registration list including fields containing individual registrants' state driver license numbers and the last four digits of the registrants' Social Security numbers.

By way of background, in response to a letter from Acting Chief of the Voting Section Maureen Riordan and Deputy Assistant Attorney General Michael E. Gates dated July 15, 2025, DOE provided DOJ with a copy of New Jersey's voter registration list. That list contained the names, addresses, and other information about individual registered voters that may be disclosed consistent with New Jersey privacy laws, and without exposing certain especially sensitive, confidential personally identifiable information such as Social Security and state driver license numbers. *See, e.g.*, N.J. Stat. Ann. § 47:1A-5.3(b); N.J. Stat. Ann. § 47:1A-1.1.

In a follow-up letter dated August 14, 2025, Assistant Attorney General Harmeet K. Dhillon requested an "electronic copy of the statewide [voter registration list] … contain[ing] *all fields*, including the registrant's … state driver's license number or the last four digits of the registrant's social security number" (emphasis in original). Ms. Dhillon's letter invited us to contact Ms. Riordan "[s]hould further clarification [of the request] be required."





On August 21, 2025, our office responded to Ms. Dhillon's letter on behalf of DOE. Noting Ms. Dhillon's invitation to seek clarification, we explained that "we would be grateful for" certain specified "additional information to enable us to sufficiently consider and respond to [DOJ's] request." For ease of reference, a copy of the August 21 letter is enclosed herein.

Although DOJ did not respond to our letter, on December 1, 2025, you provided Mr. Gleeson with a copy of a proposed "Confidential Memorandum of Understanding" form ("MOU"), which you described as "a generic data-sharing agreement, based on ones DOJ has in place with other states." We understand that DOJ is requesting that DOE execute the MOU in connection with transferring the data requested in Ms. Dhillon's August 14 letter.

We appreciate your providing the proposed MOU and have reviewed its terms. The MOU appears to answer one of the questions set forth in our August 21 letter. Specifically, the MOU identifies the specific System of Records Notices that DOJ believes cover the requested records.[1] Based on the MOU, it appears that DOJ does not intend to publish a new SORN covering the requested records. If that understanding is incorrect, kindly let us know.

Our August 21 letter also sets forth a number of other requests for clarification, which, on our reading, the MOU does not answer. For example, observing that DOE has already provided DOJ with a copy of the statewide voter registration list that identifies and provides information about each individual registrant—without disclosing (consistent with federal and New Jersey privacy laws) highly sensitive state driver license and social security numbers—we explained that it was "not clear that obtaining confidential personally identifiable information of individual registered voters is necessary to determine whether New Jersey" is complying with its list-maintenance obligations under the NVRA. We therefore sought clarification regarding DOJ's need for and intended use of the specific fields of information requested.

In addition, we noted that Title III of the Civil Rights Act of 1960, which DOJ has invoked in support of its request, requires that demands for records made thereunder "shall contain a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). Ms. Dhillon's August 14 letter stated a "purpose" but did not provide the "basis" for the request, which is a separate statutory requirement. "To aid our evaluation of the DOJ's request under the Civil Rights Act," we requested the basis for the request.

Further, our August 21 letter sought clarification regarding "whether the DOJ anticipates disclosing any of the records sought to other federal agencies or other entities or individuals, and if so, under what circumstances and for what purpose or purposes." Although the MOU sets forth certain procedures that would govern access to the requested data by DOJ personnel, it does not, on our reading, make clear whether—or in what circumstances and for what purposes—the requested data may be disclosed to or otherwise accessed by other federal agencies or other third parties.

---

[1] *See* MOU § VII (citing 68 Fed. Red. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017)).

2

As we noted in our August 21 letter, New Jersey's election officials take their legal duties extremely seriously, and we remain grateful for Ms. Dhillon's invitation to seek clarification regarding DOJ's August 14 request. The information sought in our August 21 letter will allow us to adequately consider and respond to the August 14 request as well as the proposed MOU. Thank you for your continuing consideration of our requests.

Very truly yours,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:

Daniel F. Dryzga, Jr.
Assistant Attorney General

Enclosure

3



**State of New Jersey**
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX 0112
TRENTON, NJ  08625-0112

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

MATTHEW J. PLATKIN
*Attorney General*

MICHAEL C. WALTERS
*Acting Director*

August 21, 2025

<u>Via Email (maureen.riordan2@usdoj.com)</u>
Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW – 4CON
Washington, DC  20530

    Re: Request for Voter Registration List

Dear Ms. Riordan:

   On behalf of the Division of Elections ("DOE") in the New Jersey Department of State, I write in response to Assistant Attorney General Harmeet K. Dhillon's letter to Lieutenant Governor Way dated August 14, 2025, to respectfully seek clarification of the request.

   By way of background, in response to the letter from you and Deputy Assistant Attorney General Michael E. Gates to Lieutenant Governor Way dated July 15, 2025, DOE provided the U.S. Department of Justice ("DOJ") with a copy of New Jersey's current voter registration list.  That list contained the names, addresses, and other information about individual registered voters that may be disclosed consistent with New Jersey privacy laws, and without exposing certain especially sensitive, confidential personally identifiable information such as Social Security and driver license numbers.  *See, e.g.,* N.J. Stat. Ann. § 47:1A-5.3(b).  This is the same version of the voter registration list that DOE regularly discloses in response to proper requests under the National Voter Registration Act ("NVRA"), *see* 52 U.S.C. § 20507(i)(1), and other legal authorities.

