# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     *Plaintiff,*<br><br>  v.<br><br>DR. DALE G. CALDWELL, in his official capacity as Lieutenant Governor and Secretary of State for the State of New Jersey, *et al.*,<br><br>     *Defendants*. | Case No. 3:26-cv-2025 (ZNQ-JTQ)<br><br><br>Motion Day: July 6, 2026 |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF INTERVENOR-DEFENDANTS THE LEAGUE OF WOMEN VOTERS OF NEW JERSEY, LATINO ACTION NETWORK, AND MAUNGSAI SOMBOON**

AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION
Liza Weisberg
Ezra D. Rosenberg
Jeanne LoCicero
570 Broad Street, 11th Floor
P.O. Box 32159
Newark, NJ 07102
(973) 854-1705
lweisberg@aclu-nj.org
erosenberg@aclu-nj.org
jlocicero@aclu-nj.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Ari J. Savitzky*
Theresa J. Lee*
William Hughes*
Sophia Lin Lakin*
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org
tlee@aclu.org
whughes@aclu.org
slakin@aclu.org

*Counsel for Intervenors-Defendants*

\* Admitted *pro hac vice*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 1

    I.   The United States Seeks Records Outside the Scope of the CRA. ................... 1

   II.  The Demand Fails to Meet the Requirements of the CRA. ............................ 2

       A.  The United States Failed to State the Basis of its CRA Demand. ............ 3

       B.  The United States's Stated Purpose Is Inconsistent With the Function of the CRA and the Records Demanded. .................................................. 4

       C.  The Stated Basis and Purpose Are Pretextual. ......................................... 6

   III. The United States's Demand Would Undermine the Constitutional Rights of New Jersey Voters and Imperil Their Privacy Interests. ............................ 8

CONCLUSION ................................................................................................... 10

i

# TABLE OF AUTHORITIES

## CASES

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799 (2024)..6

*Duncan v. Walker*, 533 U.S. 167 (2001) ..............................................................4

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) ...................................9

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ...............................2, 3, 10

*Mi Familia Vota v. Fontes*, 129 F.4th 691 (9th Cir. 2025)........................9

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ...........................................6

Notice, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026), Dkt. No. 197 .........................9

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263 (3d Cir. 2013)................................................................2,

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .................10

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) .......................10

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021) ..............................................................................................................10

*Pub. Int. Legal Found., Inc. v. Nago*, No. 24-6629, 2026 WL 1144703 (9th Cir. Apr. 28, 2026)............................................................................................6

*United States v. Amore*, No. 1:25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ..............................................................................................1, 3, 4, 5

*United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026)...................1, 2

*United States v. Fontes*, No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ..............................................................................................1, 2

*United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ..............................................................................................1, 2, 3, 4, 6

*United States v. Oregon*, 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026)...........................*passim*

*United States v. Powell*, 379 U.S. 48 (1964)..................................................................3

*United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026)...........................................*passim*

*Wearly v. FTC*, 616 F.2d 662 (3d Cir. 1980)...............................................................3

*West v. Bowen*, 879 F.2d 1122 (3d Cir. 1989) .............................................................9

## STATUTES & LEGISLATIVE MATERIALS

52 U.S.C. § 20507(a)(4)..................................................................................................5

52 U.S.C. § 20507(d) .....................................................................................................5

52 U.S.C. § 20507(i)(1) ...............................................................................................10

52 U.S.C. § 21085..........................................................................................................5

106 Cong. Rec. H5326 (daily ed. Mar. 11, 1960)........................................................3

Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026) ....................................8

Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §§ 20701-20706 ................................................................................................................*passim*

## OTHER AUTHORITIES

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://perma.cc/T2RF-TJCM ......................................................................................................................6, 7

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://perma.cc/98WR-RGC5 ........................7

Sarah N. Lynch, *Justice Dept. Close to Finalizing Deal to Hand Over States' Voter Roll Data to Homeland Security, Sources Say*, CBS News (Mar. 26, 2026), https://perma.cc/2MAW-LL89.........................................................................7

## INTRODUCTION

Plaintiff seeks the disclosure of voters' sensitive personal data to which it is not entitled, using civil rights laws as a pretext. Courts in California, Oregon, Michigan, Massachusetts, Rhode Island, and Arizona have dismissed identical claims.[1] This Court should do the same. First, New Jersey's unredacted voter registration list is not among the "records and papers" a state must produce under Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. §§ 20701-20706. Second, Plaintiff's demand stated neither "the basis" nor a valid "purpose," as required by 52 U.S.C. § 20703. Third, the relief sought conflicts with statutory privacy protections and would chill the exercise of the fundamental right to vote.[2]

## ARGUMENT

### I.    The United States Seeks Records Outside the Scope of the CRA.

State voter registration lists are beyond the reach of Title III. *See Benson*, 2026 WL 362789, at *11; *Fontes*, 2026 WL 1177244, at *5. Section 301 requires

---

[1] *See United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026); *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 1:25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026).

