**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DALE G. CALDWELL, in his official capacity as LIEUTENANT GOVERNOR and SECRETARY OF STATE of NEW JERSEY,<br><br>Defendant,<br><br>MAKE THE ROAD NEW JERSEY, JAMIE Y. DING, and DANIELLE LITWAK,<br><br>Intervenor-Defendants,<br><br>LEAGUE OF WOMEN VOTERS OF NEW JERSEY, et al.,<br><br>Intervenor-Defendants,<br><br>NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.,<br><br>Intervenor-Defendants. | Case No. 3:26-cv-2025-ZNQ-JTQ |

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF INTERVENOR-DEFENDANTS MAKE THE ROAD NEW JERSEY, JAMIE Y. DING, AND DANIELLE LITWAK**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 2

I. DOJ failed to state a "basis" or valid "purpose" for its Title III demand. ........ 2

II. Title III does not preempt New Jersey's state law privacy protections ........ 5

III. Title III does not reach New Jersey's statewide voter registration list ........ 7

IV. DOJ's failure to comply with federal privacy laws also requires dismissal ........ 10

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .......... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2–3

*CFPB v. Source for Pub. Data, L.P.*,
903 F.3d 456 (5th Cir. 2018) .......... 2–3

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) .......... 10

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .......... 10

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) .......... 5

*Grand Canyon Univ. v. Cardona*,
121 F.4th 717 (9th Cir. 2024) .......... 8

*Husted v. A. Philip Randolph Inst.*,
584 U.S. 756 (2018) .......... 6

*In re Tower Air, Inc.*,
416 F.3d 229 (3d Cir. 2005) .......... 10

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .......... 3, 6

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453 (2018) .......... 5

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) .......... 4

*Pub. Int. Legal Found., Inc. v. Nago*,
No. 24-6629, 2026 WL 1144703 (9th Cir. Apr. 28, 2026) .......... 4, 9

*Sikkelee v. Precision Airmotive Corp.*,
822 F.3d 680 (3d Cir. 2016) .......... 6

*United States v. Amore*,
No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) .......... 4

*United States v. Benson*,
No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) .......... 7, 9

*United States v. Dawson*,
32 F.4th 254 (3d Cir. 2022) .......... 7

*United States v. Fontaine*,
697 F.3d 221 (3d Cir. 2012) .......... 9–10

*United States v. Fontes*,
No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) .......... 7, 9–10

*United States v. Oregon*,
No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) .......... 4

*United States v. Weber*,
No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .......... 4, 10

*Util. Air Regul. Grp. v. EPA*,
573 U.S. 302 (2014) .......... 2

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) .......... 4

*Wis. Cent. Ltd v. United States*,
585 U.S. 274 (2018) .......... 9

**Federal Statutes**

5 U.S.C. § 552a .......... 6, 9

18 U.S.C. § 2721 .......... 6

52 U.S.C. § 20507 .......... 7–8

52 U.S.C. § 20701 .......... 7, 9

52 U.S.C. § 20702 .......... 7, 9

52 U.S.C. § 20703 .......... 2, 5, 7

52 U.S.C. § 21083 .......... 9–10

**State Statutes**

N.J. Stat. § 47:1A-1.1 .......... 6

N.J. Stat. § 47:1A-5.3 .......... 6

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) .......... 2

**Other Authorities**

Amici Curiae Br. of Historians, *United States v. Benson*, No. 26-1225 (6th Cir. Apr. 20, 2026), Dkt. No. 72 .......... 3

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (2012) .......... 7

Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary, 86th Cong. 700 (Apr. 23, 1959) .......... 3

Reply Br., *United States v. Oregon*, No. 26-1231 (9th Cir. Apr. 24, 2026), Dkt. No. 62.1 .......... 10

## INTRODUCTION

Last September, the U.S. Department of Justice ("DOJ") began a crusade to collect every voter's personal information, suing states (like New Jersey) that declined to voluntarily produce their complete, unredacted voter registration lists, in light of state laws protecting sensitive data contained within. As of this filing, six federal courts have dismissed DOJ's claims in parallel cases outright. *See* Dkt. No. 50-1 ("NJ Mem.") at 14 n.5 (collecting cases). This Court should do the same.[1]

