UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **United States of America,** | No. 3:26-cv-2025 (ZNG)(JTQ) |
| *Plaintiff,* | MOTION DAY: June 15, 2026 |
| v. | |
| **Dr. Dale G. Caldwell**, in his official capacity as Lieutenant Governor and Secretary of State of New Jersey; | |
| *Defendant.* | |

*AMICI CURIAE* BRIEF OF THE BRENNAN CENTER FOR JUSTICE AND CAMPAIGN LEGAL CENTER IN SUPPORT OF DEFENDANT DALE G. CALDWELL'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................iii

INTRODUCTION............................................................................................ 1

INTEREST OF *AMICI CURIAE* .....................................................................3

ARGUMENT...................................................................................................4

    I.     The Court should scrutinize Plaintiff's pretextual demand for New Jersey's voter data. ......................................................4

    II.    Plaintiff's demand for New Jersey's voter data is part of an unprecedented effort to amass the sensitive data of every voter in America. ....................................................................8

        A.    Executive orders reveal the federal government's day-one campaign to amass sensitive information. .............9

        B.    The administration has engaged in systematic, unlawful efforts to collect and centralize Americans' data. .......11

        C.    The administration's actions call into question its justifications for sensitive voter information. .............19

    III.    Plaintiff's demand attempts to seize authority over elections that the Constitution reserves for Congress and the states.22

CONCLUSION ..............................................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of State, Cnty. and Mun. Emps., AFL-CIO v. SSA*, No. 1:25-cv-00596-ELH (D. Md. Jan. 16, 2026)...................................... 16, 17

*California v. Trump*, 786 F. Supp. 3d 359 (D. Mass. 2025) ...................23

*California v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-05536-VC, 2025 WL 3751931 (N.D. Cal. Dec. 29, 2025) ................................13

*Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent*, No. 1:25-cv-12822-IT, 2026 WL 309281 (D. Mass. Feb. 5, 2026) ...................................12

*Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, 815 F. Supp. 3d 1 (D.D.C. 2025)................................................................................12

*Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. 1:25-cv-00457, 2026 WL 551105 (D.D.C. Feb. 26, 2026).......................................12

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ......................................7

*Doe v. Univ. of Scis.*, 961 F.3d 203 (3d Cir. 2020) ...................................8

*FDIC v. Wentz*, 55 F.3d 905 (3d Cir. 1995) ...............................................6

*League of United Latin Am. Citizens v. Exec. Off. of the President,* 808 F. Supp. 3d 29 (D.D.C. 2025)....................................................... 1, 23

*League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-CV-0946 (CKK), 2026 WL 880056 (D.D.C. Mar. 31, 2026) ......22

*League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 818 F. Supp. 3d 34 (D.D.C. 2026) (*LULAC II*) ..............................................................................................22, 24

*League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-3501 (SLS), 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ..........................14

*RNR Enters., Inc. v. SEC*, 122 F.3d 93 (2d Cir. 1997) .............................6

*United States v. Amore*, No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D. RI. Apr. 17, 2026) ......................................................2, 6, 7, 21

*United States v. Bellows,* No.1:25-cv-468-LEW (D. Me. Mar. 26, 2026) 21

*United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ...............................................................2, 6

*United States v. Fontes*, No. 2:26-cv-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026)...................................................2

*United States v. Galvin,* No. 1:25-cv-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026)...................................................................2

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995) ....................6, 8

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .......................4, 8

*United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................................................................... passim

*United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. Sept. 25, 2025) ...............................................................................23

*United States v. Powell*, 379 U.S. 48 (1964)...........................................5

*United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Sept. 25, 2025)...23

*United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026)..... passim

*United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025)...23

*United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) ...................................................................................6

*Wearly v. FTC*, 616 F.2d 662 (3d Cir. 1986) ............................................6

**Constitutional Provisions**

U.S. Const. art. I, § 2...............................................................22

U.S. Const. art. I, § 4...........................................................1, 22

**Statutes**

40 U.S.C. § 11331 ...................................................................15

44 U.S.C. § 3554 ....................................................................15

52 U.S.C. § 20703 ................................................................5, 19

52 U.S.C. § 20705 ....................................................................5

Pub. L. No. 100-503, § 9, 102 Stat. 2507 (1988) ....................................14

**Regulations**

Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025) .....................9

Exec. Order No. 14,243, 90 Fed. Reg. 13681 (Mar. 20, 2025).................10

Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025).................10

Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026) .................10

**Other Authorities**

Abby Vesoulis & Ari Berman, *New Docs Show DHS Gathering Driver's License Data in Voter Fraud Crusade*, Mother Jones (Nov. 14, 2025), https://www.motherjones.com/politics/2025/11/dhs-gathering-drivers-license-save-voter-fraud-crusade [https://perma.cc/7JBX-MYJV] ......................................15

*Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*, Election Priv. Info. Ctr., (Feb. 2026),

https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-fisma-compliance/ [https://perma.cc/Y89L-6Q74] ....................................................... 16

Confidential Memorandum of Understanding between U.S. Dep't of Just. and Alaska Div. of Elections at 5 (Dec. 22, 2025), https://www.brennancenter.org/media/15064/download/alaska_12.22.2025_executed-mou.pdf?inline=1 [https://perma.cc/SC2J-8X9C] ..................................................................................... 25

Debate in Massachusetts Ratifying Convention, *in* 2 The Founders' Constitution (P. Kurland & R. Lerner eds., 1987) ........................ 23

*DOGE and State Voter Rolls*, Protect Democracy (July 15, 2025), https://protectdemocracy.org/work/doge-and-state-voter-rolls/ [https://perma.cc/6K3R-BGUL] ..................................................... 14

Donald J. Trump [@realDonaldTrump], Aug. 18, 2025, TruthSocial.com, https://truthsocial.com/@realDonaldTrump/posts/115049485680941254 [https://perma.cc/R3KM-525Z] ........................................... 24

Eileen O'Connor, *"Confidential" Agreements Show Trump Administration's Plans for States' Voter Data*, Brennan Ctr. for Just. (Feb. 5, 2026), https://www.brennancenter.org/our-work/analysis-opinion/confidential-agreements-show-trump-administrations-plans-states-voter [https://perma.cc/B823-UM7B] ..................................................................................... 25

