# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DALE G. CALDWELL, in his official capacity as LIEUTENANT GOVERNOR and SECRETARY OF STATE of NEW JERSEY,<br><br>Defendant,<br><br>MAKE THE ROAD NEW JERSEY, JAMIE Y. DING, and DANIELLE LITWAK,<br><br>Intervenor-Defendants,<br><br>LEAGUE OF WOMEN VOTERS OF NEW JERSEY, et al.,<br><br>Intervenor-Defendants,<br><br>NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.,<br><br>Intervenor-Defendants. | Case No. 3:26-cv-2025-ZNQ-JTQ |

**BRIEF OF INTERVENOR-DEFENDANTS MAKE THE ROAD NEW JERSEY, JAMIE Y. DING, AND DANIELLE LITWAK IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FEDERAL ELECTION RECORDS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................... 3

I.      As other courts have held, the Federal Rules govern DOJ's claim. ................ 3

II.     The Court must conduct meaningful review of DOJ's Title III demand. ....... 6

III.    The proper procedural course is to first resolve the pending motions to
        dismiss and then, if needed, proceed to discovery. ..................................... 10

IV.     The flawed merits arguments folded into DOJ's motion exemplify the
        procedural impropriety of this "motion to compel." ................................... 14

CONCLUSION ........................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960) ..................................................................7, 8

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ........................................................................................ 4

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
854 F.3d 683 (D.C. Cir. 2017) ......................................................................... 6

*CFPB v. Source for Pub. Data, L.P.*,
903 F.3d 456 (5th Cir. 2018) ........................................................................... 6

*Doe v. Abington Friends Sch.*,
480 F.3d 252 (3d Cir. 2007) ............................................................................13

*Donaldson v. United States*,
400 U.S. 517 (1971) ........................................................................................ 4

*Dowling v. City of Philadelphia*,
855 F.2d 136 (3d Cir. 1988) ............................................................................14

*EEOC v. Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988) ............................................................................ 6

*Fernandez v. Antczak*,
No. CV 23-1149, 2023 WL 12204881 (E.D. Pa. Oct. 23, 2023) ..........................14

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ........................................................................................11

*Gahagan v. USCIS*,
911 F.3d 298 (5th Cir. 2018) ........................................................................... 5

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .............................................................. *passim*

*Kost v. Kozakiewicz*,
1 F.3d 176 (3d Cir. 1993) ................................................................................10

*N.H. Fire Ins. Co. v. Scanlon*,
362 U.S. 404 (1960) ................................................................................................ 5

*QueerDoc, PLLC v. DOJ*,
807 F. Supp. 3d 1295 (W.D. Wash. 2025) ............................................................. 13

*SEC v. Wheeling-Pittsburgh Steel Corp.*,
No. 80-1375, 1980 WL 8157 (3d Cir. Aug. 27, 1980) ........................................... 12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ................................................................................................ 5

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
584 F.3d 340 (1st Cir. 2009) .................................................................................. 6

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
288 F.R.D. 282 (S.D.N.Y. 2012) ........................................................................... 14

*United States v. $8,221,877.16 in U.S. Currency*,
330 F.3d 141 (3d Cir. 2003) ............................................................................ 10, 11

*United States v. Amore*,
No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ......................... *passim*

*United States v. Bellows*,
No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026) ...... *passim*

*United States v. Benson*,
819 F.Supp.3d 753 (W.D. Mich. 2026) ............................................................... 2, 7

*United States v. Fontes*,
No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ....................... 2, 5

*United States v. Galvin*,
No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ......................... 2, 7

*United States v. LaSalle Nat'l Bank*,
437 U.S. 298 (1978) .............................................................................................. 13

*United States v. Lynd*,
301 F.2d 818 (5th Cir. 1962) ................................................................................. 8

iii

*United States v. Markwood*,
  48 F.3d 969 (6th Cir. 1995) .................................................................................13

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950) ............................................................................................ 7

*United States v. Oregon*,
  No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026).........................*passim*

*United States v. Powell*,
  379 U.S. 48 (1964)...........................................................................................*passim*

*United States v. Rockwell Int'l*,
  897 F.2d 1255 (3d Cir. 1990) .............................................................................. 6

