**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | No. 26-cv-02025 (ZNQ) (JTQ) |
| Plaintiff, | *Electronically Filed* |
| v. | Motion Return Date: July 6, 2026 |
| DR. DALE G. CALDWELL, in his official capacity as Lieutenant Governor and Secretary of State of New Jersey, *et al.*, | |
| Defendants. | |

**REPLY BRIEF IN FURTHER SUPPORT OF**
**DEFENDANT DALE G. CALDWELL'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Jeremy M. Feigenbaum
*Solicitor General*

Stephen Ehrlich
*Deputy Solicitor General*

Liza B. Fleming
*Deputy Attorney General*

Robert A. Wiygul
Jason A. Levine
Hangley Aronchick Segal
Pudlin & Schiller

*Attorneys for Defendant Dale G. Caldwell*

JENNIFER DAVENPORT
ATTORNEY GENERAL OF
NEW JERSEY

Attorney for Defendant Dale G. Caldwell
R.J. Hughes Justice Complex,
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
(862) 350-5800

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

I.    The CRA Does Not Insulate DOJ's Demand From Judicial Scrutiny Or Preclude The State's Motion To Dismiss. ......................... 2

II.    New Jersey's VRL Is Not A Record Covered By The CRA. .................. 4

    A.    The CRA Covers Only Records That Are Related To *Prior* Federal Elections And That States Cannot Alter. .................. 5

    B.    A VRL Is Not A Record That "Comes Into" Election Officers' "Possession." ................................................................ 6

III.    DOJ's Demand Fails To Satisfy The CRA's "Basis" And "Purpose" Requirements. ....................................................................... 9

    A.    DOJ's Demand Fails To State A Basis. ...................................... 9

    B.    DOJ's Demand Fails To State A Proper Purpose. ...................... 11

    C.    DOJ's Demand Fails To State DOJ's Complete, Actual Purpose. .................................................................................. 15

IV.    Federal Law Does Not Entitle DOJ To The Personally Identifiable Information Of Millions Of Voters, Which Is Protected By New Jersey Privacy Laws. .............................................. 16

V.    DOJ's Demand Violates Federal Privacy Laws. ................................ 17

CONCLUSION.................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Civil Rights Union (ACRU) v. Philadelphia City Commissioners*,
872 F.3d 175 (3d Cir. 2017)..................................................................... 16

*Bilski v. Kappos*,
561 U.S. 593 (2010) .................................................................................. 7

*Election Privacy Information Center v. Presidential Advisory Commission*
*on Election Integrity*,
878 F.3d 371 (D.C. Cir. 2017)................................................................. 19

*Fink v. Bishop*,
No. 23-566, 2024 WL 863300 (D.N.J. Feb. 29, 2024) ............................. 18

*Gaetano v. Gilead Sciences, Inc.*,
529 F. Supp. 3d 333 (D.N.J. 2021) .......................................................... 18

*Alabama ex rel. Gallion v. Rogers*,
187 F. Supp. 848 (M.D. Ala. 1960) .......................................................... 11

*Jones v. Bocks*,
549 U.S. 199 (2007) ................................................................................... 3

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .................................................................... 11

*Loughrin v. United States*,
573 U.S. 351 (2014) .................................................................................... 7

*Lozano v. Montoya Alvarez*,
572 U.S. 1 (2014)......................................................................................... 7

*Marek v. Chesny*,
473 U.S. 1 (1985)......................................................................................... 3

*United States ex rel. Polansky v. Executive Health Resources, Inc.*,
599 U.S. 419 (2023) ..................................................................................... 3

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) .............................................................................. 13

*Rycoline Products, Inc. v. C&W Unlimited*,
109 F.3d 883 (3d Cir. 1997)................................................................... 18

*United States v. Amore*,
No. 25-639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026),
*appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026) .................................. 9

*United States v. Bellows*,
No. 25-468, 2026 WL 1430481 (D. Me. May 21, 2026) ......................*passim*

*United States v. Benson*,
819 F. Supp. 3d 753 (W.D. Mich. 2026),
*appeal docketed*, No. 26-1225 (6th Cir. Feb. 27, 2026) ......................4, 6, 7, 8

*United States v. Fontes*,
No. 26-66, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026),
*appeal docketed*, No. 26-3609 (9th Cir. June 4, 2026) ........................4, 5, 6, 8

*United States v. Oregon*,
No. 25-1666, 2026 WL 318402 (D. Or. Feb. 5, 2026),
*appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026) ................................. 11

*United States v. Powell*,
379 U.S. 48 (1964) ............................................................................ 2, 3

*United States v. Wisconsin Elections Commission*,
No. 25-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026),
*appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026) .........................*passim*

