## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE UNITED STATES OF AMERICA,

*Plaintiff,*

v.

DR. DALE G. CALDWELL, in his official capacity as LIEUTENANT GOVERNOR and SECRETARY of STATE of NEW JERSEY,

*Defendants.*

Case No. 3:26-CV-2025
(ZNQ-JTQ)

MOTION RETURN DATE:
July 6, 2026

**REPLY BRIEF IN FURTHER SUPPORT OF THE MOTION TO DISMISS FILED BY THE NAACP; NAACP NEW JERSEY STATE CONFERENCE; SALVATION AND SOCIAL JUSTICE; AAPI NEW JERSEY; RETURNING CITIZENS SUPPORT GROUP; ASSOCIATION OF BLACK WOMEN LAWYERS OF NEW JERSEY; GARDEN STATE BAR ASSOCIATION; NEW JERSEY MUSLIM LAWYERS ASSOCIATION; PEOPLE'S ORGANIZATION FOR PROGRESS; AND EDWIN ORTIZ**

**NEW JERSEY INSTITUTE FOR SOCIAL JUSTICE**
Micauri Vargas
Ryan P. Haygood
Henal Patel
Nuzhat Chowdhury
Heather Richner*
60 Park Place, Suite 511
Newark, New Jersey 07102
Telephone: (973) 624-9400

*Counsel for Intervenor-Defendants*

*\*Admitted pro hac vice*

**PASHMAN STEIN WALDER HAYDEN, P.C.**
CJ Griffin
Gary S. Stein
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200

## **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................1

LEGAL ARGUMENT ........................................................................................................1

    I.    DOJ's Opposition Fails to Engage with the Legislative History Establishing That Title III Was Enacted Solely to Investigate Racial Discrimination in Voting. .........1

    II.   DOJ Has Not Rebutted Evidence That Its True Purposes Are Antithetical to the CRA, Nor Has it Addressed the Harm Its Demand Poses to the Communities Title III Was Designed to Protect.................................................................................3

CONCLUSION ...................................................................................................................5

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*United States v. Weber*,
   816 F. Supp. 3d 1168 (C.D. Cal. Jan. 15, 2026).................................................................3

*United States v. Oregon*,
   2026 WL 318402 (D. Or. Feb. 5, 2026) .........................................................................3, 4

**Statutes:**

42 U.S.C. § 2000e-2 .................................................................................................................2

52 U.S.C. §§ 10301-10306, 10309..........................................................................................2

**Other Authorities:**

Hearings before Subcommittee on Constitutional Rights of the S. Committee on the
   Judiciary, 86th Cong. 1st Sess. 191 (1959) .........................................................................2

H.R. Rep. No. 86-956 (Aug. 20, 1959)....................................................................................2

## INTRODUCTION

Intervenor-Defendants adopt Defendant Caldwell's arguments that the Department of Justice (DOJ) has failed to state a valid claim under the Civil Rights Act of 1960 (CRA). Intervenor-Defendants are racial justice organizations and an individual voter whose communities have historically faced discrimination in voter registration and participation. This brief addresses two issues that DOJ's opposition fails to adequately answer. *First*, that Title III's legislative history and intent clearly show the statute was enacted exclusively to investigate racial discrimination in voting, notwithstanding DOJ's textual argument to the contrary. *Second*, that the substantial evidence of DOJ's true purposes, which they dismiss as pretext without meaningful engagement, demonstrate that their demand is antithetical to the CRA's goals and will disproportionately harm the very communities Title III was enacted to protect.

## LEGAL ARGUMENT

### I. DOJ's Opposition Fails to Engage with the Legislative History Establishing That Title III Was Enacted Solely to Investigate Racial Discrimination in Voting.

DOJ argues that because Title III contains no express limitation to racial discrimination, it authorizes the Attorney General to demand voter records for any purpose involving possible violations of federal election law. *See* ECF 79 at 14-18 ("Opp."). DOJ points to other civil rights statutes—Title VI, the Voting Rights Act

1

(52 U.S.C. §§ 10301-10306, 10309), and Title VII (42 U.S.C. § 2000e-2)—where Congress expressly limited remedies to race-based violations, arguing that Congress's omission of similar language from Title III means no such limitation exists. *Id.* at 15.

That argument fails to address the legislative history of the law, and the history is dispositive. The House Report confirms that Congress enacted Title III to provide greater protection for "the right of all qualified citizens to vote without discrimination on account of race" and to expand the Attorney General's ability to seek "preventive relief [against][] discriminatory denial[s] of [voting rights]." H.R. Rep. No. 86-956 (Aug. 20, 1959) at 7 (emphasis added).