   In her follow-up letter dated August 14, 2025, Assistant Attorney General Dhillon requests an "electronic copy of the statewide [voter registration list] ... contain[ing] *all fields*, including the registrant's ... state driver's license number or the last four digits of the registrant's social security number" (emphasis in original).  This request raises important legal questions, and the New Jersey Department of State and DOE take very seriously their responsibility to safeguard information that is protected under New Jersey law and entrusted to DOE by New Jersey residents in order to enable them to exercise their fundamental right to vote.  Accordingly, and in light of the invitation in the August 14 letter to contact you "[s]hould further clarification [of the request] be required," we would be grateful for additional information to enable us to sufficiently consider and respond to the request.





AAG Melissa D. Schaffer
August 21, 2025

First, the August 14 letter states that the purpose of requesting New Jersey's entire voter registration list, including fields containing confidential personally identifiable information, is "to assess [New Jersey's] compliance with the statewide VRL maintenance provisions of the [NVRA]." The NVRA requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or a change in residence. 52 U.S.C. § 20507(a)(4); see also Bellitto v. Snipes, 935 F.3d 1192, 1202 (11th Cir. 2019) ("Nothing in HAVA [the Help America Vote Act] broadens the scope of the NVRA's list-maintenance obligations."). It is not clear that obtaining confidential personally identifiable information of individual registered voters is necessary to determine whether New Jersey is conducting a general program that makes a reasonable effort to remove the names of individuals who are deceased or have changed residence.[1] Nor is it apparent how the DOJ intends to use the requested information to make its compliance determination. Cf. Chao v. Community Trust Co., 474 F.3d 75, 79 (3d Cir. 2007) ("To enforce an administrative subpoena, an agency must demonstrate" that "the inquiry [is] within the authority of the agency" and "the information sought [is] reasonably relevant to the authorized inquiry."). We would therefore appreciate clarification regarding the DOJ's need for and intended use of the information sought.

Second, the August 14 letter invokes the federal Civil Rights Act of 1960, a statute "designed to secure a more effective protection of the right to vote." State of Ala. ex rel. Gallion v. Rogers, 187 F. Supp. 848, 853 (M.D. Ala. 1960), aff'd sub nom. Dinkens v. Att'y Gen. of U. S., 285 F.2d 430 (5th Cir. 1961). The Civil Rights Act of 1960 grants the U.S. Attorney General the authority to demand from state and local officials "records and papers" retained "for a period of twenty-two months from the date of any general, special, or primary [federal] election … relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," see 52 U.S.C. §§ 20701, 20703, to enable the Attorney General to investigate "question[s] concerning infringement or denial of [individuals'] constitutional voting rights," Kennedy v. Lynd, 306 F.2d 222, 228 (5th Cir. 1962); see also id. (The "purpose [of authorizing demands by the U.S. Attorney General for records under Title III of the Civil Rights Act of 1960] is to enable the Attorney General to determine whether [42 U.S.C.] § 1971 [currently codified as amended at 52 U.S.C. § 10101] suits or similar actions should be instituted."). Any such demand for records "shall contain a statement of the basis and the purpose therefor." Id. § 20703. The August 14 letter states that "[t]he purpose of [DOJ's] request" for New Jersey's complete voter registration list, including confidential personally identifiable information, "is to ascertain New Jersey's compliance with the list maintenance requirements of the NVRA and HAVA." But the letter does not provide the basis for the request pursuant to 52 U.S.C. § 20703, which is separate and distinct from the purpose of the request. Id. (requiring that a demand for records must contain "a statement of the basis and the purpose therefor" (emphasis added)). To aid our evaluation of the DOJ's request under the Civil Rights Act, we respectfully ask you to provide, pursuant to 52 U.S.C. § 20703, the basis for the request.

Third, as the August 14 letter appears to acknowledge, the request for New Jersey to transfer massive amounts of confidential personally identifying information to the DOJ raises issues regarding compliance with the federal Privacy Act, 5 U.S.C. § 552 et seq., as well as the DPPA, as noted above. However, the August 14 letter does not address whether there is an existing System of Records Notice ("SORN") that adequately covers the requested records, or whether DOJ intends to publish a new SORN and the expected timeline for such publication. Nor does the letter address whether the DOJ anticipates

---

[1] Understanding how the information requested would further a proper law-enforcement function of the DOJ will also help my office assess the August 14 letter's assertion that the requested disclosure of driver license numbers falls within the exception set forth in the Drivers Privacy Protection Act ("DPPA") (described in the August 14 letter as the "Drivers License Protection Act") for use by a government agency "carrying out its functions." 18 U.S.C. § 2721(b)(1).

AAG Melissa D. Schaffer
August 21, 2025

disclosing any of the records sought to other federal agencies or other entities or individuals, and if so, under what circumstances and for what purpose or purposes. *See, e.g.*, 5 U.S.C. § 552a(b). We would be grateful for clarity on these points. Again, to ensure adequate protection of the requested personally identifiable information consistent with New Jersey law, the State would like to better understand how the information may be used and with whom it may be shared.

New Jersey's elections officials take extremely seriously their election duties. We appreciate the opportunity to seek clarification and thank you in advance for providing the information requested above.

Very truly yours,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:    _____

Melissa Dutton Schaffer
Assistant Attorney General


cc:    Harmeet K. Dhillon
       Assistant Attorney General
       U.S. Department of Justice
       Civil Rights Division

       Donna Barber, Director
       Department of State
       Division of Elections