[2] Intervenor-Defendants adopt the legal and factual background contained in the brief of Defendant Dr. Dale G. Caldwell, ECF No. 50-1, at 3-13.

elections officials to "retain and preserve" certain voting-related records that "come into [their] possession." 52 U.S.C. § 20701. Section 303 obligates officials to turn over only those materials "required by [Section 301] to be retained and preserved," *id.* § 20703—i.e., records that have "come into [their] possession," *id.* § 20701, referring to records that elections officials *receive* from prospective voters, *Benson*, 2026 WL 362789, at *9; *accord Fontes*, 2026 WL 1177244, at *7. This makes sense because Congress fashioned Title III to enable investigations of registrars' refusal to process Black citizens' voter registration forms in Jim Crow jurisdictions. *See Weber*, 816 F. Supp. at 1175.

New Jersey's voter registration list is a continuously updated database created by state officials, not a record "which come[s] into [their] possession." *Benson*, 2026 WL 362789, at *6. Because DOJ's request falls outside of the scope of Title III, it fails as a matter of law.

## II.    The Demand Fails to Meet the Requirements of the CRA.

When DOJ invokes Title III to demand documents, it must provide "a statement of the basis and the purpose" for its request. 52 U.S.C. § 20703. The "basis" and "purpose" are "conceptually distinct." *Galvin*, 2026 WL 972129, at *4. The "basis" is the set of facts supporting DOJ's belief that individuals' voting rights have been violated. *See Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962); *Oregon*, 2026 WL 318402, at *9; *Weber*, 816 F. Supp. at 1183; *Amore*,

2

2026 WL 1040637, at *5. The "purpose" explains how the requested records would substantiate a violation. *See Lynd*, 306 F.2d at 229 n.6; *Oregon*, 2026 WL 318402, at *10; *Amore*, 2026 WL 1040637, at *6. The basis and purpose requirement is a "critical safeguard." *Weber*, 816 F. Supp. 3d at 1184.[3]

In assessing federal records requests like this one, the "court's role is not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding." *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980); *United States v. Powell*, 379 U.S. 48, 57-58 (1964).[4] DOJ failed to satisfy the basis and purpose requirement for at least three dispositive reasons.

**A. The United States Failed to State the Basis of its CRA Demand.**

DOJ alleges that its August 14 Letter "stated the basis of the demand was the CRA," Compl. ¶ 26, a phrase completely absent from the Letter. ECF No. 20-4, at 2. In any event, that "basis" is circular and facially deficient because it contains no *factual* content whatsoever. *See, e.g.*, *Galvin*, 2026 WL 972129, at *5; *see also, e.g.*, *Lynd*, 306 F.2d at 229 n.6 (Title III demand was "based on information . . . tending to show that distinctions on the basis of race or color have been made with

---

[3] Indeed, Congress amended Title III to include the basis and purpose requirement to address concerns that DOJ would use the statute for "fishing expedition[s]." 106 Cong. Rec. H5326 (daily ed. Mar. 11, 1960); 52 U.S.C. § 20703.

[4] Intervenor-Defendants adopt the arguments of Defendant Caldwell in opposition to the United States's motion to compel, ECF No. 20, which attempts to circumvent proper judicial review and, if granted, would violate Intervenor-Defendants' voting and privacy rights without an examination of the merits.

respect to registration and voting . . . .”). If merely invoking the CRA sufficed, the obligation to set forth the basis in writing would be “superfluous,” violating cardinal principles of statutory interpretation. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *see Galvin*, 2026 WL 972129, at *5 (“If Congress sought to direct the Attorney General to include a citation to Title III in demand letters, requiring the letter to contain a ‘statement of the basis and the purpose therefor’ would not be the obvious way to do so.”); *accord Amore*, 2026 WL 1040637 at *5.