New Jersey has *already* provided DOJ with a redacted version of the State's voter registration list, in accordance with an earlier request under the National Voter Registration Act ("NVRA"). But DOJ insists it needs sensitive voter information to determine if New Jersey is complying with the NVRA and the Help America Vote Act ("HAVA")—statutes that defer to the states on list maintenance. DOJ does not bring a claim under either of those statutes here. Instead, its entire case rests on the remarkable premise that through a different, unrelated statute—Title III of the Civil Rights Act of 1960 ("CRA")—Congress vested DOJ with an investigative tool that it may use without restraint, beyond the reach of meaningful judicial review, and without discernable limit. DOJ is wrong. Not only is its demand beyond the scope of Title III (which was enacted to help enforce civil rights laws well before the advent of computerized voter lists), but DOJ also fails to even meet Title III's

[1] Consistent with the Court's scheduling order (Dkt. No. 47), this Brief avoids repeating arguments made in Defendant's motion (Dkt. No. 50). Instead, Make the Road New Jersey, Jamie Y. Ding, and Danielle Litwak ("MRNJ Intervenors") supplement or make additional arguments not contained therein. And where MRNJ Intervenors provide additional context or authority in support of arguments made by Defendant, the corresponding parts of Defendant's supporting brief are cited.

threshold requirements that it provide both a basis and purpose for its demand. That is reason alone to dismiss. But, even when properly invoked, Title III does not preempt New Jersey law protecting the sensitive fields sought by DOJ here.

Simply put, DOJ's attempt to morph Title III into a tool for supervising list maintenance procedures fails at every turn. "When an agency claims to discover in a long-extant statute an unheralded power," courts "typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014). Neither the text nor the history or context of Title III can support DOJ's position. Quite to the contrary, the drafters of Title III were clear that the law was *not* meant to create a general federal right to supervise elections. This Court should join its sister courts dismissing DOJ's parallel suits and dismiss this case as well.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At this stage, the Court must accept the complaint's allegations as true but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. DOJ failed to state a "basis" or valid "purpose" for its Title III demand.

Since its authority to demand documents "is a creature of statute," DOJ "must comply with statutory requirements." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458, 460 (5th Cir. 2018). Under its plain text, a demand made under Title III must contain a "basis" *and* a "purpose." 52 U.S.C. § 20703; *see also* N.J. Mem. 24–26. The legislative record and early enforcement history confirm this. *See, e.g.*,

Amici Curiae Br. of Historians at 24–26, *United States v. Benson*, No. 26-1225 (6th Cir. Apr. 20, 2026), Dkt. No. 72 (cataloguing legislative record and intent of "basis" and "purpose" requirements). Indeed, in *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), the government provided both the "basis" *and* "purpose" for its demand:

> This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

*Id.* at 229 n.6 (internal quotation marks omitted) (emphases added).

Here, DOJ's August 14 letter is the "demand" for purposes of Title III. Compl. ¶¶ 39–40. But DOJ stated no factual basis *at all*, much less anything that could "identify what conduct, it believes, constitutes an alleged violation." *Source for Pub. Data*, 903 F.3d at 458–59. That failure is evident from the letter itself, *see* Dkt. No. 50-7 at 3, and DOJ's bare allegations to the contrary cannot survive a motion to dismiss. *See* NJ Mem. 26–30 (citing Compl. ¶¶ 26, 40); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements . . . do not suffice." (citation omitted)).

DOJ's stated purpose—to investigate compliance with the NVRA and HAVA, Compl. ¶¶ 10–11, 27—provides an independent reason to dismiss. *See* NJ Mem. 30–33. As Title III's principal drafter explained, "[i]t [wa]s not the purpose of title III to supervise State elections," but rather to preserve records for cases where "reasonable cause is thought to exist that any person qualified to vote has been improperly denied that right." Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary, 86th Cong. 700 (Apr. 23, 1959) (statement of Rep. William M.