Eli Hager, *DHS Seeks Access to Massive Employment, Salary and Family Database Legally Restricted to Use in Child Support Cases*, ProPublica (Mar. 11, 2026, at 05:00 ET), https://www.propublica.org/article/dhs-trump-child-support-federal-parent-locator-service-immigration [https://perma.cc/F7Z9-USG4] ..................................................................................... 18

Erica L. Green, Michael Gold & Robert Jimison, *Trump Repeats Call to 'Nationalize' Elections, as White House Walks It Back*, N.Y. Times (Feb. 3, 2026),

https://www.nytimes.com/2026/02/03/us/politics/trump-save-act-elections.html [https://perma.cc/FQZ8-YRXP] ..............................24

Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 25, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html [https://perma.cc/WZ6Q-SY74]....................12

Jacob Bogage, Jeff Stein & Perry Stein, *IRS Improperly Disclosed Confidential Immigrant Tax Data to DHS*, Wash. Post (Feb. 11, 2026), https://www.washingtonpost.com/business/2026/02/11/immigrants-irs-dhs-tax-data/ [https://perma.cc/P6FL-BJBL] ...........................17

Jasleen Singh & Spencer Reynolds, *Homeland Security's "SAVE" Program Exacerbates Risks to Voters*, Brennan Ctr. For Just. (July 21, 2025), https://www.brennancenter.org/our-work/research-reports/homeland-securitys-save-program-exacerbates-risks-voters [https://perma.cc/PC9W-YQ2B]............................................13

Jen Fifield & Zach Despart, *"Not Ready for Prime Time." A Federal Tool to Check Voter Citizenship Keeps Making Mistakes,* ProPublica and Texas Tribune (Feb. 13, 2026, at 05:30 ET), https://www.propublica.org/article/save-voter-citizenship-tool-mistakes-confusion [https://perma.cc/9VPR-C3TE] .......................14

Jonathan Shorman, *Homeland Security Wants State Driver's License Data for Sweeping Citizenship Program*, Stateline (Nov. 25, 2025, at 16:00 ET), https://stateline.org/2025/11/25/homeland-security-wants-state-drivers-license-data-for-sweeping-citizenship-program/ [https://perma.cc/A4EG-MY4X]......................................18

Joseph Cox, *Here's the Document Giving ICE 80 Million Medicaid Patients' Data*, Freedom of the Press Found. (Jan. 5, 2026), https://freedom.press/the-classifieds/heres-the-document-giving-ice-80-million-medicaid-patients-data/ [https://perma.cc/R4AS-TZJM] ....................................................................................13

Jude Joffe-Block, *The USDA Wants States to Hand Over Food Stamp Data by the End of July*, NPR (July 19, 2025, at 05:00 ET), https://www.npr.org/2025/07/19/nx-s1-5471553/usda-snap-privacy-lawsuit [https://perma.cc/2Y4G-2KW8] ..........................................18

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (May 11, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information [https://perma.cc/9MLB-VBNK] .............................1, 2

Letter from Nancy Morales Gonzalez, Assoc. Gen. Couns., SSA Off. of Gen. Couns. to Jon Sherman, Litig. Dir. & Senior Couns., Fair Elections Ctr. 2 (July 13, 2023), https://fairelectionscenter.org/wp-content/uploads/2025/07/SSA-Touhy-Decision-letter.July-13-2023-signed.pdf [https://perma.cc/Y5U9-UTU8] ...................................14

Letter from U.S. Att'y Gen. Pamela Bondi to Minn. Gov. Tim Walz (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html [https://perma.cc/29R4-4GF3] ...............................21

Lisa J. Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are Inadequate*, Brennan Ctr. for Just. (Feb. 25, 2026), https://www.brennancenter.org/our-work/analysis-opinion/justice-departments-security-measures-collecting-voter-rolls-are [https://perma.cc/N7JW-9LDR] .......................................15

Meryl Kornfield, Elizabeth Dwoskin & Lisa Rein, *Whistleblower Claims Ex-DOGE Member Says He Took Social Security Data to New Job*, Wash. Post (Mar. 10, 2026), https://www.washingtonpost.com/politics/2026/03/10/social-security-data-breach-doge-2/ [https://perma.cc/PQ54-Z45Y] .......................................................17

Natalia Contreras, *Voting Rights Groups Challenge Texas' Removal of Potential Noncitizens from the Voter Roll*, Votebeat (Mar. 27, 2026, at 16:49 ET), https://www.votebeat.org/texas/2026/03/27/save-

database-voter-rolls-removal-dps-secretary-of-state/ [https://perma.cc/84WK-ECSU] .................................................25

Nick Corasaniti, *Why Is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html [https://perma.cc/HK39-U9RK] ...........................19

Nicole Alvarez, *The Trump Administration Is Using Americans' Sensitive Data to Build a Digital Watchtower*, Ctr. for Am. Progress (Aug. 25, 2025), https://www.americanprogress.org/article/the-trump-administration-is-using-americans-sensitive-data-to-build-a-digital-watchtower [https://perma.cc/QCJ2-H5AH] .......................11

Press Release, *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database*, Dep't of Homeland Sec. (Apr. 22, 2025), https://www.dhs.gov/news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database [https://perma.cc/Y8A5-YX3M] .....................................................13

Press Release, U.S. Dep't of Just., *Just. Dep't Sues Four Additional States and One Locality for Failure to Comply with Fed. Elections Laws* (Dec. 12, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-additional-states-and-one-locality-failure-comply-federal [https://perma.cc/V5M6-PJ3J] ..............................20

Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. Times (Feb. 2, 2026), https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html [https://perma.cc/4U8J-LYMP].......1, 24

Stephen Fowler & Jude Joffe-Block, *The Trump Administration Admits Even More Ways DOGE Accessed Sensitive Personal Data*, NPR (Jan. 30, 2026, at 18:19 ET), https://www.npr.org/2026/01/23/nx-s1-5684185/doge-data-social-security-privacy [https://perma.cc/3CNL-YHUK].................................................17

The Federalist No. 59 (Alexander Hamilton) .........................................23