*United States v. Weber*,
  816 F.Supp.3d 1168 (C.D. Cal. 2026).............................................................*passim*

*United States v. Wis. Elections Comm'n*,
  No. 25-CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026)........... 2, 15

**STATUTES**

29 U.S.C. § 161 .................................................................................................... 4

5 U.S.C. § 552a.....................................................................................................12

52 U.S.C. § 20703 ..............................................................................................6, 8

52 U.S.C. § 20705 ................................................................................................. 4

8 U.S.C. § 1252 .................................................................................................... 5

**RULES**

Fed. R. Civ. P. 1 .................................................................................................3, 4

Fed. R. Civ. P. 81 ................................................................................................. 3

**OTHER AUTHORITIES**

Louis L. Jaffe, *The Judicial Enforcement of Administrative Orders*, 76 Harv. L.
  Rev. 865 (1963)....................................................................................................10

iv

**INTRODUCTION**

The Federal Rules of Civil Procedure lay out the appropriate process for a civil action: Start with Rule 12 motions and then—if the plaintiff states a claim and establishes jurisdiction—proceed to discovery, summary judgment, and trial if necessary. That process offers the defendant multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build a factual record for the Court. And the Federal Rules provide familiar governing standards for the Court to apply at each step, all with an eye toward orderly, efficient, and transparent resolution of disputes based on a robust adversarial system in full view of the public.

The U.S. Department of Justice ("DOJ") asks this Court to sweep all that aside and instead put the onus on Defendant Caldwell to resist a motion to force him "to produce the documents requested by Plaintiff." Dkt. No. 20 at 1. In doing so, DOJ asks the Court to leapfrog over the safeguards built into the Rules, and issue an order immediately granting DOJ the final relief sought in the Complaint. But that is not how civil litigation works. Nothing in the Federal Rules or Title III of the Civil Rights Act of 1960 ("CRA")—which is the *only* basis upon which DOJ brings its claim here—authorizes a "special statutory proceeding," or permits DOJ to short-circuit the Rules and avoid motions to dismiss under Rule 12, by filing a "motion to compel federal election records." *Contra* Dkt. No. 20-1 ("DOJ Mem.") at 5.

With two new decisions issued yesterday by courts in Maine and Wisconsin, a total of *eight* federal courts have now rejected DOJ's arguments in parallel cases

1

and dismissed DOJ's essentially identical claims (with no court finding they have any merit).[1] This Court should do the same.

## BACKGROUND

DOJ filed this suit to compel Defendant Caldwell to turn over New Jersey's unredacted statewide voter list. *See generally* Compl., Dkt. No. 1 ("Compl."). Its complaint states a single claim under Title III of the CRA. *See id.* ¶¶ 37–41. Although New Jersey officials already provided DOJ with a redacted version of the State's voter list, DOJ continues to demand New Jerseyans' sensitive personal data, including social security and driver license numbers. *See* Dkt. No. 20-5 at 1. DOJ contends that it is entitled to this sensitive data under the CRA for the alleged purpose of assessing New Jersey's compliance with two other statutes: the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *See* Compl. ¶¶ 10–11, 27; Dkt. No. 20-4 at 2.

---

[1] *See United States v. Weber*, 816 F.Supp.3d 1168, 1182 (C.D. Cal. 2026), *appeal docketed*, No. 26-1232 (9th Cir. Mar. 3, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *United States v. Benson*, 819 F.Supp.3d 753, 770 (W.D. Mich. 2026), *appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026); *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129, at *6 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637, at *3–4 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. 2:26-cv-00066, 2026 WL 1177244, at *1 & n.1 (D. Ariz. Apr. 28, 2026); *United States v. Bellows*, No. 1:25-CV-00468-LEW, 2026 WL 1430481, at *10 (D. Me. May 21, 2026); *United States v. Wisconsin Elections Comm'n*, No. 25-CV-1036-JDP, 2026 WL 1430354, at *5 (W.D. Wis. May 21, 2026).