**Statutes**

5 U.S.C. § 552a ................................................................................. 19

8 U.S.C. § 1454 ............................................................................... 7, 8

52 U.S.C. § 20507 ...........................................................................8, 12

52 U.S.C. § 20701 .........................................................................5, 6, 8

52 U.S.C. § 20702 .............................................................................. 5

52 U.S.C. § 20703 ................................................................................9, 16

52 U.S.C. § 21083 ...............................................................................12, 13

52 U.S.C. § 21085 ................................................................................ 13

E-Government Act, Pub. L. No. 107-347, 116 Stat. 2899 (2002) .................... 19

N.J. Stat Ann. § 47:1A-1.1 .............................................................. 17

N.J. Stat Ann. § 47:1A-5.3 ............................................................. 17

**Regulations**

68 Fed. Reg. 47610-01 ...................................................................... 18

**Rules**

Fed. R. Civ. P. 1 .................................................................................. 2

Fed. R. Civ. P. 81 ................................................................................ 2

## **INTRODUCTION**

At the time the State filed its opening brief (ECF 50-1 ("NJ Br.")), federal courts in Arizona, California, Massachusetts, Michigan, Oregon, and Rhode Island had already dismissed DOJ's parallel lawsuits seeking those States' unredacted voter registration lists (VRLs). *See* NJ Br. 14 n.5. In the intervening weeks, federal courts in Maine and Wisconsin reached the same result. *See United States v. Bellows*, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. Wis. Elections Comm'n*, 2026 WL 1430354 (W.D. Wis. May 21, 2026) (*WEC*). As these unanimous eight decisions reflect, DOJ's demand for New Jersey's unredacted VRL cannot withstand scrutiny: the State's VRL is not a record subject to the Civil Rights Act of 1960 (CRA); DOJ has failed to state any basis or proper purpose for its demand; the CRA, the NVRA, and HAVA do not require States to disclose voters' personally identifiable information in violation of State law; and DOJ's demand violates federal privacy laws.

DOJ's response brief (ECF 79 ("Opp.")) ignores many of the State's specific arguments, largely reiterates DOJ's motion to compel, and repeatedly misinterprets key provisions of the statutes at issue—all in service of a strained attempt to use the CRA to collect sensitive, personally identifiable information of every American voter. In the end, DOJ's demand remains unprecedented and improper: it seeks to usurp the election authority the Constitution and Congress have entrusted to the States and have pointedly not vested in the Executive Branch of the Federal Government. This Court should grant the State's motion to dismiss and deny DOJ's motion to compel.

1

## I. The CRA Does Not Insulate DOJ's Demand From Judicial Scrutiny Or Preclude The State's Motion To Dismiss.

DOJ spends significant time rehashing its flawed argument that the CRA authorizes a "special statutory [enforcement] proceeding" in which "the Federal Rules of Civil Procedure are inapplicable" and "there is no place for … motions to dismiss." Opp. 3. Indeed, DOJ goes so far as to assert that "the CRA does not provide any process" for New Jersey to object to CRA demands. *Id.* at 7. As the State already demonstrated, DOJ is wrong. NJ Br. 49–55. Not only have eight federal courts all entertained motions to dismiss, but each has in fact dismissed DOJ's enforcement action with prejudice—with no court going the other way. *See, e.g., Bellows*, 2026 WL 1430481, at *5 n.8 ("[N]o district court has adopted [DOJ's] view of *Lynd*'s 'special statutory proceeding.'" (collecting cases)).

For good reason. The Federal Rules themselves, as well as Supreme Court precedent, make clear that the Rules are fully applicable here. *See* NJ Br. 50–51 (citing Fed. R. Civ. P. 1, 81; *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964))). DOJ's continuing attempt to limit *Powell* to the Internal Revenue Code (IRC) is unavailing. Contrary to DOJ's assertion that the phrase "jurisdiction by appropriate process" means one thing in the IRC and another in the CRA, *see* Opp. 6–7, *Powell*'s interpretation of that identical language did not depend on other provisions of the IRC providing for judicial inquiry into the appropriateness of a subpoena. *See* 379 U.S. at 58 n.18. Indeed, DOJ errs in arguing that *Powell* interpreted "section 7604(b) of the [IRC]" and thus "referred to a [specific] process in the IRC that is missing from the CRA." Opp. 6–7 (emphasis added).

2

Rather, the Supreme Court's holding expressly rested on the fact that section "7604*(a)* contains no provision specifying the procedure to be followed in invoking the court's jurisdiction." 379 U.S. at 58 n.18 (emphasis added). The language in section 7604(a) is materially identical to the language in the CRA. So *Powell* controls this case and makes clear that "the Federal Rules of Civil Procedure apply." *Id.*

A more recent Supreme Court decision, moreover, confirms this outcome. In *United States ex rel. Polansky v. Executive Health Resources, Inc.*, the Court reaffirmed that the "Federal Rules are the default rules in civil litigation," and while Congress can exempt a statutory proceeding from the Rules, courts "do not lightly infer that Congress has done so; and silence on the subject is seldom enough." 599 U.S. 419, 523 (2023) (citing *Jones v. Bocks*, 549 U.S. 199, 212 (2007); *Marek v. Chesny*, 473 U.S. 1, 11–12 (1985)). Nothing in the CRA's text expressly, let alone clearly, exempts this case from the Federal Rules. That is dispositive.