At the time of the CRA's passage, the Attorney General testified that Title III was intended to investigate "discriminatory denials of the right to vote in Federal elections" and that access to voter records was needed to "make the necessary racial breakdown." *Hearings before Subcommittee on Constitutional Rights of the S. Committee on the Judiciary*, 86th Cong. 1st Sess. 191 (1959) (statement of William P. Rogers, U.S. Att'y Gen.), https://perma.cc/H64U-GYMG.

The CRA responded directly to the 1959 Commission on Civil Rights report, documenting widespread disenfranchisement of Black voters and obstruction of investigations, including the destruction of registration records and resistance to subpoenas. *See* U.S. Comm'n on Civil Rights, Report of the United States

Commission on Civil Rights 19, 55-58, 69-106 (1959). Congress enacted Title III precisely to give the Attorney General access to the voter records necessary to investigate those complaints of racial discrimination. The absence of an express textual limitation does not override this unambiguous legislative purpose. DOJ ignores this history, and in seeking this information, it contravenes the CRA's intent.

**II. DOJ Has Not Rebutted Evidence That Its True Purposes Are Antithetical to the CRA, Nor Has it Addressed the Harm Its Demand Poses to the Communities Title III Was Designed to Protect.**

DOJ dismisses the substantial evidence of its true purposes as "unreliable hearsay" and "speculative," citing only a single North Carolina district court order. Opp. at 10-11. That response disregards the compelling evidence before this Court.

Multiple federal courts have rejected DOJ's stated list maintenance justification. In *United States v. Weber*, the court found DOJ's purpose "contrived" and held it could not "circumvent[] the authority granted to them by Congress . . . under the guise of a pretextual investigative purpose." 816 F. Supp. 3d 1168, 1184, 1186 (C.D. Cal. Jan. 15, 2026). Likewise, in *United States v. Oregon*, the court found that DOJ could no longer "be taken at its word" and continued to "engage in conduct raising suspicion about the purposes for which it seeks unredacted voter registration lists." No. 25-1666, 2026 WL 318402, at *11 (D. Or. Feb. 5, 2026). DOJ does not address these findings, nor does it address Attorney General Bondi's letter to Minnesota Governor Walz demanding voter registration list (VRL) access as part of

3

a broader immigration enforcement effort—directly contradicting DOJ's assurances that its purposes are limited to list maintenance compliance. *Id.* And while DOJ cites the Office of Legal Counsel's (OLC) opinion regarding voter rolls in a footnote to support its claimed authority, it does not address what that opinion actually reveals. *See* Authority to Obtain and Share Voter Roll Data, 50 Op. O.L.C. ___ (May 12, 2026), available at https://www.justice.gov/olc/media/1440346/dl. OLC's letter states that DOJ's purposes include investigating whether non-citizens have been removed from voter registration lists and whether non-citizens have committed voter fraud—purposes never disclosed to this Court. *Id.* at 4-5.

Beyond these cases, the court in *League of Women Voters, et al., v. U.S. Department of Homeland Security, et al.,* found that several federal agencies used voter roll information to create a centralized federal database that contains Social Security numbers, citizenship status, and other sensitive personal information. *See* No. 25-3501, at 1. That court concluded that the federal government "knowingly trampled on the privacy rights of American citizens in a manner that threatens the sacred right to vote." *Id*. at 1, 22-25.

DOJ also ignores the concrete harms its demand poses to the communities Title III was enacted to protect. Its nationwide campaign to obtain unredacted VRL's from nearly every state and file litigation across the country goes far beyond investigating specific complaints of racial discrimination and falls

4

disproportionately on communities of color, naturalized citizens, and formerly incarcerated voters. Intervenor-Defendant Mr. Ortiz, a formerly incarcerated U.S.-born citizen with a common name, attests that erroneous database matching could wrongly flag him or subject him to heightened scrutiny. *See* Ortiz Decl. ¶¶ 10-12, 15. DOJ's abstract discussion of federal privacy protections does not address this particularized harm, nor does a protective order governing data storage.

The CRA was enacted to empower the DOJ to combat racial discrimination in voting, not build a federal voter database for immigration enforcement or other Executive Branch objectives.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint with prejudice.

Dated: June 26, 2026

CJ Griffin
Gary S. Stein
**Pashman Stein Walder Hayden P.C.**
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200

Respectfully Submitted,

/s/ Micauri Vargas
Micauri Vargas
Ryan P. Haygood
Henal Patel
Nuzhat Chowdhury
Heather Richner*
**New Jersey Institute For Social Justice**
60 Park Place, Suite 511
Newark, New Jersey 07102
(973) 624-9400
*Admitted pro hac vice*

*Counsel for Intervenor-Defendants*

5