Nor could some adequate “basis” be extrapolated from the pleadings. Notwithstanding citations in the July Demand Letter to statistics from the Election Assistance Commission’s 2024 Election Administration and Voting Survey, ECF No. 20-3, the Complaint does not allege any evidence inconsistent with reasonable list maintenance efforts. *See* Compl. ¶¶ 22-23. Plus, “suggesting that the CRA is satisfied so long as a demand’s recipient can infer the basis is contrary to the statute’s requirement of a written demand ‘contain[ing] a statement of the basis.’” *Galvin*, 2026 WL 972129, at *5. DOJ’s “patchwork and post hoc effort to stitch together a legally sufficient ‘statement of the basis’ fails.” *Oregon*, 2026 WL 318402, at *9; *Galvin*, 2026 WL 972129, at *3.

### B. The United States’s Stated Purpose Is Inconsistent with the Function of the CRA and the Records Demanded.

The CRA supports records requests only in furtherance of the purpose of “investigating violations of individuals’ voting rights.” *Oregon*, 2026 WL 318402,

at *10; *see also Amore*, 2026 WL 1040637, at *6. Here, DOJ's supposed purpose to investigate list maintenance procedures lacks "any reference or relation to the purposes for which Title III was enacted." *Oregon*, 2026 WL 318402, at *10. It thus falls "outside Title III's intended scope" and is statutorily insufficient. *Amore*, 2026 WL 1040637, at *6.

Even if list maintenance practices were within the ambit of Title III, DOJ cannot explain why the requested records are necessary to "ascertain compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 27. The NVRA requires New Jersey to "conduct a general program that makes a reasonable effort" to remove ineligible voters. 52 U.S.C. § 20507(a)(4). Error-free voter rolls are not the standard. In fact, the NVRA explicitly *prohibits* removal of some potentially ineligible registrants from the rolls without notice and other steps to ensure accuracy. *See* 52 U.S.C. § 20507(d). HAVA, the statute that requires the use of personal identifying information in the state's voter rolls, provides that "[t]he specific choices on the methods" of compliance "shall be left to the discretion of the State." *Id.* § 21085. A static snapshot of New Jersey's voter file reveals close to nothing about compliance with the NVRA and HAVA.

Moreover, the Complaint does not contain any justification for why the *full unredacted* voter file is necessary to carry out this aim. *Oregon*, 2026 WL 318402, at *10 n.4. "Effective oversight" of list maintenance practices "does not require

5

disclosure of every registrant's personal information." *Pub. Int. Legal Found., Inc. v. Nago*, No. 24-6629, 2026 WL 1144703, at *15 (9th Cir. Apr. 28, 2026).

### C. The Stated Basis and Purpose Are Pretextual.

The CRA requires a statement of "*the* basis and *the* purpose" of a records request. 52 U.S.C. § 20703 (emphasis added). By twice using the definite article, the statute requires not just *a* basis or purpose among many, but *the* complete and genuine basis and purpose. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165-66 (2021); *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024); *Galvin*, 2026 WL 972129, at *3. This Court "is not obliged to accept a contrived statement and purpose." *Weber*, 816 F. Supp. 3d at 1184.

The United States's actual aim is to build an unprecedented national voter database through novel, error-prone forms of data-matching to identify supposedly ineligible voters and force their removal from the rolls. *Id.* at 1185; *accord Oregon*, 2026 WL 318402, at *13. Extensive public reporting confirms that DOJ employees "are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://perma.cc/T2RF-TJCM. DOJ is coordinating these efforts with the Department of Homeland Security ("DHS"). *Id.* A former lawyer from DOJ's Civil Rights Division described DOJ's goals in this case and others like it:

6

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://perma.cc/98WR-RGC5.

Reporting recently exposed that DOJ and DHS "are close to finalizing an agreement that will allow the federal government to use sensitive voter registration data for immigration and criminal investigations." Sarah N. Lynch, *Justice Dept. Close to Finalizing Deal to Hand Over States' Voter Roll Data to Homeland Security, Sources Say*, CBS News (Mar. 26, 2026), https://perma.cc/2MAW-LL89. DOJ "will share voter roll data that its Civil Rights Division is collecting from states with Immigration and Customs Enforcement Homeland Security Investigations as part of an effort to determine whether non-citizens are unlawfully registered or have cast ballots in prior elections." *Id.*

DOJ acknowledged these plans at a hearing in *Amore*, stating that it is "certainly" its "intention" to "run [the lists] against DHS's SAVE database." *See* ECF No. 50-2, transcript of Hearing on Motion to Dismiss, at 50:17-23. It admitted that it "cannot promise what any other agency will or will not do" with the data. *Id.* at 66:12-14; 66:8-9 (answering whether the lists would be used "for ICE going to

7

people's homes and arresting them"). Meanwhile, President Trump's Executive Order No. 14399 directs agencies to aggregate registration and citizenship data across the executive branch for eligibility screening and enforcement purposes. Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026).