McCulloch); *see also* Dkt. No. 56-1 at 1–5. Thus, "investigat[ing] list maintenance procedures" bears no relation to "the purposes for which Title III was enacted." *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *10 (D. Or. Feb. 5, 2026); *see also United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807, at *9 (C.D. Cal. Jan. 15, 2026); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637, at *6 (D.R.I. Apr. 17, 2026). And as *Weber* and *Oregon* recognized, DOJ's stated purpose appears to be mere pretext for its true aims. *See Weber*, 2026 WL 118807, at *10–12; *Oregon*, 2026 WL 318402, at *11; *see also* NJ Mem. 33–38.

DOJ's claim here appears to be an attempt to circumvent the NVRA. Although DOJ brought NVRA and HAVA claims in otherwise nearly identical complaints against other states, it has long since abandoned those claims in its lawsuits seeking sensitive voter data, and here proceeds only under Title III.[2] And when DOJ made an NVRA request of New Jersey, State officials complied in short order. *See* Dkt. Nos. 50-5, 50-6. The exact data at issue—fields containing sensitive data protected by law—may be redacted consistent with the NVRA. *See Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *cf. Pub. Int. Legal Found., Inc. v. Nago*, No. 24-6629, 2026 WL 1144703, at *11 (9th Cir. Apr. 28, 2026) (concluding NVRA inspection provision does not cover statewide voter registration lists).

By granting DOJ authority to sue under the NVRA and HAVA, Congress empowered it to enforce obligations imposed by those statutes *so long as* it can state

[2] DOJ's first eight cases alleged claims under the NVRA, HAVA, and Title III; but its 23 subsequent cases omitted the NVRA and HAVA claims. *See* Dkt. No. 50-14.

a valid legal claim. *Cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (noting Rule 12's important function to "weed[] out meritless claims"). But to permit DOJ to obtain precisely the data that it cannot legally obtain under the NVRA through an anachronous invocation of a different statute enacted for an entirely different purpose, would unravel the statutory fabric crafted by Congress. Simply put, DOJ cannot substitute the list maintenance tools that Congress actually supplied in the NVRA and HAVA with the ones DOJ *wishes* it had. Congress's "express provision of one method of enforcing" these statutes "suggests" it "intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).

## II. Title III does not preempt New Jersey's state law privacy protections.

New Jersey officials properly refused to provide sensitive personal data that is protected by state law requiring redaction of such data. *See* Compl. ¶ 32 (citing N.J. Stat. §§ 47:1A-5.3, 47:1A-1.1). Although DOJ's demand letter baldly asserted that "[a]ny statewide prohibitions are clearly preempted by federal law," *see* Dkt. No. 50-7, there is no legal basis for such an assertion. *See also* NJ Mem. 38–44.

The Supreme Court has identified three types of preemption: express, field, and conflict. *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018). None apply here. *First*, Congress clearly did not expressly preempt state laws that protect sensitive data in the text of Title III. *See* 52 U.S.C. § 20703. *Second*, this is not a case where Congress left "no room for state regulation" and demonstrated "a clear and manifest intent to supersede state law in the field" of voter list maintenance. *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 687–88 (3d Cir. 2016) (quotation omitted). To the contrary, Congress "left it up to the *States* to maintain

accurate lists of those eligible to vote in federal elections." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018) (emphasis added); *see also* NJ Mem. 3–7. *Third*, compliance with both laws is not impossible, nor does the State law stand as an obstacle to Congress's objectives. *See Sikkelee*, 822 F.3d at 688. New Jersey provided a redacted voter list in response to DOJ's NVRA request, *see* Dkt. No. 50-6, and even *Lynd* (the case that DOJ primarily relies upon) supports the conclusion that the CRA does not reach "confidential, private papers," but rather "public records which ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 231.[3] *See also* NJ Mem. 43–44. Thus, New Jersey's refusal to provide voters' sensitive data in no way impedes Title III's actual purpose, which was in any event to help enforce federal civil rights laws and protect voting rights, not to invite the federal government to generally supervise elections. *See* NJ Mem. 30–33.