*Total Number of Registered Voters, Ballots Cast, Ballots Rejected, Percentage of Ballots Cast and the Total Number of Election Districts in New Jersey: General Election November 5, 2024,* https://www.nj.gov/state/elections/assets/pdf/election-results/2024/2024-official-general-voter-turnout.pdf [https://perma.cc/99AM-N7XP] ......................................................5

U.S. Comm'n on C.R., *An Assessment of Minority Voting Rights Access in the United States* 148–50 (2018), https://www.usccr.gov/files/pubs/2018/Minority_Voting_Access_2018.pdf?inline=1 ...............................................................15

U.S. Dep't of Just., Confidential Memorandum of Understanding at 7, https://www.brennancenter.org/media/14941/download/kentucky_2025-12-02_doj-mou.pdf?inline=1 .................................................16

William Turton, Christopher Bing & Avi Asher-Schapiro, *The IRS Is Building a Vast System to Share Millions of Taxpayers' Data With ICE*, ProPublica (July 15, 2025), https://www.propublica.org/article/trump-irs-share-tax-records-ice-dhs-deportations [https://perma.cc/VEP2-DACX] .........................12

## INTRODUCTION

The Constitution delegates election administration primarily to the states, subject to regulation by Congress. *See* U.S. Const. art. I, § 4. The Executive Branch has only a small role in elections and enjoys only the authority Congress grants. *See League of United Latin Am. Citizens v. Exec. Off. of the President,* 808 F. Supp. 3d 29, 41–42 (D.D.C. 2025) (*LU-LAC I*) (permanently enjoining parts of March 2025 executive order on elections). Nonetheless, President Trump recently announced his intention to "take over" and "nationalize" voting in the United States.[1]

The U.S. Department of Justice (DOJ) is leading the way on the administration's attempt to upend the constitutional framework that governs elections. Plaintiff has demanded full voter registration lists—including sensitive data like driver's license and partial social security numbers—from at least 48 states.[2] Most have refused, and Plaintiff has

---

[1] Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. Times (Feb. 2, 2026), https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html [https://perma.cc/4U8J-LYMP].

[2] Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (May 11, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information [https://perma.cc/9MLB-VBNK].

sued New Jersey and 29 other states, plus the District of Columbia.[3] The six courts to address Plaintiff's claims have dismissed the cases. *See United States v. Weber*, 816 F. Supp. 3d 1168, 1174 (C.D. Cal. 2026); *United States v. Oregon*, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *1 (D. Or. Feb. 5, 2026); *United States v. Benson*, No. 1:25-cv-1148, 2026 WL 362789, at *1 (W.D. Mich. Feb. 10, 2026); *United States v. Galvin,* No. 1:25-cv-13816-LTS, 2026 WL 972129, at *1 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639-MSM-PAS, 2026 WL 1040637, at *1 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. 2:26-cv-00066-PHX-SMB, 2026 WL 1177244, at *1 (D. Ariz. Apr. 28, 2026).

*Amici curiae* Brennan Center for Justice and Campaign Legal Center, two nonpartisan nonprofit organizations dedicated to solving challenges facing American democracy, submit this brief to provide nationwide context for the Administration's demand for New Jersey's complete voter rolls. Plaintiff does not seek to assess any suspected violation of federal law by New Jersey—indeed, it has not identified any such potential violation—but to amass an unprecedented amount of sensitive data about millions of voters across the country. Recent disclosures in other litigation make clear that this is precisely what Plaintiff is doing: disclosing voter information to the Department of Homeland Security in a nationwide effort to examine the citizenship of every voter, notwithstanding

---

[3] *Id.*

demonstrated flaws with its existing systems. Courts addressing Plaintiff's demands have concluded that they amount to an "overreach and misuse" of its role in election administration beyond constitutional limits. *Oregon*, 2026 WL 318402, at *13; *see also Weber*, 816 F. Supp. 3d at 1195 ("[T]he Executive may not unilaterally usurp the authority over elections."). That overreach could lead to the federal government using voters' information "in unprecedented ways, including immigration enforcement efforts." *Oregon*, 2026 WL 318402, at *13. If granted, Plaintiff's demand could make voters less likely to register and turn out to vote. *Weber*, 816 F. Supp. 3d at 1196. "This risk threatens the right to vote which is the cornerstone of American democracy." *Id.*

*Amici curiae* urge this Court to grant the motion to dismiss.

## INTEREST OF *AMICI CURIAE*

The Brennan Center for Justice at New York University School of Law[4] is a nonprofit, nonpartisan think tank and public-interest law institute that seeks to improve systems of democracy and justice. Since its founding in 1995, the Brennan Center's work has focused extensively on protecting the right to vote using empirical, historical, and legal research. It participates in voting rights and election law cases around the country, both as counsel and *amicus curiae*.

---

[4] This brief does not purport to convey the position of New York University School of Law.

- 3 -

Campaign Legal Center (CLC) is a leading nonpartisan, nonprofit organization that has been working for more than 20 years to advance democracy through law. CLC engages in litigation, policy development, and advocacy to protect voting rights and ensure broad and equal access to the ballot.

## ARGUMENT

This Court should reject Plaintiff's demand for New Jersey's complete voter rolls, which is based on thin pretext. Under Title III of the Civil Rights Act of 1960 (CRA), courts have examined Plaintiff's stated reasons for demanding sensitive voter data. Here, Plaintiff's public statements, as well as additional information produced in related litigation and in response to Freedom of Information Act requests, show that it does not seek to enforce federal law, but rather to amass an unprecedented amount of confidential voter data and undercut the constitutional separation of powers. In circumstances such as these, courts protect "against mistaken or arbitrary orders" by government officials. *United States v. Morton Salt Co.*, 338 U.S. 632, 640 (1950).