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action and provide a roadmap for how this case—and nearly all other civil actions—must proceed. Nothing in the Rules nor in the statutory text of the CRA support any conclusion to the contrary, as confirmed by the U.S. Supreme Court. Similarly, the consensus among the courts to have considered these cases thus far is that the judiciary is required to conduct meaningful review of DOJ's demands. There is no reason for this Court to come to a different conclusion. It should deny DOJ's motion and adjudicate this matter under the normal course set forth in the Federal Rules—starting by resolving the pending motions to dismiss, *see* Dkt. Nos. 50, 56, 57, 59, which should resolve this case.

## I.    As other courts have held, the Federal Rules govern DOJ's claim.

The Court should reject DOJ's attempt to short-circuit the Federal Rules in this case. As Defendant correctly points out, the Rules "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1; *see also* Dkt. No. 50-1 ("NJ Mem.") at 50–51.

None of Rule 81's exceptions apply here, nor does DOJ suggest as much. Nor is there some blanket exception when the government seeks to compel documents. Quite to the contrary, Rule 81(a)(5) expressly states that "proceedings to compel . . . production of documents through a subpoena issued by a United States officer or agency under a federal statute" *are* subject to the Federal Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." Fed. R. Civ. P. 81(a)(5). Thus, even if a Title III demand could be characterized as a subpoena, it

3

would still be subject to the Federal Rules, because neither statute, local rule, nor any order of this Court provide an exception for Title III demands.

Congress knows how to prescribe streamlined proceedings when it wishes to, *see, e.g.*, 29 U.S.C. § 161(2), but it did not do so in the CRA, which provides only that courts "have jurisdiction by *appropriate process* to compel [] production," 52 U.S.C. § 20705 (emphasis added). The Supreme Court has held that, when Congress uses such language to confer jurisdiction on the federal courts and does not provide any further specification as to process, the "appropriate process" is that "the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 & n.18 (1964); *see also* Fed. R. Civ. P. 1; *Donaldson v. United States*, 400 U.S. 517, 528 (1971) (explaining in context of the same statute in *Powell* that the Federal Rules "do have an application" to suits enforcing government demands).[2] Thus, consistent with *Powell*, courts dismissing DOJ's parallel suits have held that the statutory text DOJ relies upon here does not displace the Federal Rules. *See, e.g.*, *Weber*, 816 F.Supp.3d at 1182; *Oregon*, 2026 WL 318402 at *8; *Amore*, 2026 WL 1040637, at *3; *Bellows*, 2026 WL 1430481, at *5 & n.8.

Nor is *Powell* a particularly exceptional decision. The Supreme Court *always* demands a clear statutory exemption before finding that the Federal Rules do not govern judicial proceedings. *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 700

---

[2] Although DOJ cites it favorably, *see* DOJ Mem. 5–7, *Donaldson* reaffirmed that the Rules apply to a government request to enforce a tax summons. *See* 400 U.S. at 524. It expressly held that Rule 24 supplied the legal framework for intervention motions in such proceedings, even though it affirmed the holding below that the putative intervenor had failed to satisfy Rule 24's substantive terms. *Id.* at 540–41.

4

(1979) (demanding "clear expression of congressional intent to exempt actions brought under [Social Security Act] from the operation of the Federal Rules of Civil Procedure"); *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407–08 (1960) ("In the absence of express statutory authorization . . . there is neither justification nor authority for carving out an exception to the uniform and regular civil procedure laid down by the Federal Rules."). Where Congress exempts application of the Rules, it does so expressly. *See, e.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (citing 8 U.S.C. § 1252(e)(1)(B)). Title III—like the statute in *Powell*—lacks any such exemption.

DOJ's contrary argument relies entirely on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). *See* DOJ Mem. 4–5. But "*Powell* squarely rejects" DOJ's "reliance on *Lynd*." *Oregon*, 2026 WL 318402, at *8; *see also Weber*, 816 F.Supp.3d at 1182 n.15; *Fontes*, 2026 WL 1177244, at *1 & n.1; *Bellows*, 2026 WL 1430481, at *5 & n.8. As the court in *Amore* observed, just "[t]wo years after *Lynd*," *Powell* "held that a demand made pursuant to a similar statute authorizing the production of documents by 'appropriate process' could be challenged 'on any appropriate ground,' and that the Government was required to show that they had met all of the statutory criteria for their request." 2026 WL 1040637, at *4 (citing *Powell*, 379 U.S. at 57–58); *see, e.g.*, NJ Mem. 24–38 (explaining DOJ's failure to provide basis and purpose); Dkt. No. 59-1 ("MRNJ MTD") at 2–5 (supplementing Defendant's arguments).