Thwarted by the statutory text, DOJ resorts to strained analogies. It contends its CRA demand should be treated like a routine request for interstate extradition, where a government official need only present state officials with a copy of an indictment or conforming affidavit charging the person demanded with a crime. *See* Opp. 5–6. The comparison is inapt. As *Bellows* observed, "this case presents something other than a perfunctory matter of compelling compliance with a clear statutory directive." 2026 WL 1430481, at *5. To the contrary, it reflects an unprecedented attempt by the Executive Branch to use the CRA to

collect, from every State in the country, highly sensitive personally identifiable information of every American voter. And the CRA sets forth specific prerequisites and limitations that the extradition statute does not. *See, e.g.*, NJ Br. 15–38 (analyzing limitations on records subject to CRA demands, and the requirement that a demand include DOJ's actual and proper basis and purpose); *id.* at 38–44 (analyzing restrictions imposed by privacy laws). States may contest—and courts can determine—whether DOJ's demand complies with these requirements and restrictions. *Bellows*, 2026 WL 1430481, at *5 & n.8 (collecting cases).

That is why the applicability of the Federal Rules is ultimately immaterial to the outcome of this case. *See* NJ Br. 53–55. Even DOJ concedes that States served with CRA demands are entitled to "an adversar[ial] hearing" and that "a court must determine if the law has been followed on its face." Opp. 6–7. Here, as eight courts have found, DOJ's demands for unredacted VRLs "lack[] the statutory grounding needed to state a claim upon which relief may be granted." *Bellows*, 2026 WL 1430481, at *5; *see also, e.g.*, *WEC*, 2026 WL 1430354, at *2 (noting "the court's analysis of the dispositive issue would be the same" even if, as DOJ asserts, "[CRA] actions are subject to a summary proceeding akin to an order to show cause"). So DOJ's lawsuit necessarily fails.

## II.    New Jersey's VRL Is Not A Record Covered By The CRA.

As a threshold but dispositive matter, a computerized, statewide VRL is not a record within the scope of the CRA. *See* NJ Br. 15–24 (citing *United States v. Benson*, 819 F. Supp. 3d 753, 768–70 (W.D. Mich. 2026); *United States v. Fontes*, 2026 WL 1177244, at *3–4, 6–7 (D. Ariz. Apr. 28, 2026)); *accord WEC*, 2026

4

WL 1430354, at *3–5; *Bellows*, 2026 WL 1430481, at *6. DOJ resists this conclusion by repeatedly suggesting that the CRA's retention and disclosure requirements apply to "'all records and papers' relating to registration to vote in a federal election." Opp. 19 (quoting 52 U.S.C. § 20701). But DOJ's argument disregards other, crucial portions of the CRA's text, which clearly exclude computerized VRLs from the statute's scope. *See* NJ Br. 15–19.

> **A.    The CRA Covers Only Records That Are Related To *Prior* Federal Elections And That States Cannot Alter.**

DOJ's response entirely ignores two limiting provisions of the CRA. Section 301 requires States to "retain and preserve" only specific "records … relating to any application … or other act requisite to voting in [federal] election[s]" that took place within the past 22 months. 52 U.S.C. § 20701. And Section 302 prohibits the "alter[ation]" of "any record or paper required" to "be retained and preserved" under Section 301. *Id.* § 20702. Together, these two provisions make Congress's intent clear: elections officials must retain certain records related to a federal election in an unmodified form, so as to preserve evidence of whether anyone's right to vote *in that election* was unlawfully abridged. *See* NJ Br. 6–7, 30–31; *Bellows*, 2026 WL 1430481, at *6 & n.9. Here, DOJ is not demanding records relating to voting in a federal election in the past 22 months.

Still more, computerized VRLs are outside the scope of such records because "HAVA and the NVRA require election officials to 'alter' the [VRL] by regularly updating it." *WEC*, 2026 WL 1430354, at *4 (citing *Fontes*, 2026 WL 1177244, at *4–5); *see* NJ Br. 19. As a result, what DOJ seeks—an unredacted

5

copy of New Jersey's current VRL—necessarily contains many additional, modified, and deleted registration records relative to the time of the last federal election. Put differently, by its statutorily mandated nature, a computerized VRL "is not a record subject to production under [the CRA]." *WEC*, 2026 WL 1430354, at *3. That is, "it makes little sense to require a state to 'retain' or 'preserve' a voter registration list, which is a living document that state election officials regularly update by adding newly eligible voters and removing ineligible ones." *Id.* (citing *Fontes*, 2026 WL 1177244, at *4).