DOJ's failure to honestly disclose *the* true basis and *the* true purpose for its demand is fatal to its CRA claim. "Congress passed the NVRA, [CRA], and HAVA to protect voting rights. If the DOJ wants to instead use these statutes for more than their stated purpose . . . it cannot do so under the guise of a pretextual investigative purpose." *Weber*, 816 F. Supp. 3d at 1186; *see Oregon*, 2026 WL 318402, at \*11 ("The presumption of regularity that has been previously extended to [the United States] that it could be taken at its word . . . no longer holds.").

### III. The United States's Demand Would Undermine the Constitutional Rights of New Jersey Voters and Imperil Their Privacy Interests.

Even if DOJ had provided a valid basis and purpose for its demands, its request would be unlawful because it does not allow for redactions or other modifications to protect the voting and privacy rights of New Jerseyans. Requiring individuals to consent to the disclosure of their sensitive information as a prerequisite to voting would impose a significant burden on their fundamental right to vote and chill democratic participation. *See Greidinger v. Davis*, 988 F.2d 1344, 1355 (4th Cir. 1993); *see also West v. Bowen*, 879 F.2d 1122, 1132 (3d Cir. 1989) (citing the "long-standing canon of construction that a statute should be read . . . to

8

avoid constitutional entanglements"). DOJ's efforts to centralize voter data in the federal government, contrary to constitutional design, amidst extensive reporting about its intent to use the information in furtherance of immigration and law enforcement policy objectives, stands to sow distrust in the electoral process, particularly among naturalized citizens. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 723 (9th Cir. 2025) (noting disproportionate impact on naturalized citizens' right to vote when registrars run immigration numbers through SAVE). This chilling potential is exacerbated by the United States's public history of sharing sensitive information with outside activist groups and storing data on unsecured, non-government servers. *See* Notice, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026), Dkt. 197, at 5-6. That a voter "may consider not registering to vote or skip casting a ballot because they are worried about how their information will be used," *Weber*, 816 F. Supp. 3d at 1176, is the intolerable consequence of granting DOJ's demand.

States commonly redact and modify voting records to ensure privacy before disclosing them. For example, while the NVRA requires states to make certain records available for "public inspection" upon request, 52 U.S.C. § 20507(i)(1), "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and redaction can be required to "assuage the potential privacy risks . . . ." *Pub. Int. Legal Found., Inc.*

9

*v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *See, e.g.*, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334, 333 (4th Cir. 2012). The CRA, like the NVRA, is silent as to how sensitive personal information should be treated when disclosed, [5] 52 U.S.C. §§ 20703, 20507(i)(1), and thus, like the NVRA, must be construed to avoid burdening essential rights. *See Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56; *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 264 (4th Cir. 2021).[6]

## CONCLUSION

For all these reasons, the United States's case should be dismissed.

Dated: May 11, 2026                     Respectfully submitted,


Ari J. Savitzky*                            *s/ Liza Weisberg*_____
Theresa J. Lee*                            Liza Weisberg
William Hughes*                          Ezra D. Rosenberg
                                                    Jeanne LoCicero

---

[5] "[O]f great importance" to the Fifth Circuit's reasoning in *Lynd*, on which DOJ repeatedly relies, was that it was "not discussing confidential, private papers and effects" but "rather . . . public records . . . ." 306 F.2d at 231. Indeed, when Title III was enacted and *Lynd* decided, the records subject to disclosure were not required to contain sensitive identifying data, data could not be electronically shared, and the Attorney General was not yet subject to privacy laws like the Privacy Act of 1974.

[6] Meanwhile, federal law requires (at minimum) redaction of sensitive information like Social Security and driver's license numbers and procedural steps such as a "privacy impact statement" and limitations on interagency sharing in order to comply with the guardrails mandated by the Federal Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act. *See Weber*, 816 F. Supp. 3d at 1192-96.

Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
asavitzky@aclu.org
tlee@aclu.org
whughes@aclu.org
slakin@aclu.org

American Civil Liberties Union
  of New Jersey Foundation
570 Broad Street, 11th Floor
P.O. Box 32159
Newark, NJ 07102
(973) 854-1705
lweisberg@aclu-nj.org
erosenberg@aclu-nj.org
jlocicero@aclu-nj.org

*Counsel for Intervenors-Defendants*

\* Admitted *pro hac vice*