Neither the NVRA nor HAVA preempt New Jersey's privacy protections either. *See Sikkelee*, 822 F.3d at 687–88. If Congress had intended to permit DOJ access to voters' sensitive data to investigate compliance with states' list maintenance obligations, it would have *expressly* done so in those statutes. *See* NJ Mem. 3–6. But, far from evidencing a congressional judgment to preempt state privacy laws, the NVRA and HAVA reflect an intent to preserve such laws, which operate harmoniously with federal law in the field of voter list maintenance. And there is good reason for reading Title III's preemptive scope as similar to that of the

[3] The redacted fields contain obviously sensitive information that enjoy strong protection against disclosure. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; N.J. Stat. §§ 47:1A-1.1, 47:1A-5.3; *see also* NJ Mem. 44–48; *infra* Part IV.

inspection provision in the NVRA. Both require disclosure of certain records relating to voter registration and employ similar language to do so. *Compare* 52 U.S.C. § 20703 (Title III: covered voting records held by state election officials "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with id.* § 20507(i)(1) (NVRA: requiring that states "shall make [covered voting records] available for public inspection"). As such, the two statutes should be interpreted similarly. *See, e.g.*, *United States v. Dawson*, 32 F.4th 254, 263 (3d Cir. 2022) ("Generally, when similar language is used in related statutes in functionally equivalent ways, we presume the same meaning applies."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously."); *see also* NJ Mem. 39–44.

**III. Title III does not reach New Jersey's statewide voter registration list.**

The Court need not reach the question of whether Title III preempts New Jersey's privacy laws because Title III does not even reach New Jersey's statewide voter registration list. *See* NJ Mem. 15–24. By its plain terms, Title III only covers static records, like registration applications, that "come into [the] possession" of election officials from voters, 52 U.S.C. § 20701, and that cannot be "alter[ed]" in any way, *id.* § 20702. *See United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789, at *9 (W.D. Mich. Feb. 10, 2026); *United States v. Fontes*, No. 2:26-cv-00066, 2026 WL 1177244, at *3–4 (D. Ariz. Apr. 28, 2026). And DOJ's attempt to stretch the CRA to reach New Jersey's dynamic voter list would also create a conflict with HAVA. *See Fontes*, 2026 WL 1177244, at *4–6 (reaching similar conclusion).

*First*, that the CRA's "come into possession" language does not appear in the NVRA's list maintenance provisions is telling. The CRA preserves records submitted by voters to officials upon which the State *bases* its decisions to register voters (or not). *See* NJ Mem. 15–18. The NVRA preserves internal records concerning the State's list maintenance *procedures*, in particular the programs and activities that the State conducts to ensure voter lists are accurate and that voters are not erroneously removed. *See* 52 U.S.C. § 20507(i)(1) (requiring states "maintain . . . and . . . make available for public inspection . . . *all records* concerning the *implementation* of programs and activities conducted for" such purpose) (emphases added). Congress's choice to omit language from the NVRA that it used in the CRA—"another statute with a similar purpose"—"virtually commands the inference that the two have different meanings." *Grand Canyon Univ. v. Cardona*, 121 F.4th 717, 725 (9th Cir. 2024) (citation modified) (quoting *Prewett v. Weems*, 749 F.3d 454, 461 (6th Cir. 2014)). And the NVRA's inspection provision makes clear that Congress knows how to draft disclosure obligations that reach *internal* documents created by election officials, where it employs language that differs markedly from that in Title III. *See Wis. Cent. Ltd v. United States*, 585 U.S. 274, 279 (2018) (presuming "differences in language like this convey differences in meaning").[4]

Similarly, the CRA requires retention for 22 months from the date of a covered election for documents received "relating to any application, registration, payment

[4] The Privacy Act, for example, covers all records "under the control of" government officials, 5 U.S.C. § 552a(a)(5), rather than records that "come into" their possession, 52 U.S.C. § 20701. *Cf.* NJ Mem. 44–47 (discussing separate basis for dismissal); *infra* Part IV.