**I.     The Court should scrutinize Plaintiff's pretextual demand for New Jersey's voter data.**

Title III and the Federal Rules of Civil Procedure, which apply here, require this Court to scrutinize whether Plaintiff has made a valid demand for records. Even if this Court were to accept Plaintiff's view that

- 4 -

a different procedure, akin to those applicable to administrative subpoenas, were to apply, it must still carefully examine Plaintiff's stated reasons for seeking the sensitive data of New Jersey's over 6.6 million voters.[5]

"Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Weber*, 816 F.Supp.3d at 1182. Title III requires the Attorney General to provide "a statement of the basis and the purpose," 52 U.S.C. § 20703, for the demand and confers jurisdiction on district courts to compel record production "by appropriate process," 52 U.S.C. § 20705. While Title III's text does not define "appropriate process," the Supreme Court interpreted a similar statute, four years after Congress passed the CRA, in *United States v. Powell*, 379 U.S. 48 (1964). The Court concluded that because the statute "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply" and a court may "inquire into the underlying reasons for the examination [of records]." *Id.* at 58 n.18; *see also United States, ex rel. Polansky v. Exec. Health Res., Inc.*,

---

[5] *Total Number of Registered Voters, Ballots Cast, Ballots Rejected, Percentage of Ballots Cast and the Total Number of Election Districts in New Jersey: General Election November 5, 2024*, https://www.nj.gov/state/elections/assets/pdf/election-results/2024/2024-official-general-voter-turnout.pdf [https://perma.cc/99AM-N7XP].

599 U.S. 419, 436 (2023) ("The Federal Rules are the default rules in civil litigation . . . Congress may override that command when it wishes. But we do not lightly infer that Congress has done so; and silence on the subject is seldom enough.").

The Third Circuit, like other circuits, has extended *Powell* to other prelitigation agency requests for data, regardless of issuing agency. *See, e.g.*, *FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) ("[T]he district court's role is not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding.") (quoting *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1986)); *see also United States v. Markwood*, 48 F.3d 969, 977–78 (6th Cir. 1995) (prelitigation DOJ administrative subpoena); *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96–97 (2d Cir. 1997) (prelitigation Securities and Exchange Commission subpoena).

Plaintiff has relied on two discrete, nonbinding cases from the 1960s to suggest that only a "summary proceeding" is appropriate. Compl. ¶4 (citation omitted). But that is not what the CRA requires. And several federal district courts that have evaluated Plaintiff's demands for sensitive voter data have scrutinized those requests under the Rule 12(b)(6) standard. *See Weber*, 816 F. Supp. 3d at 1180–82; *Oregon*, 2026 WL 318402, at *8; *Benson*, 2026 WL 362789, at *7; *Fontes*, 2026 WL 1177244, at *1–2; *Amore*, 2026 WL 1040637, at *4. In short, "[t]here is no current or binding authority for the proposition that Title III precludes

- 6 -

the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." *Oregon*, 2026 WL 318402, at *8. Put another way, this Court should apply Rule 12(b)(6) standards to determine whether Plaintiff has set forth a sufficient basis and purpose to state a claim. *See Amore*, 2026 WL 1040637, at *4 (agreeing that "DOJ is not entitled to any sort of summary or abbreviated procedures for obtaining the information it seeks.").

With the sensitive data of New Jersey's voters at stake, this Court should apply the same procedural standards it would apply to any complaint and analyze whether Plaintiff's alleged reasons state a claim under Title III. In reviewing federal agency action, the Supreme Court has emphasized that judicial review is "more than an empty ritual" and that "[a]ccepting contrived reasons would defeat the purpose of the enterprise." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (refusing to accept the claim by the Department of Commerce that it attempted to add a citizenship question to the Census at the request of DOJ when the record showed otherwise). Courts need not "ignore the disconnect between the decision made and the explanation given," nor are they "required to exhibit a naiveté from which ordinary citizens are free." *Id.* (citation omitted).

Judicial review of federal agency demands for information requires the same level of scrutiny. *See Morton Salt Co.*, 338 U.S. at 640; *Markwood*, 48 F.3d at 978. In Plaintiff's cases seeking unredacted voter rolls in California and Oregon, the district courts refused to accept Plaintiff's claimed purposes for uses of "the sensitive information of millions of Americans." *Weber*, 816 F. Supp. 3d at 1184; *see also Oregon*, 2026 WL 318402, at *11 ("When Plaintiff, in this case, conveys assurances that any private and sensitive data will remain private and used only for a declared and limited purpose, it must be thoroughly scrutinized and squared with its open and public statements to the contrary."). This Court should likewise review Plaintiff's pretextual justifications.

## II.    Plaintiff's demand for New Jersey's voter data is part of an unprecedented effort to amass the sensitive data of every voter in America.

Contrary to Plaintiff's insufficient allegations, *see* Compl. ¶¶ 27–41, public actions and statements from federal officials reveal Plaintiff's true purpose: "a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Weber*, 816 F. Supp. 3d at 1184; *see also Oregon,* 2026 WL 318402, at *11 (quoting *Weber*). To decide a motion to dismiss, courts consider facts alleged in and exhibits to the complaint as well as "matters of public record." *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation omitted). Here,

- 8 -

executive orders issued by the President, the administration's broader efforts to amass centralized information, and recent representations by the federal government concerning voter roll data compel a closer look.

### A. Executive orders reveal the federal government's day-one campaign to amass sensitive information.

In his first three months in office, President Trump signed three executive orders to enable an extraordinary consolidation of data by the federal government: the DOGE EO, the Information EO, and the Elections EO. President Trump has continued his campaign to amass sensitive information, as seen most recently in a March 2026 executive order that threatens to upend mail voting.

In January 2025, he issued Executive Order No. 14,158 (the DOGE EO), which claimed to "establish" a "Department of Government Efficiency" (DOGE or USDS) and provided that "Agency Heads shall take all necessary steps . . . to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." 90 Fed. Reg. 8441, 8442, §§ 1, 1, 4(b) (Jan. 20, 2025).

In March 2025, President Trump issued Executive Order No. 14,243 (the Information EO). It required federal agencies to "rescind or modify all agency guidance that serves as a barrier to the inter- or intra-agency sharing of unclassified information" and "ensure the Federal Gov-

ernment has unfettered access to comprehensive data from all State programs that receive Federal funding, including, as appropriate, data generated by those programs but maintained in third-party databases." 90 Fed. Reg. 13681, §§ 3(b)–(c) (Mar. 20, 2025).

Days later, President Trump issued Executive Order No. 14,248 (the Elections EO). It directed the Department of Homeland Security (DHS) to provide state and local officials access to government systems for verifying citizenship and to coordinate with DOGE to review various data sources "for consistency with Federal requirements" and to "identify unqualified voters registered in the States." 90 Fed. Reg. 14005, 14007, § 2(b)–(b)(iii) (Mar. 25, 2025).