Thus, while *Lynd* was never binding on this Court, it has not been good law even within the Fifth Circuit for over 60 years. *See Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a

5

subsequent Supreme Court opinion establishes a rule of law inconsistent with that precedent." (quotation omitted)).

## II.    The Court must conduct meaningful review of DOJ's Title III demand.

DOJ is also wrong to minimize the Court's role in reviewing DOJ's demand. To invoke the powers of a federal court to compel production, DOJ must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose." *Powell*, 379 U.S. at 57; *see also* 52 U.S.C. § 20703 (providing that Title III "demand shall contain a statement of the basis and the purpose therefor"). After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Powell*, 379 U.S. at 58. "[A]n abuse would take place if the summons had been issued for an improper purpose." *Id.*

Thus, courts—including the same circuit court that issued *Lynd*—regularly engage in meaningful judicial review of government demands issued under myriad statutory schemes. *See, e.g.*, *United States v. Rockwell Int'l*, 897 F.2d 1255, 1262 (3d Cir. 1990) (quoting *Powell*, 379 U.S. at 58); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009). In doing so, "courts are not required to enforce every agency [demand]" or ignore an agency acting in excess of statutory authority or out of compliance with statutory requirements. *EEOC v. Univ. of Pa.*, 850 F.2d 969, 980–81 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990); *see also*

6

*United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (holding courts must quash demands that exceed investigatory power of the federal agency).

DOJ's suggestion that its suit is subject to only cursory judicial review, *see* DOJ Mem. 9–13, has been uniformly rejected. As the *Oregon* court concluded: "There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." *Oregon*, 2026 WL 318402, at *8 (citing *Powell*, 379 U.S. at 58); *see also Weber*, 816 F.Supp.3d at 1182; *Galvin*, 2026 WL 972129, at *1 & n.3, 6; *Amore*, 2026 WL 1040637, at *3–4; *Bellows*, 2026 WL 1430481, at *5 & n.8. Even *Benson* recognized that a so-called "summary enforcement proceeding" is still subject to judicial review and it ultimately "appl[ied] the Rule 12(b)(6) standard to evaluate the United States' CRA claim," 819 F.Supp.3d at 766 (citing *Powell*, 379 U.S. at 58 n.18), and dismissed the complaint, *id.* at 770.

The context of *Lynd* and the contemporaneous cases on which DOJ relies, *see* DOJ Mem. 4–5, distinguishes those cases. *Lynd* involved demands for voter records from specific counties in Mississippi and parishes in Louisiana that were sought "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within [those specific] jurisdiction[s]." 306 F.2d at 229 n.6; *see also Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) ("[T]he demand to the registrars made by the Attorney General . . . follows almost

7

exactly the pertinent wording in Sections 301 and 303 of the [CRA].”), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). That was undeniably a valid demand under 52 U.S.C. § 20703, as Title III's “clearest purpose” is to permit investigations “concerning infringement or denial of . . . voting rights.” *Lynd*, 306 F.2d at 228; *see Gallion*, 187 F. Supp. at 853 (“The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote.”); *see also* NJ Mem. 30–33; Dkt. No. 56-1 at 1–5 (NAACP Intervenors cataloguing CRA's purpose). And there was also no doubt that the federal government had a valid “basis” to suspect racial discrimination in those cases in localities where Black residents had been overwhelmingly excluded from the voter rolls. *See, e.g.*, *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that no Black voters “had been registered in Forrest County during defendant Lynd's term of office,” while “none of the defendants nor their deputies were able to testify to any individual white person who had been rejected”).