As courts have repeatedly held, the fact that HAVA-mandated VRLs are live, dynamic, continuously updated databases is sufficient, by itself, to place them outside the scope of records subject to the CRA. *See Fontes*, 1177244, at *5; *WEC*, 2026 WL 1430354, at *5. Yet DOJ's response does not even acknowledge, let alone attempt to rebut, this analysis. DOJ's silence is all the more striking because the State's opening brief expressly noted that "DOJ's motion to compel nowhere even acknowledges" Section 302. NJ Br. 24. DOJ's failure to address this defect again is telling. And it suffices to require dismissal.

### B.    A VRL Is Not A Record That "Comes Into" Election Officers' "Possession."

New Jersey's VRL is also not subject to the CRA because it is not a record "which come[s] into" election officers' "possession." *See* NJ Br. 15–18 (construing 52 U.S.C. § 20701). As numerous courts have explained, that statutory text requires officials to preserve only certain records they receive, rather than records they create. *Benson*, 819 F. Supp. 3d at 768–70; *Fontes*, 2026 WL 1177244,

at *3–4; *WEC*, 2026 WL 1430354, at *3; *Bellows*, 2026 WL 1430481, at *6 & n.10. That accords with the common meaning of "come into possession." *See Bilski v. Kappos*, 561 U.S. 593, 603 (2010) (courts give words in a statute "their ordinary, contemporary, common meaning"). A judge would not refer to an opinion she had written as "decisional authority that came into my possession," and no one would say that Vincent van Gogh "came into possession" of Starry Night. DOJ's contrary construction equates "come into possession of" with "in the possession of," improperly rendering "come into" as surplusage. *See Bellows*, 2026 WL 1430481, at *6 n.10 (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)). And the "'natural implication' of the failure to adopt this 'obvious alternative' is that Congress did not intend the alternative." *Id.* (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014)). The legislative history of the CRA overwhelmingly confirms this conclusion: "Congress had reason to focus the scope of [the CRA] on records submitted by voters, because it was attempting to prevent states from engaging in the then-routine practice of destroying rejected voter registration applications to conceal discriminatory practices." *WEC*, 2026 WL 1430354, at *4 (citing *Benson*, 819 F. Supp. 3d at 767–69). Those records come into officials' possession; the materials that States create do not.

DOJ's brief primarily recycles points from its motion to compel without addressing these arguments or the wall of contrary district court conclusions. *See* NJ Br. 19–24. But DOJ again misconstrues its cited cases, none of which supports its position that Section 301 of the CRA applies to VRLs. *See id.* at 20–21 & n.7. Further, DOJ's reliance on 8 U.S.C. § 1454(a) as similarly using "come

7

into possession" actually supports the State's construction. As DOJ notes, under 8 U.S.C. § 1454(a), "[i]f any certificate of naturalization or citizenship issued to any citizen or any declaration of intention furnished to any declarant is lost, mutilated, or destroyed," then the citizen or declarant may obtain "a new certificate or declaration" from the Attorney General, but "[if] the certificate or declaration has been lost, the applicant or any other person *who shall have, or may come into possession of it* is required to surrender it to the Attorney General." (emphasis added). Tellingly, DOJ's quotation omits the "who shall have, or" language, *see* Opp. 22, which underscores that "come into possession of" refers to documents that are received or found by some "person"—*not* documents someone possesses by virtue of creating them. Had Congress wanted to cover all the materials in officials' possession, it could have used "who shall have" here too.

Finally, DOJ again erroneously cites cases holding that VRLs are within the scope of the public-inspection provision in the NVRA. *See* Opp. 22–23. But as the State already pointed out, the NVRA refers to "just 'records' without any qualifier," rather than records that "come into [election officials'] possession." NJ Br. 22 (citing 52 U.S.C. §§ 20507(i), 20701)). So this "serves only to underscore that the scope of records subject to the CRA is limited in the very way *Benson*[, *WEC*, *Bellows*,] and *Fontes* describe." *Id.*; *see Bellows*, 2026 WL 1430481, at *9 ("[T]he preservation and disclosure requirements of [the CRA] … apply[] only to records and papers that 'come into [the election officer's] possession,' and not the lists and tools created by the state to administer its elections." (citation omitted)). The State's VRL falls squarely outside the scope of the CRA.

III.  **DOJ's Demand Fails To Satisfy The CRA's "Basis" And "Purpose" Requirements.**

The CRA makes clear that the Attorney General, when seeking records, must include in his demand "a statement of *the* basis and *the* purpose therefor." 52 U.S.C. § 20703 (emphases added). DOJ's demand fails to comply with these distinct, conjunctive requirements. *See* NJ Br. 24–38. In contending otherwise, DOJ evades the actual text of the CRA and misquotes the operative portion of Section 302 by omitting the definite article before "purpose." *See* Opp. 8 (quoting 52 U.S. § 20703). But Congress's inclusion of this article underscores that DOJ must state the complete, actual basis and the complete, actual purpose of its demand, not merely one conceivable basis or one purpose among many. *See* NJ Br. 24–25. That error is consistent with DOJ's continuing attempt to conflate "basis" and "purpose," and to suggest that the genuineness of its stated "basis" and "purpose" is immaterial. *See, e.g.*, Opp. 8. Nothing in DOJ's response brief thus demonstrates compliance with the CRA's prerequisites.