of poll tax, or other act requisite to voting *in such election*." 52 U.S.C. §§ 20701, 20702 (emphasis added). That temporal limit makes sense applied to individual, static records related to a *specific* election, but not to a dynamic voter list, which compiles information across many elections and is perpetually maintained and updated. *See Benson*, 2026 WL 362789, at *10; *Fontes*, 2026 WL 1177244, at *4. Otherwise, the CRA would absurdly require State officials "to preserve every interim version of the ever-changing lists for two years—a plainly unworkable and implausible result." *Nago*, 2026 WL 1144703, at *13 (reaching similar conclusion as to NVRA); *see also United States v. Fontaine*, 697 F.3d 221, 227 (3d Cir. 2012) (courts should "avoid constructions which yield absurd or unjust results").

*Second*, reading Title III to reach voter lists would also conflict with HAVA. The CRA prohibits any willful "alter[ation]" of records subject to its "retain[] and preserve[]" requirement. 52 U.S.C. § 20702 (citing *id.* § 20701). Any person who willfully violates these requirements risks imprisonment. *Id.* But HAVA *requires* State election officials to continually alter the voter list. *Id.* § 21083(a)(1)(A)(vi) ("[a]ll voter registration information obtained by any local election official in the State shall be electronically *entered* into the computerized list on an expedited basis" (emphasis added)). They must also "perform list *maintenance* with respect to the computerized list on a regular basis," *id.* § 21083(a)(2)(A) (emphasis added), and "ensure that voter registration records in the State are accurate and are *updated* regularly," *id.* § 21083(a)(4) (emphasis added). Extending Title III to voter lists would place HAVA and the CRA into direct conflict and subject State officials to irreconcilable obligations—under HAVA, they must regularly alter (*i.e.*, enter,

maintain, and update) the voter list; but under Title III, it would be a crime to do so. *See Fontes*, 2026 WL 1177244, at *5.

This legal discord forecloses DOJ's reading of Title III. Courts must "interpret Congress's statutes as a harmonious whole rather than at war with one another," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018), and "approach federal statutes touching on the same topic with a 'strong presumption' they can coexist harmoniously," *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024). *See also Fontaine*, 697 F.3d at 227. Applying these principles, Title III cannot be read to reach a dynamic record like New Jersey's voter list.

## IV. DOJ's failure to comply with federal privacy laws also requires dismissal.

DOJ's noncompliance with federal privacy laws provides another independent reason to dismiss. *See* NJ Mem. 44–48; *see also Weber*, 2026 WL 118807, at *17–19. Even if the Court construes these arguments as affirmative defenses, DOJ's failures are apparent from the face of the Complaint, materials incorporated therein, and matters of which the Court may take judicial notice.[5] Thus, the Complaint "may be dismissed under Rule 12(b)(6)" on these bases as well. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

[5] Notably, as to the E-Government Act's requirements, DOJ has conceded in parallel litigation that it has not issued a privacy impact assessment. *See, e.g.*, Reply Br. at 32–34, *United States v. Oregon*, No. 26-1231 (9th Cir. Apr. 24, 2026), Dkt. No. 62.1.

Dated: May 11, 2026

Respectfully submitted,
*s/ Omeed Alerasool*

**PEM LAW LLP**
Rajiv D. Parikh (NJ Bar # 032462005)
Julia N. Pudimott (NJ Bar # 435912023)
Devin Q. Cox (NJ Bar # 536762025)
1 Boland Drive, Suite 101
West Orange, NJ 07052
T: (973) 577-5500
rparikh@pemlawfirm.com
jpudimott@pemlawfirm.com
dcox@pemlawfirm.com

**ELIAS LAW GROUP LLP**
Abha Khanna*
Walker McKusick*
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
T: (206) 656-0177
akhanna@elias.law
wmckusick@elias.law

Omeed Alerasool (NJ Bar # 403712022)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
oalerasool@elias.law

* Permitted to appear *pro hac vice*

*Counsel for Intervenor-Defendants Make the Road New Jersey, Jamie Y. Ding, and Danielle Litwak*