The President's March 31, 2026, Executive Order "Ensuring Citizenship Verification and Integrity in Federal Elections" (the Mail Voting EO) is the culmination of these efforts to unlawfully and hastily build a nationwide citizenship database. The Mail Voting EO directed DHS to create lists of citizens eligible to vote using information from USCIS, SSA, and "other relevant Federal databases." Exec. Order No. 14,399, 91 Fed. Reg. 17125, § 2(a) (Mar. 31, 2026). It also directs the U.S. Postal Service (USPS) and other federal agencies to create a list of those who are eligible to receive mail ballots and directs USPS to not mail ballots to voters not on that list. *Id.* at 17126, § 3(b)(iii)–(iv).

The DOGE EO, Information EO, Elections EO, and Mail Voting EO enable an extraordinary consolidation of data by the federal government

- 10 -

and marshaled federal resources toward a unified, unprecedented goal: giving federal agencies broad access to federal and state data about ordinary Americans.

## B. The administration has engaged in systematic, unlawful efforts to collect and centralize Americans' data.

Just as quickly as it promulgated the executive orders, the administration established it would not use this information lawfully or appropriately. Rather, it has reappropriated and centralized that data, while failing to handle it securely. The same could happen to New Jersey citizens' sensitive voter data.

The federal government has engaged in unauthorized "secondary use[s]" of data, "where information that an individual has given to one agency for a specific purpose is later reused by that agency or by another agency or entity for an entirely different purpose without the individual's consent."[6] This has included directing the Internal Revenue Service (IRS) to provide confidential tax information to Immigration and Customs Enforcement (ICE), over the objections of the IRS's acting general counsel,

---

[6] Nicole Alvarez, *The Trump Administration Is Using Americans' Sensitive Data to Build a Digital Watchtower*, Ctr. for Am. Progress (Aug. 25, 2025), https://www.americanprogress.org/article/the-trump-administration-is-using-americans-sensitive-data-to-build-a-digital-watchtower [https://perma.cc/QCJ2-H5AH].

who was subsequently "forced out of his job."[7] *See Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, 815 F. Supp. 3d 1, 19–20 (D.D.C. 2025) (ruling IRS's data-sharing was unlawful), No. 1:25-cv-00457, 2026 WL 551105, at *3 (D.D.C. Feb. 26, 2026) ("[T]he IRS violated the [Internal Revenue Code] approximately 42,695 times by disclosing last known taxpayer addresses to ICE through TIN Matching without confirming that ICE's request set forth the address of the taxpayer with respect to whom the requested return information related.") (internal quotations and changes omitted); *Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent*, No. 1:25-cv-12822-IT, 2026 WL 309281 (D. Mass. Feb. 5, 2026) (enjoining ICE's use of taxpayer addresses provided by IRS). The Transportation Security Administration is likewise reported to be providing names and birthdates of travelers to ICE for use in immigration enforcement.[8] And the Centers for Medicare & Medicaid Services agreed to provide extraordinary levels of detail about Medicaid recipients, including "social security number

---

[7] William Turton, Christopher Bing & Avi Asher-Schapiro, *The IRS Is Building a Vast System to Share Millions of Taxpayers' Data With ICE*, ProPublica (July 15, 2025), https://www.propublica.org/article/trump-irs-share-tax-records-ice-dhs-deportations [https://perma.cc/VEP2-DACX].

[8] Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 25, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html [https://perma.cc/WZ6Q-SY74].

- 12 -

(SSN), date of birth, sex, phone number, locality, ethnicity and race,"[9] only to have that agreement narrowed following litigation. *See California v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-05536-VC, 2025 WL 3751931, at \*3 (N.D. Cal. Dec. 29, 2025).

At the same time the administration has engaged in an unprecedented effort to gather Americans' data, it has centralized data across the government. DHS and DOGE transformed the Systematic Alien Verification for Entitlements (SAVE) program from a relatively limited system into one that searches multiple databases, including SSA data, a notoriously unreliable source of citizenship information.[10] The administration apparently intends this expanded version of SAVE to be used to scrutinize state voter rolls. *See League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-3501 (SLS), 2025 WL 3198970, at \*2–4 (D.D.C. Nov. 17,

---

[9] Joseph Cox, *Here's the Document Giving ICE 80 Million Medicaid Patients' Data*, Freedom of the Press Found. (Jan. 5, 2026), https://freedom.press/the-classifieds/heres-the-document-giving-ice-80-million-medicaid-patients-data/ [https://perma.cc/R4AS-TZJM].

[10] *See* Press Release, *DHS, USCIS, DOGE Overhaul Systematic Alien Verification for Entitlements Database*, Dep't of Homeland Sec. (Apr. 22, 2025), https://www.dhs.gov/news/2025/04/22/dhs-uscis-doge-overhaul-systematic-alien-verification-entitlements-database [https://perma.cc/Y8A5-YX3M]; Jasleen Singh & Spencer Reynolds, *Homeland Security's "SAVE" Program Exacerbates Risks to Voters*, Brennan Ctr. For Just. (July 21, 2025), https://www.brennancenter.org/our-work/research-reports/homeland-securitys-save-program-exacerbates-risks-voters [https://perma.cc/PC9W-YQ2B].

- 13 -

2025); *but see* Pub. L. No. 100-503, § 9, 102 Stat. 2507, 2514 (1988) (prohibiting "national data bank[s] that combine[], merge[], or link[] information on individuals"). But SAVE has made "persistent mistakes" where it has been used to review state voter rolls, erroneously identifying eligible U.S. citizen voters as noncitizens.[11] SSA itself states that its data does not provide "definitive information about an individual's citizenship status."[12] Nor has DHS shown that it conducts proper data matching.[13] It is no wonder, then, that such a system creates a demonstrated risk of false matches. That is why both government agencies and nonprofits have warned against primarily using SAVE, and its underlying USCIS

---

[11] Jen Fifield & Zach Despart, *"Not Ready for Prime Time." A Federal Tool to Check Voter Citizenship Keeps Making Mistakes,* ProPublica and Texas Tribune (Feb. 13, 2026, at 05:30 ET), https://www.propublica.org/article/save-voter-citizenship-tool-mistakes-confusion [https://perma.cc/9VPR-C3TE]. In one Missouri county, more than half of the voters identified by SAVE as noncitizens were actually U.S. citizens. *Id.* DHS has also had to correct information provided to at least five states after SAVE misidentified U.S. citizen voters as noncitizens. *Id.*

[12] Letter from Nancy Morales Gonzalez, Assoc. Gen. Couns., SSA Off. of Gen. Couns. to Jon Sherman, Litig. Dir. & Senior Couns., Fair Elections Ctr. 2 (July 13, 2023), https://fairelectionscenter.org/wp-content/uploads/2025/07/SSA-Touhy-Decision-letter.July-13-2023-signed.pdf [https://perma.cc/Y5U9-UTU8].