None of the factors that made *Lynd* such an easy case are present here. *Lynd* observed that if there were a “genuine dispute,” the court would need to adjudicate both “whether the written demand has been made” according to Title III and “whether or not any specified particular paper or record” comes within the ambit of the statute's definition of those terms. 306 F.2d at 226. Here, as the pending motions to dismiss make clear, there are precisely such disputes. *See, e.g.*, NJ Mem.; MRNJ MTD; *see also infra* Part IV. *Lynd* also emphasized that it was “of great importance” that the records sought there were “public records which ought ordinarily to be open to legitimate reasonable inspection,” and *not* “confidential, private papers.” 306 F.2d

8

at 231. Here, in contrast, New Jersey *already* provided public records pursuant to the DOJ's request under the NVRA, *see* Dkt. No. 50-8 at 1, and only voters' sensitive personal information remains at issue, *see* Dkt. No. 20-4 at 1. And critically, the avowed purpose of DOJ's request here falls outside of Title III, because—even by DOJ's own telling—the demand relates, not to the protection of voting rights, but merely administrative requirements imposed by other statutes with their own enforcement and investigatory mechanisms: the NVRA and HAVA. *See* DOJ Mem. 3; *see also* NJ Mem. 30–38; MRNJ MTD 3–5. Although *Lynd*'s approach may have made sense for requests for publicly available registration forms at risk of being destroyed in 1960s Mississippi, it is inappropriate for DOJ's nationwide crusade to demand the sensitive personal data of every registered voter in New Jersey (and across the country). *See also Bellows*, 2026 WL 1430481, at *6–10.

Finally, DOJ contends that *Powell* embraced meaningful judicial inquiry solely "because it was specifically authorized by [§] 7605(b) of the IRC." DOJ Mem. 7. But *Powell* says the opposite. The petitioners in *Powell* argued that § 7605(b) "impose[d] a probable cause standard" on tax summonses (*i.e.*, a heightened burden for enforcing a summons through judicial enforcement); but the Court rejected that argument, explaining that § 7605(b) does "no more than to emphasize the responsibility of agents to exercise prudent judgment in wielding" their authority. *Powell*, 379 U.S. at 56. In other words, the statute DOJ points to did *not* add a unique, substantive obligation that distinguishes it from Title III. And *Powell* expressly rejected the notion that "under no circumstances may the court inquire into the underlying reasons" for a demand, emphasizing that "[i]t is the court's process which

9

is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58 (citing Louis L. Jaffe, *The Judicial Enforcement of Administrative Orders*, 76 Harv. L. Rev. 865 (1963)). The Supreme Court based that holding on foundational principles of judicial power, as expounded by Professor Jaffe, not any interpretation of § 7605(b). *See, e.g.*, Jaffe, 76 Harv. L. Rev. at 866 ("The core of the judicial function where enforcement is in question is the determination of legality."); *id.* at 869 ("The interposition of the judiciary as the enforcing agency must have some meaning . . . . Its exercise is not merely mechanical." (quoting *NLRB v. Eanet*, 179 F.2d I5, 20-21 (D.C. Cir. 1949) (Prettyman, J.))); *id.* at 870 (explaining courts "have the power to correct excessive administrative zeal," including through review "not only for errors of law but for any patent injustice"). In other words, contrary to DOJ's argument, the core of *Powell* as relevant here does not turn on the specifics of the Internal Revenue Code.

## III. The proper procedural course is to first resolve the pending motions to dismiss and then, if needed, proceed to discovery.

The Court should resolve this case via Rule 12 motions, rather than DOJ's so-called "motion to compel," which is not sanctioned by the Federal Rules nor any statute. The Rules provide for motions to dismiss to test "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). And the Rules set an early deadline for such motions because they "provide litigants with a fundamental procedural safeguard and prevent burdensome discovery in meritless cases." *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 155 (3d Cir. 2003). Accordingly, Rule 12 motions are "intended to

streamline litigation," *id.* (citation modified), and to "weed[] out meritless claims," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Resolving DOJ's "motion to compel" first would get the process backwards. DOJ effectively seeks summary judgment, as granting this motion would leave no further dispute to adjudicate. *See* Compl. at 9 (requesting as relief the production of New Jersey's voter list); *accord* Dkt. No. 20 at 3 (requesting the same).[3] But doing so would also deprive the Defendant and Intervenors of their right to test the legal sufficiency of DOJ's allegations at the outset. The parties' motions to dismiss are the proper vehicle for evaluating DOJ's claim at this stage in the proceedings. *See supra* note 1 (collecting courts granting motions to dismiss parallel cases).