A.  **DOJ's Demand Fails To State A Basis.**

DOJ's demand, set forth in its August 14, 2025 letter, stated only a purported "purpose"; it made no reference to any "basis" whatsoever. *See* NJ Br. 26. Belatedly attempting to cure this deficiency, DOJ's Complaint asserted that "the 'basis of the demand was the CRA.'" *See id.* But the CRA requires a statement of the demand's basis to be set forth in the demand itself. *Id.* And in any event, the Complaint's stated basis is legally insufficient because "the 'basis' contemplated by Title III is a factual, not legal basis." *See id.* at 26–27 (quoting *United*

9

*States v. Amore*, 2026 WL 1040637, at *5 (D.R.I. Apr. 17, 2026)). This failure to state a basis is, by itself, fatal to DOJ's demand. *See id.* at 27.

Ignoring these points, DOJ's response brief changes course and suggests that DOJ *implicitly* stated a basis for its demand when it posed questions, in a July 15, 2025 letter, about certain information New Jersey provided in response to an "EAVS" survey. *See* Opp. 9–10. DOJ now asserts that "[t]he EAVS data New Jersey reported is inconsistent with that of a jurisdiction that is engaging in reasonable list maintenance practices under [HAVA] and the [NVRA]." Opp. 9. But the State already showed why DOJ's reliance on its questions about the EAVS responses is misplaced. *See* NJ Br. 28–30 & nn.11–12. Among other deficiencies, (1) the statement of "basis" must be expressly set forth in the demand, but DOJ's July 15 letter made no reference to the CRA, and DOJ's August 14 CRA demand did not mention the EAVS responses; (2) these EAVS responses do not plausibly suggest that the State is in violation of its obligations under the NVRA or HAVA, and DOJ never contended that New Jersey's answers to the questions in DOJ's July 15 letter were inadequate; (3) nowhere in its Complaint (or its pre-suit correspondence) does DOJ allege that New Jersey is in violation of the NVRA or HAVA; and (4) DOJ's newly asserted "basis" directly contradicts its Complaint, which expressly alleges the "basis" of its demand was "the CRA," not the NVRA or HAVA, *see* Compl. ¶ 26. DOJ has no response.

For similar reasons, other courts have correctly rejected DOJ's attempt to bootstrap questions about States' EAVS survey responses that were not referenced in DOJ's CRA demand into a CRA-compliant statement of the demand's

10

"basis." *See United States v. Oregon*, 2026 WL 318402, at *9 (D. Or. Feb. 5, 2026); *Bellows*, 2026 WL 1430481, at *2, 9 & n.9. This Court should do the same.

### B.    DOJ's Demand Fails To State A Proper Purpose.

The stated "purpose" of DOJ's demand—"to ascertain New Jersey's compliance with the list maintenance requirements of the NVRA and HAVA"—is also legally insufficient. DOJ misses the mark when it argues that the text of the CRA does not impose any limitation on the permissible "purpose" of a CRA demand. As the State explained, it makes no sense as a matter of statutory structure to read the CRA as allowing records requests for purposes having nothing to do with assessing CRA-related violations. *See* NJ Br. 33; *Oregon*, 2026 WL 318402, at *9 ("If any purpose … would suffice, then the requirement of stating the demand's purpose would serve no function." (emphasis omitted)). And there can be no reasonable dispute that the CRA exists to further enforcement of individual voting rights—in particular, those enshrined in the Civil Rights Act of 1957, especially the right not to be subject to racial discrimination. *See* NJ Br. 6, 30–33. Indeed, the 1960s-era Fifth Circuit case law applying the CRA, on which DOJ so heavily relies, makes this purpose unmistakably clear. *See, e.g.*, *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) ("[The CRA's] purpose is to enable the Attorney General to determine whether § 1971 suits [*i.e.*, suits under the Civil Rights Act of 1957] or similar actions should be instituted."); *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 852 (M.D. Ala. 1960) ("[T]he entire history of the [CRA] reflects that it was and is designed to provide a means of enforcing the basic federally guaranteed rights of citizenship (to vote) against state

11

action."). To be clear, compliance with the NVRA and HAVA's list mainte-nance requirements could in some cases plausibly implicate the concerns about disenfranchisement the CRA addresses. Indeed, as the history of HAVA makes clear, improving data collection and information sharing can prevent "mistaken voter removals." Opp. 17. Nowhere in DOJ's recitation of the history of errone-ous voter removals, however, is any explanation of why it now needs New Jer-sey's unredacted VRL to determine compliance with the NVRA and HAVA or how the State's compliance here implicates disenfranchisement concerns.