[13] *DOGE and State Voter Rolls,* Protect Democracy (July 15, 2025), https://protectdemocracy.org/work/doge-and-state-voter-rolls/ [https://perma.cc/6K3R-BGUL].

data, for voter verification[14]: The demonstrated risks of false negatives and wrongful voter purges jeopardize voters' rights and can be used by the administration to support debunked claims of noncitizen voting.

As the administration improperly amasses sensitive data, it has failed to properly protect that data. While the United States claims that submitted voter rolls will be "subject to federal privacy protections," Letter from Harmeet K. Dhillon to Tahesha Way (Aug. 14, 2025), Dkt. No. 20-4, at 2, the agreement DOJ has asked states to sign governing the transfer of their voter registration data lacks key security provisions and may violate federal law.[15] Under the Federal Information Security Modernization Act of 2014 (FISMA), federal agencies and their contractors must develop and implement information security programs to protect their computer systems and the information stored in them. *See* 44 U.S.C. §§ 3554(a)(1)(A)(i)–(ii), (B)(i); 40 U.S.C. § 11331(b)(2)(A)(i). DOJ's

---

[14] *See, e.g.*, U.S. Comm'n on C.R., *An Assessment of Minority Voting Rights Access in the United States* 148–50 (2018), https://www.usccr.gov/files/pubs/2018/Minority_Voting_Access_2018.pdf?inline=1; Abby Vesoulis & Ari Berman, *New Docs Show DHS Gathering Driver's License Data in Voter Fraud Crusade*, Mother Jones (Nov. 14, 2025), https://www.motherjones.com/politics/2025/11/dhs-gathering-drivers-license-save-voter-fraud-crusade [https://perma.cc/7JBX-MYJV].

[15] Lisa J. Danetz, *The Justice Department's Security Measures for Collecting Voter Rolls Are Inadequate*, Brennan Ctr. for Just. (Feb. 25, 2026), https://www.brennancenter.org/our-work/analysis-opinion/justice-departments-security-measures-collecting-voter-rolls-are [https://perma.cc/N7JW-9LDR].

proposed agreement, however, reveals (1) inadequate data encryption, meaning unauthorized users can easily access voters' private data; (2) insufficient access and data minimization controls; and (3) no provisions for vetting contractors, despite expressly providing that the voter files can be shared with contractors.[16] And DOJ plans to "archive"[17] and store data after its analysis rather than destroy it, creating a permanent federal registry of voters' sensitive information.

Recent examples of Plaintiff's mishandling of sensitive information about Americans cast doubt on any assurances it may make about the security of these voter files. In ongoing litigation over SSA data—which includes private information about the health, income, and assets of millions of Americans—the United States disclosed that DOGE team members "were potentially outside of SSA policy and/or noncompliant with the [court's] temporary restraining order." Notice of Corrections to the R., *Am. Fed'n of State, Cnty. and Mun. Emps., AFL-CIO v. SSA*, No. 1:25-cv-00596-ELH (D. Md. Jan. 16, 2026), Dkt. No. 197 at 1. This included po-

---

[16] *See Analyzing DOJ's MOU for Voter Registration List Data for FISMA Compliance*, Election Priv. Info. Ctr., (Feb. 2026), https://epic.org/documents/analyzing-dojs-mou-for-voter-registration-list-data-for-fisma-compliance/ [https://perma.cc/Y89L-6Q74].

[17] *See*, *e.g.*, U.S. Dep't of Just., Confidential Memorandum of Understanding at 7, https://www.brennancenter.org/media/14941/download/kentucky_2025-12-02_doj-mou.pdf?inline=1.

- 16 -

tentially transferring personally identifiable information to DOGE employees and executing a "Voter Data Agreement" with a non-governmental group looking to "find evidence of voter fraud and to overturn election results in certain States." *Id.* at 5. Whistleblower reports have similarly exposed how DOGE employees mishandled SSA data, including a report that a DOGE employee attempted to transfer SSA data onto a thumb drive and intended to take it to a subsequent employer.[18] The IRS also illegally and inadvertently shared taxpayer information with DHS—beyond even what DHS requested.[19] Despite its demonstrated inability to handle this information properly, the administration has sought to

---

[18] Stephen Fowler & Jude Joffe-Block, *The Trump Administration Admits Even More Ways DOGE Accessed Sensitive Personal Data*, NPR (Jan. 30, 2026, at 18:19 ET), https://www.npr.org/2026/01/23/nx-s1-5684185/doge-data-social-security-privacy [https://perma.cc/3CNL-YHUK]; Meryl Kornfield, Elizabeth Dwoskin & Lisa Rein, *Whistleblower Claims Ex-DOGE Member Says He Took Social Security Data to New Job*, Wash. Post (Mar. 10, 2026), https://www.washingtonpost.com/politics/2026/03/10/social-security-data-breach-doge-2/ [https://perma.cc/PQ54-Z45Y].

[19] Jacob Bogage, Jeff Stein & Perry Stein, *IRS Improperly Disclosed Confidential Immigrant Tax Data to DHS*, Wash. Post (Feb. 11, 2026), https://www.washingtonpost.com/business/2026/02/11/immigrants-irs-dhs-tax-data/ [https://perma.cc/P6FL-BJBL].

gather driver's license,[20] Supplemental Nutrition Assistance Program (SNAP),[21] Department of Housing and Urban Development,[22] and child support[23] data, including social security numbers. This case is part of these efforts to accumulate and centralize massive troves of Americans' private data.