Even if the Court denies the motions to dismiss, the next step would be to permit discovery on DOJ's allegations, including into central questions of fact that could preclude relief. For example, DOJ asserts that its purpose for seeking New Jerseyans' sensitive data is to ascertain if state officials are practicing "reasonable list maintenance efforts." DOJ Mem. 19. But such representations stand in sharp contrast with the alarming picture painted by public reporting and actions of this administration's own officials. *See, e.g.*, NJ Mem. 33–38; Dkt. No. 6-1 at 11–17; Dkt. No. 56-1 at 5–9; Dkt. No. 57-1 at 6–8; *see also Oregon*, 2026 WL 318402, at

---

[3] Consistent with this understanding, after issuing a stay pending the appeals in the California and Oregon cases, the federal court hearing DOJ's parallel case in Hawaii deemed the "motion to compel" filed there as withdrawn, while acknowledging that DOJ could still file "a motion for summary judgment, if appropriate after the stay has been lifted" and *after* the pending motions to dismiss "have been ruled upon." Minute Order at 2, *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Apr. 21, 2026), Dkt. No. 82.

11

*11 ("The presumption of regularity . . . no longer holds."); *cf. Bellows*, 2026 WL 1430481, at *3 n.6 (observing contradictory representations made by DOJ regarding its purpose for seeking voter lists). These developments suggest that DOJ actually seeks to amass sensitive voter data to be used in a variety of ways that DOJ has not been forthright about, to either the States or the courts.[4] There is also reason to suspect that DOJ has not complied with substantive and necessary safeguards imposed by federal law before it may lawfully obtain and use data of the sort it demands here.[5] These include the Privacy Act's restrictions on the use of computerized "matching programs," requiring written agreements detailing certain information, including the "legal authority" for the program. *See* 5 U.S.C. § 552a(o), (p), (q); *see also* NJ Mem. at 36–37 (noting DOJ plans to share data with DHS); *but cf.* Dkt. No. 50-12 (refusing to "redline[]" proposed MOU "in any fashion"). Even if the Complaint is not dismissed, then, discovery into the veracity of DOJ's stated purpose is necessary before DOJ may be granted any relief; this Court is "not obliged to accept a contrived statement and purpose." *Weber*, 816 F.Supp.3d at 1184–86; *see also SEC v. Wheeling-Pittsburgh Steel Corp.*, No. 80-

---

[4] For example, in parallel cases, DOJ has raised "the specter of noncitizen" voting as a reason to expedite appeals. Emergency Mot. to Expedite at 16, *Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026), Dkt. No. 6-1; *accord* Mot. to Expedite at 15, *Oregon*, No. 26-1231 (9th Cir. Mar. 3, 2026), Dkt. No. 12.1. But DOJ did not raise the issue of noncitizen voting before the district courts in those cases—nor has it done so here.

[5] Such substantive safeguards are distinct from the procedural requirements that DOJ has clearly failed to satisfy before demanding New Jerseyans' sensitive data and which are proper grounds for dismissal under Rule 12. *See* NJ Mem. 44–48; *see also* MRNJ MTD 10.

1375, 1980 WL 8157, at *6 (3d Cir. Aug. 27, 1980) (noting, as "indicated in *United States v. Powell*[,] a court should refuse enforcement when the agency is not pursuing an investigation in good faith"); *United States v. Markwood*, 48 F.3d 969, 978 (6th Cir. 1995) (finding that, in context of a government demand, "the dispositive question . . . is whether the [agency] is pursuing the authorized purposes in good faith") (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 317 n.19 (1978)); *QueerDoc, PLLC v. DOJ*, 807 F. Supp. 3d 1295, 1302–04 (W.D. Wash. 2025) (quashing subpoena whose "pretextual nature" "demonstrate[d] that DOJ has abandoned good faith investigation") (citing *Powell*, 379 U.S. at 51, 57–58).[6]

In short, granting DOJ the final relief it seeks—before the Defendant and Intervenors have any opportunity to conduct discovery relevant to such factual issues—would be premature and contrary to the well-established practices that govern civil litigation. *See, e.g.*, *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("It is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'") (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)).