In any event, "whatever investigatory purposes may support a [CRA] rec-ords demand, voter list maintenance is not among them." *Bellows*, 2026 WL 1430481, at *7. As noted, there was no requirement for States to even maintain statewide VRLs until the NVRA and HAVA, decades after Congress passed the CRA. *See* NJ Br. 4–6. "Together, the NVRA and HAVA create a comprehensive scheme for the creation and upkeep of states' computerized []VRLs, and for the enforcement of the list maintenance requirements imposed by those statutes." *Bellows*, 2026 WL 1430481, at *8. That scheme does *not* authorize DOJ to con-duct its own list maintenance, including to make its own determinations as to whether individual registrants should be removed from the VRL. NJ Br. 39–41. To the contrary, the NVRA and HAVA "could not be clearer: each individual state, and not [DOJ], is the master of its voter list, entrusted with its administra-tion and maintenance." *Bellows*, 2026 WL 1430481, at *7; *see, e.g.*, 52 U.S.C. § 20507(a)(4) (requiring only that States have a "general program" that makes a "reasonable effort" to remove certain ineligible voters); *id.* § 21083(a)(4)(A)

12

(same); *id.* § 21083(a)(1)(A) (computerized VRL must "be defined, maintained, and administered at the State level"—not by the Federal Government); *id.* § 21085 (expressly leaving "to the discretion of the States" "[t]he specific choices on the methods of complying with" HAVA's "requirements").

But conducting its own list maintenance is exactly what DOJ seeks to do here. As its response makes clear, DOJ's purpose in seeking New Jersey's unredacted VRLs is to "verify[] voter registration records" by, for example, "identify[ing] duplicate registration records, registrants who have moved, and registrants who have died or who are otherwise no longer eligible to vote in federal elections." Opp. 25, 32. That would subvert the NVRA's and HAVA's allocation of federal-state responsibilities. "That scheme gives the Attorney General the power to 'bring a civil action' against a State that has violated" their list-maintenance obligations—if, for example, the State lacks a "general program" that makes a "reasonable effort" to remove deceased or no-longer-resident individuals—"but it does not contemplate the line-by-line audit of each state's computerized []VRL by the federal government to assess compliance with those provisions." *Bellows*, 2026 WL 1430481, at *8. Indeed, as DOJ effectively concedes, neither the NVRA nor HAVA permits DOJ to obtain pre-suit "production of the unredacted computerized [VRL] to [DOJ] so that [it] might loom over the shoulder of the state election official to point out and demand the correction of inaccuracies in the list." *Id.* So Congress has, in the NVRA and HAVA, "'enacted a comprehensive scheme [regarding VRL maintenance] and has deliberately targeted specific problems with specific solutions.'" *Id.* (quoting *RadLAX*

13

*Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)). The CRA "was not drawn with any of [these] concerns in mind." *Id.* Under well-established rules of statutory construction, DOJ cannot "obtain through the [CRA] what it … cannot obtain under the specific statutes it is seeking to enforce."[1] *Id.*

That is especially true because adopting DOJ's construction of the CRA would "turn a blind eye to traditional principles of federalism and how those principles have found expression in American elections." *Id.* at *9. "Construing the [CRA]—enacted as strong medicine to address the stubborn ill of racial discrimination … across the Jim Crow South—to implicitly provide [DOJ] a right to every state's []VRL on demand for purposes of conducting a comprehensive, line-by-line audit of the state's compliance with HAVA and the NVRA would take a sledgehammer to the balance Congress struck when it required states to create and maintain computerized lists of registered voters in the first place." *Id.*

Finally, DOJ gets no traction by citing certain consent decrees for the proposition that it has previously "obtained []VRLs to assess and enforce HAVA and the NVRA." Opp. 11. It may well be the case, in other circumstances, that

---

[1] Nor is a snapshot of New Jersey's VRL at a single point in time probative of the State's compliance with list maintenance obligations. *See* NJ Br. 39–41. Also unavailing is DOJ's assertion that it seeks the unredacted VRL for the purpose of assessing whether New Jersey is collecting the "voter identification numbers" (e.g., driver's license and social security numbers) required by HAVA. Opp. 25. Among other deficiencies, nowhere has DOJ asserted any "basis" (nor could it) to suspect that New Jersey is not collecting these numbers. *See* NJ Br. 26–27. In addition, assessing compliance with HAVA's requirements does not require a dragnet of every registered voter's personally identifiable information. As DOJ's response brief makes clear, DOJ has repeatedly brought successful HAVA enforcement actions without unredacted VRLs.

state and local election officials have voluntarily agreed to produce their VRLs to DOJ. But DOJ has not successfully compelled a State to do so. That some election officials have voluntarily chosen to provide such documents does not mean that DOJ is entitled to New Jersey's unredacted VRL.