---

[20] Jonathan Shorman, *Homeland Security Wants State Driver's License Data for Sweeping Citizenship Program*, Stateline (Nov. 25, 2025, at 16:00 ET), https://stateline.org/2025/11/25/homeland-security-wants-state-drivers-license-data-for-sweeping-citizenship-program/ [https://perma.cc/A4EG-MY4X].

[21] Jude Joffe-Block, *The USDA Wants States to Hand Over Food Stamp Data by the End of July*, NPR (July 19, 2025, at 05:00 ET), https://www.npr.org/2025/07/19/nx-s1-5471553/usda-snap-privacy-lawsuit [https://perma.cc/2Y4G-2KW8].

[22] Rachel Siegel, Hannah Natanson & Laura Meckler, *DOGE Is Collecting Federal Data to Remove Immigrants from Housing, Jobs*, Wash. Post (Apr. 15, 2025), https://www.washingtonpost.com/business/2025/04/15/doge-ssa-immigration-trump-housing/ [https://perma.cc/E532-JJNE].

[23] Eli Hager, *DHS Seeks Access to Massive Employment, Salary and Family Database Legally Restricted to Use in Child Support Cases*, ProPublica (Mar. 11, 2026, at 05:00 ET), https://www.propublica.org/article/dhs-trump-child-support-federal-parent-locator-service-immigration [https://perma.cc/F7Z9-USG4].

- 18 -

**C.    The administration's actions call into question its justifications for sensitive voter information.**

Plaintiff is also reported to be trying "to build the largest set of national voter roll data it has ever collected, raising concerns that the data could be used to cast doubt on future election results."[24] This lawsuit, and the dozens of similar lawsuits playing out across the country, are not a good-faith attempt to enforce federal election law. They are, rather, a profound threat to the right to vote and longstanding separation of powers principles.

Documents that have recently come to light through Freedom of Information Act requests reveal that Plaintiff has used HAVA, the NVRA, and the CRA to intentionally hide the purpose for its requests for voter files. From at least November 2025, Mr. Neff, acting as Voting Section Chief, instructed that DOJ should not provide information about its intended purpose for the data to the states, stating that neither the HAVA, NVRA, or CRA "require [us] to give the states information about what we are going to do with the data." Ex. 3. Plaintiff could not possibly satisfy the requirement to provide "the purpose" of the "demand," 52 U.S.C. § 20703, when it is obscuring that purpose.

---

[24] Nick Corasaniti, *Why Is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html [https://perma.cc/HK39-U9RK].

As DOJ's public statements and documents obtained from the agency through Freedom of Information Act requests confirm, its purpose is not to review list maintenance procedures, but to expand federal control over elections and target voters for removal. *See* Ex. 4 at 1220 (ordering that DOJ "mass produce" letters to states). DOJ leadership recently stated that "[a]t this Department of Justice, we will not permit states to jeopardize the integrity and effectiveness of elections by refusing to abide by our federal elections laws. If states will not fulfill their duty to protect the integrity of the ballot, we will."[25] In one email, one DOJ official responded to Privacy Act concerns by stating that DOJ wanted to "conduct searches that assess the List maintenance of voter registrations lists." Ex. 5 at 724.

DOJ is following through with these plans. The Civil Rights Division executed a separate MOU with the Department of Homeland Security and USCIS to permit it to run state voter lists through SAVE, including that DOJ will contact voters to obtain additional information. Ex. 6 at 34. And although DOJ has apparently been planning to run the lists through SAVE since at least 2025, and executed the MOU with DHS and

---

[25] Press Release, U.S. Dep't of Just., Just. Dep't Sues Four Additional States and One Locality for Failure to Comply with Fed. Elections Laws (Dec. 12, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-additional-states-and-one-locality-failure-comply-federal [https://perma.cc/V5M6-PJ3J].

USCIS on January 20, 2026, at a hearing in another parallel case, Plaintiff assured the court that the lists would be "used solely for the purposes [ . . . ] stated in the letters, to assess compliance with both HAVA and the NVRA." MTD Hearing Tr. at 104:18–20, *United States v. Bellows*, No.1:25-cv-468-LEW (D. Me. Mar. 26, 2026). But at a hearing held by the federal district court in Rhode Island on the same day in yet another parallel case, Plaintiff stated that it "intend[ed] to" send the voter rolls to the Department of Homeland Security. MTD Hearing Tr. at 65:1–11, *United States v. Amore*, No. 25-CV-639-MSM (D.R.I. Mar. 26, 2026). DOJ's MOU with the Department of Homeland Security and USCIS indicates that Plaintiff has intended to transmit voter information outside of DOJ since at least January 20, 2026. *See* Ex. 6 at 40.

Former Attorney General Pamela Bondi made this pretext plain when she sent a letter to Minnesota Governor Tim Walz mere hours after federal agents killed Alex Pretti in Minnesota on January 23, 2026.[26] While eliding an explicit quid pro quo, her letter linked DOJ's June 2025 demand to "access voter rolls" not with enforcement of federal statutes but, instead, with the massive presence of federal immigration agents in Minneapolis. As a federal district court has already observed, "The context of this demand within a letter about immigration enforcement casts

---

[26] *See* Letter from U.S. Att'y Gen. Pamela Bondi to Minn. Gov. Tim Walz (Jan. 24, 2026), https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html [https://perma.cc/29R4-4GF3].

serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what it intends to do with that data." *Oregon*, 2026 WL 318402, at \*11.

Plaintiff's claims in this case, and in cases like it, are far from a good faith effort to investigate potential violations of federal law. Instead, they are a transparent effort to gather unprecedented amounts of voter data for political purposes—by any means at the executive's disposal, including through unlawful coercion. "The presumption of regularity that has been previously extended to Plaintiff that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *Oregon*, 2026 WL 318402, at \*11.

### III. Plaintiff's demand attempts to seize authority over elections that the Constitution reserves for Congress and the states.