---

[6] As further evidence that DOJ's demand was not made in good faith, DOJ's own recent submission to courts in several of these cases contradicts what it previously told the States and courts about its purpose. Specifically, it reveals that DOJ sought guidance from its Office of Legal Counsel in or before September 2025 to inform these efforts, which DOJ launched specifically "to seek statewide voter lists, and then to share the lists with" DHS, "[i]n response to" an Executive Order issued by the President in early 2025 "for the purpose of identifying illegal aliens who are ineligible to vote." *See, e.g.*, *United States v. N.Y. Bd. of Elections*, No. 1:25-cv-01338 (N.D.N.Y. May 15, 2026), Dkt. No. 97-1 at 1 ("Authority to Obtain and Share Statewide Voter Roll Data," 50 Op. O.L.C. ___ (May 12, 2026)).

## IV.   The flawed merits arguments folded into DOJ's motion exemplify the procedural impropriety of this "motion to compel."

Part and parcel of its effort to avoid ordinary Rule 12 motion practice, DOJ crams many of its merits arguments into the "motion to compel." These include arguments as to whether DOJ provided New Jersey a suitable "statement of the basis and the purpose" of its Title III demand, *see* DOJ Mem. 9–13; whether New Jersey's statewide voter list qualifies as "record or paper" under Title III, *see id.* at 14–19; and whether the CRA preempts New Jersey's privacy laws, *see id.* at 19–20.

DOJ's disjointed efforts to preempt these critical merits questions in its so-called "motion to compel" illustrates both the existence of a "genuine dispute" as to the propriety of DOJ's Title III demand, *Lynd*, 306 F.2d at 226, and the shortcomings of attempting to litigate the entire case through what is effectively a discovery motion. *Cf. Fernandez v. Antczak*, No. CV 23-1149, 2023 WL 12204881, at *2 (E.D. Pa. Oct. 23, 2023) ("The validity of a claim . . . is not properly dealt with on a motion to compel."); *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 288 F.R.D. 282, 287 (S.D.N.Y. 2012) ("[A] discovery motion is not the proper forum for deciding the merits." (citation modified)). The parties' motions to dismiss, however, address each of these disputes, as well as other defects in the Complaint. *See, e.g.*, NJ Mem.; MRNJ MTD.[7] The Court should decide those Rule 12 motions first and deny DOJ's improper and premature request for final relief sought in the "motion to compel."

---

[7] Notably, not only did the two dismissals issued yesterday by the courts considering DOJ's parallel cases in Maine and Wisconsin deny motions to compel, but they also support several arguments for dismissal here: For example, that Title III does not

# CONCLUSION

For the foregoing reasons, the Court should deny the "motion to compel."


Dated: May 22, 2026

Respectfully submitted,
*s/ Omeed Alerasool*


**PEM LAW LLP**

Rajiv D. Parikh (NJ Bar # 032462005)
Julia N. Pudimott (NJ Bar # 435912023)
Devin Q. Cox (NJ Bar # 536762025)
1 Boland Drive, Suite 101
West Orange, NJ 07052
T: (973) 577-5500
rparikh@pemlawfirm.com
jpudimott@pemlawfirm.com
dcox@pemlawfirm.com

**ELIAS LAW GROUP LLP**

Abha Khanna*
Walker McKusick*
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
T: (206) 656-0177
akhanna@elias.law
wmckusick@elias.law

Omeed Alerasool (NJ Bar # 403712022)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
oalerasool@elias.law


\* Permitted to appear *pro hac vice*

*Counsel for Intervenor-Defendants Make the Road New Jersey,*
*Jamie Y. Ding, and Danielle Litwak*

---

extend to voter registration lists. *See Bellows*, 2026 WL 1430481, at *6–7; *Wisconsin Elections Comm'n*, 2026 WL 1430354, at *3–5; *see also* NJ Mem. 15–24; MRNJ MTD 7–10. And that investigating list maintenance obligations is not a proper purpose for a Title III demand. *See Bellows*, 2026 WL 1430481, at *7–8 ("If the Department of Justice wants to enforce HAVA and the NVRA, it must use the pre-suit investigation and enforcement mechanisms that Congress provided in those statutes."); *see also* NJ Mem. 30–33; MRNJ MTD 3–5.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*s/ Omeed Alerasool*
Omeed Alerasool