### C.    DOJ's Demand Fails To State DOJ's Complete, Actual Purpose.

On top of all these fatal deficiencies, it is now clear that DOJ's August 14, 2025 demand did not state its complete, actual purpose, as the CRA requires. The State's opening brief identified substantial evidence that "DOJ's actual purpose may be different from its stated purpose of investigating New Jersey's compliance with its NVRA and HAVA obligations," sufficient to defeat a judgment in DOJ's favor. NJ Br. 35. DOJ's response brief does not deny that its purpose must be the truthful one rather than a pretextual one, but instead merely asserts, in conclusory fashion, that this evidence is "unreliable hearsay" and "speculative." Opp. 11. That is wrong; the evidence includes, for example, admissions in open court by a high-ranking DOJ official. *See* NJ Br. 36–37.

In any event, DOJ has now confirmed that it concealed its actual purposes in seeking unredacted VRLs from New Jersey and other States. In the middle of litigation and in the face of consistent adverse decisions, DOJ's Office of Legal Counsel (OLC) published an opinion to support its own claim of CRA authority. The opinion confirms DOJ's purposes include investigating (a) whether noncit-

15

izens "are being removed from voter-registration lists" and (b) whether nonciti-zens have committed voter fraud.[2] But statutory list maintenance requirements do not cover non-citizens, *see* NJ Br. 4 (citing *ACRU v. Phila. City Comm'rs*, 872 F.3d 175, 182 (3d Cir. 2017)), much less discuss criminal voter fraud—two pur-poses to which DOJ has never made even a passing reference when representing its stated purposes to this Court, let alone in its CRA demand. The OLC opinion lays bare that DOJ has not been candid about its true purposes, and that DOJ has therefore failed to satisfy the CRA's requirement that a demand for records "shall contain a statement" of "*the purpose* therefor." 52 U.S.C. § 20703.

All of this is enough to demonstrate definitively that DOJ has not stated its actual purpose, but at the very least, this defeats DOJ's effort to short-circuit a traditional discovery process through its immediate motion to compel. Assum-ing this Court does not grant the State's motion to dismiss on other grounds (though it should), the State has shown an ample basis to seek written discovery or potentially depositions based on the disparities between the purpose allegedly provided by DOJ's letter and the real-world evidence of DOJ's actual purpose—now supplemented by the OLC opinion. To that, DOJ has little answer.

## IV. Federal Law Does Not Entitle DOJ To The Personally Identifiable In-formation Of Millions Of Voters, Which Is Protected By New Jersey Privacy Laws.

DOJ also fails to state a claim because nothing in the CRA entitles DOJ to the sensitive personally identifiable data it seeks here. *See* NJ Br. 38–44. New

---

[2] *See* OLC Opinion at 4–5 (May 12, 2026), https://www.jus-tice.gov/olc/media/1440346/dl.

Jersey's privacy laws require redaction of personally identifiable information (PII) including driver's license and social security numbers, and thus prohibit the State from providing an unredacted copy of New Jersey's VRL. *See id.* at 38–39 (citing N.J. Stat Ann. §§ 47:1A-1.1, -5.3). And federal law does not preempt those voter privacy protections because nothing in the NVRA, HAVA, or the CRA entitles DOJ to obtain the sensitive PII of voters. *See id.* at 40–43.

DOJ does not contest the meaning of New Jersey laws but instead asserts, without analysis, that the CRA preempts these privacy laws. *See* Opp. 34–35. But nothing in the NVRA, HAVA, or the CRA expressly preempts New Jersey's privacy laws. Nor does DOJ demonstrate that protecting sensitive PII from disclosure would thwart the text and structure of any of these federal statutes (or even their purpose). DOJ's belief otherwise rests on a misunderstanding regarding States' list-maintenance obligations and DOJ's role in enforcing them. *See supra* pages 12–14; NJ Br. 38–44. As courts have repeatedly held, the sensitive, private data of registrants is not necessary to assess how a State implements programs and activities to maintain the accuracy of its VRL. NJ Br. 41.

## V.    DOJ's Demand Violates Federal Privacy Laws.

Federal privacy laws—specifically, the Privacy Act, E-Government Act, and Driver's Privacy Protection Act (DPPA)—also bar DOJ from collecting New Jersey's unredacted VRL. DOJ's contrary arguments are without merit.