The Constitution "assign[s] no role at all to the President" in election administration. *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 818 F. Supp. 3d 34, 53 (D.D.C. 2026) (*LULAC II*), *judgment entered*, No. 25-CV-0946 (CKK), 2026 WL 880056 (D.D.C. Mar. 31, 2026). Under the Constitution, the states and Congress share responsibilities for regulating election administration. *See* U.S. Const. art. I, § 2, cl. 1; U.S. Const. art. I, § 4, cl. 1. The notion that the executive would have the power to regulate federal elections

- 22 -

"does not appear to have crossed the Framers' minds." *LULAC I*, 808 F. Supp. 3d at 45 (citing The Federalist No. 59 (Alexander Hamilton)); *see also* Debate in Massachusetts Ratifying Convention, *reprinted in* 2 The Founders' Constitution 255 (P. Kurland & R. Lerner eds., 1987) ("I know of but two bodies wherein [the power to regulate federal elections] can be lodged—the legislatures of the several states, and the general Congress." (statement of Caleb Strong)). "Congress, not the President, has the ultimate constitutional authority over elections." *California v. Trump*, 786 F. Supp. 3d 359, 381 (D. Mass. 2025).

Although the president has no constitutional role in elections, the administration has weaponized data to attempt to exert authority over election administration. Plaintiff's first half-dozen complaints in its thirty cases seeking unredacted voter rolls began by identifying President Trump's Elections EO as the catalyst for filing these suits. Notably, Plaintiff has ceased relying on the EO, including in this action. *Compare, e.g.*, Compl. at 2–3, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025), Dkt. No. 1, Compl. at 1, *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. Sept. 25, 2025), Dkt. No. 1, *and* Compl. at 1, *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Sept. 25, 2025), Dkt. No. 1, *with* Compl. at ¶ 1 (claims solely under the CRA). That shift indicates the faulty premise of these actions. Courts have already determined that multiple provisions of the Elections EO "are inconsistent with the

constitutional separation of powers and cannot lawfully be implemented." *LULAC II*, 818 F. Supp. 3d at 54 (permanently enjoining provisions purporting to impose new requirements for verifying citizenship for people registering to vote or applying for absentee ballots).

Plaintiff's role in enforcing federal statutes does not permit it to engage in list maintenance, but only to ensure the states comply with federal laws. Nonetheless, in early February 2026, the President called for an unconstitutional "take over" of voting procedures in many states.[27] The Mail Voting EO illustrates the President's dogged attempt to put these words into action.[28] This is an escalation, but not a change in position for the President, who in August 2025 declared that states must do "what the Federal Government, as represented by the President of the United States, tells them" as related to elections.[29] And as made clear by

---

[27] Epstein & Corasaniti, *supra* note 1.

[28] *See* Erica L. Green, Michael Gold & Robert Jimison, *Trump Repeats Call to 'Nationalize' Elections, as White House Walks It Back*, N.Y. Times (Feb. 3, 2026), https://www.nytimes.com/2026/02/03/us/politics/trump-save-act-elections.html [https://perma.cc/FQZ8-YRXP].

[29] *See* Donald J. Trump [@realDonaldTrump], Aug. 18, 2025, TruthSocial.com, https://truthsocial.com/@realDonaldTrump/posts/115049485680941254 [https://perma.cc/R3KM-525Z].

the agreements that DOJ has asked states to sign,[30] DOJ plans to conduct its own analyses to identify voters it deems should be removed from the rolls—and try to force states to do so.[31] In addition, DOJ's MOU with the Department of Homeland Security and USCIS suggests that Plaintiff intends to identify individual voters and potentially even push states to reach out to those voters for identity documents like a passport or birth certificate, *see* Ex. 6 at 34—outreach the executive branch has never had a role in doing under our Constitution.[32]

By its own public accounts, the executive's real purpose for collecting sensitive voter data from New Jersey and other states is to disrupt and take over election processes, just as it has weaponized data in other

---

[30] Eileen O'Connor, *"Confidential" Agreements Show Trump Administration's Plans for States' Voter Data*, Brennan Ctr. for Just. (Feb. 5, 2026), https://www.brennancenter.org/our-work/analysis-opinion/confidential-agreements-show-trump-administrations-plans-states-voter [https://perma.cc/B823-UM7B].

[31] *See, e.g.*, Confidential Memorandum of Understanding between U.S. Dep't of Just. and Alaska Div. of Elections at 5 (Dec. 22, 2025), https://www.brennancenter.org/media/15064/download/alaska_12.22.2025_executed-mou.pdf?inline=1 [https://perma.cc/SC2J-8X9C].

[32] Natalia Contreras, *Voting Rights Groups Challenge Texas' Removal of Potential Noncitizens from the Voter Roll*, Votebeat (Mar. 27, 2026, at 16:49 ET), https://www.votebeat.org/texas/2026/03/27/save-database-voter-rolls-removal-dps-secretary-of-state/ [https://perma.cc/84WK-ECSU].

contexts to pursue policy goals regardless of legal limitations. Specifically, Plaintiff seeks to supplant New Jersey's role in list maintenance by substituting its own judgment and process, which violates the constitutional and statutory assignments of election administration duties. *See Weber,* 816 F. Supp. 3d at 1175–76. As with its other unlawful uses of information, Plaintiff's goal in obtaining and consolidating massive amounts of voter data is to encroach on the constitutionally mandated role of states in election administration.

## CONCLUSION

Congress vests authority over elections to Congress and the states. Plaintiff's continued, unprecedented demands for sensitive voter data flout this careful balance to consolidate data and power in the hands of the executive branch. This Court should reject Plaintiff's pretextual and statutorily deficient demand for New Jersey's unredacted voter data and dismiss the Complaint.

Respectfully submitted,

Dated: May 21, 2026

s/   Thomas P. Wolf
Thomas Wolf

Sejal Jhaveri*
**CAMPAIGN LEGAL CENTER**
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
sjhaveri@campaignlegalcenter.org

Thomas P. Wolf
**BRENNAN CENTER FOR JUSTICE**
**AT NYU SCHOOL OF LAW**
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
wolft@brennan.law.nyu.edu

Justin Lam*
**BRENNAN CENTER FOR JUSTICE**
**AT NYU SCHOOL OF LAW**
777 6th Street NW, Suite 1100
Washington, DC 20001
(202) 249-7190
lamju@brennan.law.nyu.edu

*Attorneys for Amici Curiae*
*Brennan Center for Justice and*
*Campaign Legal Center*

***Applications for pro hac vice***
*admission forthcoming*

- 27 -