While defenses may not usually form a basis for dismissing the Complaint, Opp. 27, they are "cognizable on a motion to dismiss where the necessary facts are 'apparent on the face [] of the complaint' and other documents required to

17

show the application of the defense are properly before the Court, including by judicial notice." *Fink v. Bishop*, 2024 WL 863300, at \*5 (D.N.J. Feb. 29, 2024) (quoting *Rycoline Prods., Inc. v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)). Put differently, courts may dismiss based on a defense "when the plaintiff has effectively pled itself out of court." *Gaetano v. Gilead Scis., Inc.*, 529 F. Supp. 3d 333, 348 (D.N.J. 2021). That is exactly what happened here. Whether DOJ has issued a System of Record Notice ("SORN") or conducted a privacy impact assessment ("PIA") that adequately covers DOJ's collection of States' complete, unredacted VRLs are matters of which the Court can take judicial notice, by consulting the Federal Register or DOJ's website. *See* Opp. 30–31 n.18 (citing DOJ webpage listing "DOJ Privacy Impact Assessments"). Thus, each of these three federal privacy laws provides an independent basis to dismiss.

*First*, the Privacy Act bars DOJ's demand because none of the SORNs on which it relies covers the national database of confidential voter information it now seeks to create. *Compare* Opp. 28–29, *with* NJ Br. 45–47. Contrary to DOJ's suggestion, that "the statutes cited for routine use in [DOJ] SORNs include enforcement of HAVA, the NVRA, and [the CRA]" does not render the SORN at 68 Fed. Reg. 47610-01 sufficient notice of DOJ's collection of the sensitive information of all registered American voters. That SORN lists only narrow categories of individuals, such as "investigation targets, victims, [and] potential witnesses." *Id.* at 47611. DOJ cannot possibly establish that *every single American voter* falls into one of those categories—and that a person reading this SORN would have reasonable notice of that. Further, DOJ ignores that it must provide

18

"adequate advance notice" to Congress and OMB before making a substantial change to the number of individuals about whom records are maintained, NJ Br. 46 (quoting 5 U.S.C. § 552a(r))—a requirement plainly triggered by DOJ's attempt to collect the sensitive personal information of millions of voters.

*Second*, DOJ incorrectly asserts that the E-Government Act does not bar this suit because it is "not initiating a new process whereby it is contacting individuals for information." *See* Opp. 30. Once again, DOJ ignores the pertinent statutory text. A PIA is required before a federal agency begins "a new collection of information … in an identifiable form *permitting* the physical or online contacting of a specific individual." Pub. L. No. 107-347, § 208(b)(1)(A) (emphasis added). VRLs plainly qualify—they contain registrants' addresses and a host of other personally identifiable information that would permit those individuals to be contacted. And it is also irrelevant that DOJ has performed a PIA for the "system" on which it intends to store the VRLs. *Contra* Opp. 30. A PIA is required not only before "procuring information technology" that "maintains" the "information," but also before a federal agency "initiat[es] a new collection of [such] information."[3] Pub. L. No. 107-347, § 208(b)(1)(A).

---

[3] DOJ's reliance on *Election Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017) (*EPIC II*), is misplaced. *EPIC II* held that the organizational plaintiff in that case lacked standing because it had not shown a cognizable injury. To the extent DOJ suggests the State similarly lacks standing, the State is not a plaintiff and does not have to establish standing. In any event, an official has standing to challenge an order that would personally require him to disclose the personal, protected data that over six million New Jersey voters have entrusted to their election officials.

*Third*, although DOJ concedes that unredacted VRLs contain "information originat[ing] from a motor vehicle record," it wrongly asserts that its demand does not violate the DPPA based on DOJ's mistaken view that "verifying voter registration records" is one of DOJ's "statutorily mandated function[s]." Opp. 32. As shown above, it is not. *See supra* pages 12–14.

## CONCLUSION

The Court should deny DOJ's motion to compel and grant the State's motion to dismiss.

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

Dated: June 15, 2026          /s/ *Robert A. Wiygul*
Robert A. Wiygul
Jason A. Levine
Hangley Aronchick Segal Pudlin & Schiller
1415 Route 70 East, Suite 405
Cherry Hill, NJ 08034
(856) 616-2100
rwiygul@hangley.com

Jeremy M. Feigenbaum
Solicitor General

Stephen Ehrlich
Deputy Solicitor General

Liza B. Fleming
Deputy Attorney General
R.J. Hughes Justice Complex,
25 Market Street, P.O. Box 080
Trenton, New Jersey 08625
*Attorneys for Defendant Dale G. Caldwell*

20

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

THE UNITED STATES OF
AMERICA,

          Plaintiff,

          v.

DR. DALE G. CALDWELL, in his
official capacity as Lieutenant General
and Secretary of State of New Jersey, *et
al.*,

          Defendants.

No. 26-cv-02025 (ZNQ) (JTQ)

*Electronically Filed*

**CERTIFICATION OF SERVICE**

I hereby certify that, on June 15, 2026, I electronically filed the foregoing Reply Brief in Further Support of Defendant Dale G. Caldwell's Motion To Dismiss Plaintiff's Complaint with the Clerk of Court of the U.S. District Court for the District of New Jersey. Counsel for all parties will be served via CM/ECF.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 15, 2026

/s/ *Robert A. Wiygul*
Robert A. Wiygul